**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Steadfast 829 Holdings, Inc.** | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| **2017 Yale Development, LLC,** | § | |
| **Jetall Companies, Inc.,** | § | |
| **Ali Choudhri, Lloyd Kelley,** | § | |
| **Michelle Fraga, et al.** | § | |
| Defendants | § | |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT, MOTION TO APPOINT**
**RECEIVER, PETITION FOR DECLARATORY JUDGMENT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY**
**INJUNCTION, AND PERMANENT INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW Plaintiff, Steadfast 829 Holdings, Inc., (referred to herein as "Steadfast"

or the "Steadfast Parties"),[1] by their attorney, and file this its Original Verified Complaint,

Motion to Appoint Receiver, Petition for Declaratory Judgment, Application for Temporary

---

[1] Originally Steadfast Funding, LLC, and multi-state lenders Initram, Inc., RJL Realty, LLC, Eternal Investments, LLC, Bruce Robinson, Dale Pilgeram Trustee of the Pilgeram Family Trust, Joseph C. Hibbard, Kornelia Peasley-Brown, Salvador Ballestero, Margaret M. Serrano-Foster, Trustee of the Margaret M. Serranto-Foster Trust Dated 12/02/2005, Richard R. Melter, Trustee of the Richard R. Melter Revocable Living Trust, Liberty Trust Company, LTD Custodian FBO Vincent Paul Mazzeo, Jr., IRA, Joe Saenz, Patrick Grosse, Trustee of the Grosse Family Trust Dated 12/31/2004, Eric Verhaeghe, Stephen K. Zupanc, Liberty Trust Company, LTD, Custodian FBO Adam K. Hruby IRA #TC005383, Vincent Investments, Inc. AKA Vincent Investments, Equity Trust Company Custodian FBO Stephen (Steven) Krieger IRA, Judy M. Schnars, Joseph Dersham, Joyce Dersham, Walter Kaffenberger, Christel Kaffenberger, Mike Berris (Berres), Jason Sun, Equity Trust Company Custodian FBO Erica Ross-Krieger IRA, Elm 401K-PSP, Laurel Mead and Edwin A. Mead, Trustees and James T. Smith, Trustee of the James T. Smith Trust, all having assigned the property, and their claims, rights, obligations and causes of action related to Yale to Plaintiff for the protection, sale and management of the collateral and claims (hereinafter "Steadfast Parties"). The Steadfast Parties are residents of numerous states.

1

Restraining Order, Preliminary Injunction, and Permanent Injunction, and would state as follows:

## I.
## INTRODUCTION

1.      The almost unbelievably sordid facts set forth herein are already proven by undisputed evidence.  This Petition includes a case statement, followed by a detailed timeline, linked to judicially admitted exhibits proving Defendants' crimes, torts, conspiracy, intent, and their federal and state felony predicate acts constituting a criminal Enterprise.  The evidence presented herewith also proves Defendants' tortious conduct as a matter of law and undisputed fact.[2]

2.      Defendants are a multi-state group of real estate "investors", sham parties, and attorneys, with a reputation for fraudulent schemes and vexatious litigation.  They identified a distressed multi-million-dollar construction project located at 829 Yale Street in Houston, and devised a scheme to defraud the construction lenders whose loans were secured by the property, including Plaintiff.  Defendants are altogether referred to herein as the "Yale Criminal Enterprise" or "Enterprise."

3.      Steadfast Funding, LLC was the primary loan servicer for Plaintiff, through which a multi-state group of lenders loaned Defendants six million dollars in principle, secured by a first lien Deed of Trust.[3]  Since receiving Steadfast's loan money, no Defendant ever

---

[2] The validity and existence of Steadfast's loans, the borrower Defendants' loan defaults, and current title to the collateral property itself have already been adjudicated.  Plaintiffs' tort claims have not, for reasons set forth below. Numerous other investigations are also underway regarding this criminal enterprise by various investigatory bodies.
[3] Their note was for up to $8.2 Million in stage-funded construction draws;  they actually funded six million before the Criminal Enterprise defaulted the last time and abandoned the project.

paid a single cent for the property or to repay the loans.  Steadfast has been damaged in excess of thirteen million dollars by the Yale Criminal Enterprise.

4.     To accomplish their mutual goals, Defendants conspired to commence a pattern of criminal and fraudulent transactions, all designed to steal the lenders' money, as well as title to Steadfast's collateral at 829 Yale.    Defendants conspired to commit seventeen distinct scams set forth below, all designed to steal the money loaned by Plaintiff and title to Plaintiff's collateral, on fraudulent pretenses.  Defendants tortiously interfered with Steadfast's loans.   They bribed Steadfast's original borrower to illegally give them a deed to Steadfast's collateral.  Their intent was for the Enterprise to tortiously interfere with title and the valid liens held by the honest, legitimate lenders on the loans.  They fraudulently induced and extorted Steadfast into a loan workout, for more funds.  They stole the lenders' money and invested it to bribe others to participate in additional schemes against the lenders and property.

5.     Defendants fabricated sham entities to engage in interstate transactions, the Enterprise secretly owning or controlling all parties to all sides of these fake transactions. They fabricated fake tax liens to try to foreclose on the legitimate lenders. They recorded fraudulent releases of Steadfast's liens, created sham entities to pose as bona fide purchasers, and made illegal transfers of the collateral, all in furtherance of the Enterprise. They created fraudulent title abstracts omitting Steadfast's prior recorded Loan Documents to attempt insurance fraud and use the abstracts to support frivolous pleadings in vexatious litigation.

6.      The attorney Defendants secretly acquired personal ownership of the borrower entities which owned title to the collateral, caused the borrowers' loan defaults, and, pretending to be attorneys rather than the true parties, filed frivolous litigation to obstruct the lenders' foreclosures, evict the lenders, and try to quiet title in their sham entities using perjured testimony, fabricated documents, fraudulent real property instruments, spoliated and concealed evidence, and fake parties.[4]

7.      Three Harris County Judges have already been forced to recuse, disqualified, or forced to resign from the bench so far.[5]   It appears that the Enterprise recently put Defendant Fraga on the republican ballot for Harris County Judge as well.  She has already been sued by the incumbent Judge Weems for apparently fraudulent ballot activity, Mr. Kelley taking a typically aggressive and unrepentant stance on Fraga's behalf.  Defendants are generally dodging service, and even Judge Weems had to obtain an order for substituted service on Fraga.  *See e.g.*  https://www.khou.com/article/news/investigations/judge-candidates-ballots-lawsuit-harris-county/285-f40a1a50-ca7b-42fe-bb09-098e64363f31 .

8.      Defendants bribed witnesses to perjure themselves, bribed landmen, title companies, and other attorneys to participate in their schemes; bribed witnesses to claim ownership of fake trusts and sham companies, and pretend to be bona fide purchasers using fraudulent instruments and perjured testimony.

---

[4] The Criminal Enterprise ultimately caused twenty-one cause numbers in eight courts, *infra*, none of which adjudicated these clams, all of the basis of which was concealed from discovery and all of the courts.
[5] Carter was disqualified, Barnstone forced to resign, and Morris recused in another case with these Defendants, *infra*. *See e.g.* Exhibit 90-91, 184.

9.     Defendants filed frivolous suits against Plaintiff to obstruct Steadfast's foreclosure for their loan default.  Steadfast won its contractual note default counterclaims, eviction case, and quiet title counterclaim against Defendants' frivolous lawsuits, at the unnecessary cost of over two million dollars in legal fees (which fees constitute damages herein as well) caused by Defendants' Criminal Enterprise. However, the present crimes and tort claims were not before those courts, Defendants having fraudulently concealed key information from discovery in those matters and concealed the true nature of the Enterprise from the Courts.  Perjury, fraudulent evidence and frivolous, vexatious litigation were all a part of their scheme to abuse those courts as actual vehicles for their criminal Enterprise.[6]

10.     It was not until two whistleblowers came forward in 2021 that the extent of Defendants' criminal conduct and depth of fraud were able to be proven.   The whistleblower evidence submitted herewith, including extensive audiotape recordings, is already judicially admitted, and proves the full nature of Defendants' criminal, fraudulent Enterprise.  It also establishes Defendants' criminal intent, conspiracy, and use of interstate commerce to implement their fraudulent schemes and pattern of predicate acts.

11.     Defendants continue to interfere with Steadfast's prospective sale of the collateral to this day, filing documents based upon their fraud in the Real Property Records and the First Court of Appeals, interfering with Steadfast's efforts to mitigate damages and sell the property as recently as March of 2022, necessitating urgent injunctive relief.

---

[6] One reason they have gotten away with so much fraud against so many people for so long is their ability to confuse courts, create procedural messes, exert influence certain courts, and bury people and judges in paper.  This time they are finally caught red-handed, and this Court finally has the undisputed evidence before it to do justice, and avoid the procedural quagmire this Criminal Enterprise is sure to try to create, yet again.

All Exhibits referenced herein are being provided to the Court via Thumb Drive with this Petition, as well as a paper copy for the Court's reference to follow shortly.

## II.
## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C. § 1332 as the claims are between citizens of different states. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     Further, this Court has subject matter jurisdiction under 18 U.S.C. 1964.

14.     This Court also has independent jurisdiction under 28 U.S.C. § 1331.  Under the *Smith* rule, a suit can "arise under" federal law, for purpose of conferring federal question jurisdiction, where the plaintiff's right to relief, based on a state law cause of action, turns on the construction or application of federal law.

15.     Venue is proper in this Court because the property that is the subject of this suit is located in the Southern District of Texas and the majority of events occurred in the Southern District of Texas.  Many of the Defendants reside or have their principal places of business in Harris County, Texas. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district, though they may be served nationwide pursuant to 18 U.S.C. § 1965(b).

## III.
## PARTIES

**Defendants:**

1.      **829 Yale St., LLC** is a Texas limited liability company, now forfeited, and service of process can be effectuated by and through its former manager member and registered agent Terry Fisher, wherever he may be found (see below).

2.      **Terry Fisher** is an individual who resides in Iowa or Texas, and who may be served at 601 Hayward Avenue, Ames, IA 50014-7366, 111 Tapon Avenue, Galveston, TX 77550-3131, 12509 Business Hwy. 287, Fort Worth, TX 76179,  1708 Holly Street, Unit B, Houston, TX 77007, or wherever he may be served.

3.      **JETALL Companies, Inc**., is a Texas corporation who may be served through its registered agent Legal Registered Agent Services, Inc, 5900 Balcones Drive, Ste. 100, Austin, TX 78731, formerly 700 Lavaca, Ste. 1401, Austin, TX 78701.

4.      **Ali Choudhri** is an individual who resides in Texas and who may be served at 11511 Gallant Lane, Houston, 77082; 1708 River Oaks Blvd., Houston, TX 770019, 2425 West Loop S., Houston, Texas 77027, 2500 West Loop S. Ste. 255, Houston, TX 77027, 1001 West Loop S., Ste. 700, Houston, TX 77027, or wherever he may be served.

5.      **Brad Parker** is an individual who resides in Texas who may be served at 2500 West Loop S. Ste. 255, Houston, TX 77027, 2127 Bolsover St. Houston, TX 77005, 1911 Westheimer Road, Houston, TX 77098, or wherever he may be served.

6.     **2017 Yale Development, LLC**, is a Texas limited liability company who may be served through its registered agent, Legal Registered Agent Services, Inc. 5900 Balcones Dr., Ste. 100, Austin, TX 78731, formerly at 1614 Sidney Baker Street, Kerrville, TX 78028, at 5900 Balcones Dr., Ste. 100, Austin, TX 78731, at 1001 West Loop S., Ste. 700, Houston, TX 77027.

7.     **2017 Yale Development GP, LLC** is a Texas limited liability company who may be served through its registered agent, Legal Registered Agent Services, Inc. 5900 Balcones Dr., Ste. 100, Austin, TX 78731, formerly at 1614 Sidney Baker Street, Kerrville, TX 78028, at 5900 Balcones Dr., Ste. 100, Austin, TX 78731, at 1001 West Loop S., Ste. 700, Houston, TX 77027.

8.     **Assurance Home Warranty Group, LLC** is a former Texas Limited Liability Company, now forfeited, and may be served by serving Allen Fisher, at 2802 Morrison St, Unit 408 Houston, TX 77007 or Terry Fisher, at 601 Hayward Avenue, Ames, IA 50014-7366, 111 Tapon Avenue, Galveston, TX 77550-3131, 12509 Business Hwy. 287, Fort Worth, TX 76179,  1708 Holly Street, Unit B, Houston, TX 77007, or wherever he may be served.

9.     **Cityscape Rentals, LLC** is a former Texas Limited Liability Company, now forfeited, and may be served by serving Allen Fisher, at 2802 Morrison St, Unit 408 Houston, TX 77007 or Terry Fisher, at 601 Hayward Avenue, Ames, IA 50014-7366, 111 Tapon Avenue, Galveston, TX 77550-3131, 12509 Business Hwy. 287, Fort Worth, TX 76179,  1708 Holly Street, Unit B, Houston, TX 77007, or wherever he may be served.

10.  **KAVAC Holding Company, LLC**, is a former Texas Limited Liability Company, now forfeited, and may be served by serving Allen Fisher, at 2802 Morrison St, Unit 408 Houston, TX 77007 or Terry Fisher, at 601 Hayward Avenue, Ames, IA 50014-7366, 111 Tapon Avenue, Galveston, TX 77550-3131, 12509 Business Hwy. 287, Fort Worth, TX 76179,  1708 Holly Street, Unit B, Houston, TX 77007, or wherever he may be served.

11.  **Kavac Holdings, LLC** is a former Texas Limited Liability Company, now forfeited, and may be served by serving Allen Fisher, at 2802 Morrison St, Unit 408 Houston, TX 77007 or Terry Fisher, at 601 Hayward Avenue, Ames, IA 50014-7366, 111 Tapon Avenue, Galveston, TX 77550-3131, 12509 Business Hwy. 287, Fort Worth, TX 76179,  1708 Holly Street, Unit B, Houston, TX 77007, or wherever he may be served.

12.  **Nicholas Fugedi, individually and as Trustee of the Carb Pura Vida Trust** is a Michigan resident who may be served at 480 Oakwood Beach, Brooklyn, Michigan 49230, 15555 Markese Ave., Allen Park, MI 48101, 33315 Grand River, Farmington, MI 48336, 41701 Sutters Lane, Northville, MI 48168, or wherever he may be served.

13.  **Carb Pura Vida, LLC**, is a Texas Limited Liability Company, and may be served by its registered agent, Ed Herman, at 27606 Ossineke Dr., Spring, Texas 77386, or at 5755 Beacon Hill Dr., Frisco, Texas 75036.

14.  **TransAct Title, LLC**, is a Texas Limited Liability Company, and may be served by its registered agent, Salima Umatiya, at 245 Commerce Green Blvd., Ste. 151, Sugar Land, 77478, or at 1001 West Loop S. Ste. 100, Houston, TX 77027, or its office at 6117 Richmond Ave, Suite 250, Houston, TX 77057.

15. **TransAct Holdings, Inc**. is a Texas Corporation, and may be served by its registered agent, Salima Umatiya, at 245 Commerce Green Blvd., Ste. 151, Sugar Land, 77478, or at 1001 West Loop S. Ste. 100, Houston, TX 77027, or its office at 6117 Richmond Ave, Suite 250, Houston, TX 77057.

16. **Marol Brobisky** is a Texas resident, and may be served at TransAct Title, LLC, 1001 West Loop S. Ste. 100, Houston, TX 77027 or at 902 Nashua St., Houston, TX 77008-6423.

17. **Mansoor Chaudhry** is a Texas resident, and may be served at TransAct Title, LLC, 1001 West Loop S. Ste. 100, Houston, TX 77027, or at 5826 New Territory Blvd., Sugar Land, TX 77479-5948; 1827 Misty Oaks Ln., Sugar Land, TX 77479-5589.

18. **Salima T. Umatiya** is a Texas resident, and may be served at TransAct Title, LLC, 1001 West Loop S. Ste. 100, Houston, TX 77027, or at 4712 Old Bryan Rd., Richmond, TX 77469-8947; or 5429 Schumacher Ln, Houston, TX 77056-6809; or at 221 Merrie Way Ln., Houston, TX 77024-7407.

19. **Umatiya Law Firm, PLLC**, is a Texas Professional Limited Liability Company, and may be served by serving its registered agent, Salima Umatiya, 245 Commerce Green Blvd., Ste. 151, Sugar Land, 77478, or at P.O. Box 19278, or at 1001 West Loop S. Ste. 100, Houston, TX 77027.

20. **Donald E. Huebner** is a Texas resident and may be served at 5503 Louetta Road, Suite D, Spring, Texas 77379 or 19522 Brittany Creek Drive, Spring, TX 77388.

21.     **Robert Elberger** is a Texas resident and may be served at P.O. Box 131231, Houston Texas 77219, or at Concorde (USA) Realty Services, Inc. and Concorde (USA) Realty Services, & Investments, LLC, 9 West Lane, Houston, TX 77019.

22.     **Edward Herman** is a Texas resident and may be served at 5755 Beacon Hill Dr., Frisco, Texas 75034, or at 27606 Ossineke Drive, Spring, TX 77386.

23.     **Law Offices of Edward Herman, PLLC**, is a Texas Professional Limited Liability Company and may be served by serving its registered agent, Edward Herman, at 27606 Ossineke Drive, Spring, TX 77386, or 5755 Beacon Hill Dr., Frisco, Texas 75034, or at 28314 Whispering Maple Way, Spring, TX 77386.

24.     **Norma Lopez** is a Texas resident and may be served at the Law Office of Edward Herman as office manager, 27606 Ossineke Drive, Spring, TX 77386 or 5733 Beacon Hill Drive, Frisco, TX 75034.

25.     **Allen J. Fisher** is a Texas resident and may be served at 1708 Holly Street, Unit B, Houston, TX 77007.

26.     **Michelle M. Fraga**, is a Texas resident and may be served at 1411 Woodcrest, Houston, Texas 77018.

27.     **Fraga Law Office, PLLC**, is a former Texas Professional Limited Liability Company, now forfeited, and may be served by serving Michelle Fraga, State Bar No. 24048640, 4001 N. Shepherd Drive, Suite 209, Houston, Texas 77018, by registered Agent Michelle M. Fraga, at 1411 Woodcrest, Houston, Texas 77018 or 2499 Judiway Street #4306, Houston, TX 77018.

28.   **Lloyd E. Kelley** is a Texas resident and may be served at 2726 Bissonnet, Ste. 240 PMB 12, Houston, Texas 77005; 717 Cowley Ave., East Lansing, MI 48823-3009; 7157 E. Saginaw St., East Lansing, MI 48823-9627; 6514 Buffalo Speedway, Houston, TX 77005; or 517 Collingwood Dr., East Lansing, MI 48823-3414.

29.   **BDFI, LLC** is a Texas Limited Liability Company, and may be served by its registered agent, 5900 Balcones Drive, Ste. 100, Austin, TX 78731and has Ali as manager at 1001 West Loop S. Ste 700, Houston, TX 77027.

30.   **Stephanie Alvarez** is a Texas resident and may be served at 1001 West Loop S. Ste 700, Houston, TX 77027.

31.   **Pabeshan Castle, LLC** is a Texas Limited Liability Company, and may be served by its registered agent, Sonfield & Sonfield, 2500 Wilcrest Drive, Ste. 300, Houston, TX 77042; or at 2776 Bissonnet Street, Ste. 240 c/o Box 12, Houston, TX 77005,  770 S. Post Lak, Lane, Ste. 435, Houston, TX 77056, or 2500 Wilcrest Drive, Ste. 300, Houston, TX 77042.

32.   **First American Title Guaranty Company** aka First American Title Company is a California Limited Liability Company, and may be served by its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701; or at 1500 S. Dairy Ashford St., #300, Houston, Texas 77007.

33.   **Shahnaz Choudhri a/k/a Shanaz Akter** is a Texas resident and may be served at 11511 Gallant Lane, Houston, 77082.

34.   **Texas Reit, LLC** is a Texas Limited Liability Company, and may be served by its registered agent, Legal Registered Agent Services, Inc., 5900 Balcones Drive, Ste. 100, Austin, TX 78731; or at 1001 West Loop S., Ste. 700, Houston, TX 77027

35.   **Worldwide Lending Fund LLC** is a Texas Limited Liability Company, and may be served by its registered agent, Legal Registered Agent Services, Inc., 5900 Balcones Drive, Ste. 100, Austin, TX 78731; or at 1001 West Loop S., Ste. 700, Houston, TX 77027.

36.   **Worldwide Lending Organization, LLC** is a Texas Limited Liability Company, and may be served by its registered agent, Legal Registered Agent Services, Inc., 5900 Balcones Drive, Ste. 100, Austin, TX 78731; or at 1001 West Loop S., Ste. 700, Houston, TX 77027.

37.   **Margaret Naeve Parker**, individually and as former manager and member of the forfeited **M.Naeve Antiques, LLC**, 1911 Westheimer St., Houston, Texas 77098; formerly registered agent, Margaret Helena Naeve (Parker), at 1926 Bissonnet, Houston, Texas 77005; or at 1201 COWARDS CREEK DR, FRIENDSWOOD, TX 77546-4603.

**Plaintiff:**

Plaintiff is Steadfast 829 Yale Holdings, Inc., a New Mexico Corporation.

## IV.
## CASE STATEMENT

**Parties and their roles:**

16.   Steadfast Funding, LLC is a small private real estate and construction loan servicing company owned by Marc Sherrin (together "Steadfast"). The "Steadfast Parties" are

private individuals, lending their personal retirement or other funds to make secured construction loans through Steadfast, including the loan in question; a first lien construction loan secured by real property located at 829 Yale. Exhibit 1, 11(b)(and a-e), 170. Steadfast funded over six million dollars of loans to the Defendants (first to Defendant 829 Yale St., LLC, then to Defendant 2017 Yale Development, LLC), which funds were stolen. *Id.* Not one Defendant ever paid a cent of the loans back or for the property. *Id.* The Steadfast parties had no significant litigation history until the Yale Criminal Enterprise defrauded them and interfered with their loan and title to their collateral. *Id.* The Steadfast Parties assigned the Property, and all of their claims and causes of action to a single purpose entity, Plaintiff, Steadfast 829 Holdings, Inc. commencing in May of 2021, before the whistleblowers came forward. Exhibit 170.

17. The existence of the Yale Criminal Enterprise, its intent, and the details of its schemes are proven by whistleblower evidence (the Yale Criminal Enterprise conspired to commit seventeen distinct scams designed to steal the money and title, *infra)*. *See e.g.* Exhibit B, B(a-c), *infra*. The Yale Criminal Enterprise engaged in a lengthy pattern of fraudulent and felonious sham transactions and predicate acts over several years and continuing to this day, all calculated to steal Steadfast's money and collateral. *Id.*

18. Defendant Ali Choudhri allegedly inherited over a hundred million dollars, and has infamously used that money to fund real estate schemes spawning hundreds of fraud lawsuits in Harris County. *Id.* He owns Jetall Companies, Inc., and employed Defendant Brad Parker and others to engage in rampant fraud, the Choudhri parties generally making themselves a scourge on the citizens of Harris County. *Id*; Exhibit 99; *See also e.g.:*

https://dolcefino.com/video/
https://www.houstonpress.com/news/a-lawyers-murder-makes-a-weird-houston-divorce-case-a-lot-weirder-8682209; https://setexasrecord.com/stories/512691948-galleria-area-property-owner-accused-of-running-scams; https://abovethelaw.com/2016/08/murdered-lawyer-only-the-latest-bizarre-twist-in-bizarre-divorce-case/; https://dolcefino.com/2016/08/22/assassination-bigamy-fraud-and-abuse/; https://dolcefino.com/2020/04/19/the-coronavirus-defense/.;
https://dolcefino.com/2016/08/28/the-taliban-and-president-obama-linked-to-houston-divorce-trial/; https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-judge-recused-from-civil-case-16242195.php; https://www.houstonchronicle.com/news/houston-texas/houston/article/Texts-raise-conflict-of-interest-for-Harris-15885846.php;
https://setexasrecord.com/stories/580872228-harris-county-business-owner-allegedly-hid-assets-from-creditors-suit-states; https://dolcefino.com/2016/08/25/no-gag-order-for-fridays-divorce/;
https://dolcefino.com/2020/12/01/lifestyles-of-the-rich-and-infamous/;
https://dolcefino.com/2021/01/20/a-judicial-embarrassment/;
https://dolcefino.com/2021/01/20/a-judicial-embarrassment/;
https://dolcefino.com/2020/09/14/would-you-do-business-with-this-guy/;
https://dolcefino.com/wp-content/uploads/2020/03/choudhri.jpg;
https://dolcefino.com/2021/01/13/texts-bust-a-houston-judge/;
https://dolcefino.com/2020/11/02/houston-judge-punishes-ali-choudhri/;
https://fbindependent.com/litigant-seeks-mistrial-citing-covid-p13940-1.htm

19.     Choudhri, Parker and Jetall commenced the Yale Criminal Enterprise with Fisher and the other Defendants by illegally taking title to Steadfast's collateral in a secret deal to interfere with Steadfast's loan, obstruct Steadfast's lenders' rights and foreclosure, extort the lenders, and fraudulently induce a loan workout from Steadfast.  Exhibit 3, 4, 4a21, 4a22, *infra*. They intended to, and did steal those loaned funds, *infra*.  *Id.*  Parker, his wife and her business all secretly took 'consulting fees', stealing their part of the loaned funds, and was offered a 'real' percentage of 2017 Yale along with five hundred thousand dollars cash to continue to perjure himself after they had a falling out.  *See e.g.,* Exhibit 4a22b, 4a22b DOC 475, and B(a-c). *infra*.

20.     Defendant Terry Fisher ("Fisher") was a real estate developer with dozens of projects around Houston, including 829 Yale. Exhibit 170.  He sought out and obtained construction loans from Steadfast and other lenders. *Id*.  Fisher owned or controlled

borrower Defendants 829 Yale St., LLC, KAVAC, Cityscape, Assurance Home Warranty, and other relevant companies which stole loan money and otherwise participated in the Yale Criminal Enterprise. *Id.  See also* Exhibit 55, *infra*.  Allen Fisher is his son and was participating in numerous schemes. *Id*. Fisher was secretly having problems with his other lenders on various projects.  *Id.*  Instead of resolving his troubles legally, he made a secret deal with Choudhri and other conspirators to commence the Yale Criminal Enterprise.  *Id.*

21.     Fisher secretly took a personal bribe of one hundred thousand dollars from Defendant Jetall to cause Steadfast's borrower under his control, 829 Yale St., LLC to illegally give away title to Steadfast's collateral at 829 Yale to Jetall.  Exhibit 4a22, *infra*. Fisher, Choudhri and Parker perjured themselves in front of Kelley, Fraga and others about that bribe, and concealed all relevant documents in discovery, *infra*.  They planned and commenced a series of scams as part of the Yale Criminal Enterprise, all designed to steal Steadfast's loaned funds, as well as title to Steadfast's collateral, *infra*.  Fisher and his companies later received additional funds stolen from Steadfast's loan from the other conspirators.  Exhibit 55, *infra*.

22.     Defendant Lloyd Kelley is an attorney who made himself a principal conspirator in the Yale Criminal Enterprise.  Exhibit 170, A, B(a-c) (audiotapes and transcripts[7]) etc., *infra*.  In the past, Kelley repeatedly represented Ali Choudhri in fraudulent real estate cases, and Choudhri's divorce.  *Id; see also* Exhibit 99.  In this case, he secretly took ownership of the borrowing entity, Defendant 2017 Yale, before its ultimate loan default,

---

[7] The three primary whistleblower audio recordings are labeled B(a-c), with both certified transcripts and actual audio submitted to the Court with this pleading and referenced or quoted herein.

though he pretended to be only a lawyer for the Enterprise until recently exposed by the whistleblowers. Exhibit A; B(a-c), etc., *infra*. Again, this secret ownership was concealed from all parties and courts. *Id*. During their secret ownership Kelley and his conspirators stole the loan money, abandoned the construction project at Yale, caused the loans to default, and commenced a pattern of criminal and fraudulent predicate acts, all designed to steal Steadfast's loan money and title to the collateral as part of the Enterprise. *Id*.

23.    Kelley, Michelle Fraga, and other counsel appear in numerous fraud cases for Choudhri, Parker, and related entities. Exhibit 170, 99, B(a-c). An apparent theme involves forcing their way into title or fraudulently acquiring a lien on a target property, then defrauding or extorting the legitimate owners or lienholders using sham transactions, vexatious litigation, insurance fraud, or other nefarious means. *Id*. *See also e.g.* Exhibit 184, *infra*.

24.    Choudhri and Kelley were defrauding Choudhri's wife in her divorce case, hiding assets from the Court, and Choudhri apparently failed to pay Kelley over three million dollars in legal fees. Exhibit B(A-C), *infra*.[8] Choudhri was using Brad Parker as the fraudulent 'front-man' purportedly owning 2017 Yale, to defraud his wife and that Court. *Id*. 2017 Yale was Steadfast's borrower entity. Exhibit 170, 11(a-e). Then, Choudhri secretly gave Lloyd Kelley all of the membership interest in 2017 Yale Development, LLC, which owned title to the collateral property subject to Steadfast's lien. Exhibit A, B, B(a-c) *infra*. He secretly gave Kelley full ownership of the borrower entity 2017 Yale as

---

[8] There being no honor among thieves, they have even sued each other claiming each other are frauds, though they usually resort to confidential arbitration to conceal their fraudulent schemes from the public. Exhibit 103.

payment for these delinquent legal fees. *Id*. Kelley acted as primary counsel in numerous courts, conceal and perjuring himself about his involvement, *infra*.

25.     Defendant TransAct Title and its affiliates regularly work with these conspirators in their schemes. Exhibit 170, 99, B(a-c).   Mansoor Chaudhry and Salima Umitaya own or control TransAct Title, LLC and a law firm participating in the Yale Criminal Enterprise, along with Elberger, Herman, and other Defendants who all participated in creating fake entities and prepared fraudulent instruments for the Enterprise to carry out its seventeen scams. *Id*.   They and First American Title Company issued a fraudulent title insurance policy to a fake trust based upon fraudulent documents, omitting Steadfast's liens, and filed it in federal Court to support frivolous title claims in an attempt to steal the property.

26.     Defendant Don Huebner is a landman who fabricated a fraudulent title abstract and perjurious affidavit which the Enterprise filed in multiple Courts, omitting Steadfast's Loan Documents and liens, which Defendants knew had already been adjudicated to have been valid, prior recorded, in default, without excuse. *Id; see also e.g.,* Exhibits 94, 115, *infra.*

27.     Defendant Nicholas Fugedi is a Michigan friend of Lloyd Kelley, bribed to participate in the fraudulent Yale Criminal Enterprise, posing as a fake trustee and filing fraudulent documents as a sham "bona fide purchaser" of the collateral.  Exhibit 86(a-v), G, B, 170, *infra*. Fugedi's fake transaction was designed to help the Yale Criminal Enterprise avoid Steadfast's judgment on the loan default, obstruct Steadfast's foreclosure on its collateral, and ultimately try to steal title to the collateral using fake evidence, fraudulent real property documents, and frivolous litigation. *Id.*

28.     Defendant 2017 Yale Development LLC and its Manager 2017 Yale Development GP, LLC, are sham companies created and owned by Kelley, Parker, Fraga and Choudhri, to defraud Steadfast, fraudulently induce a loan workout from Steadfast for more funds, steal Steadfast's loan money, distribute it to themselves and the Fisher entities pursuant to the secret "MOU",  steal or extort title to Steadfast's collateral at 829 Yale Street, and later give away yet another illegal fraudulent transfer deed to Fugedi's fake trust. Exhibit 170, 11(a-e), 102, 35, 35c, 14, A, G, 86(o), *infra*.  Kelley, Fraga, and Choudhri bribed Parker to act as a fake "front man" to pretend he owned the companies, present perjured testimony, hide assets from Steadfast, Choudhri's wife, the Courts, and even their own supposed "clients" such as David Alvarez.  *Id; see also* Exhibit B(a-c) *infra*.

29.     After secretly acquiring ownership of 2017 Yale, Kelley bribed Fraga and other attorneys into doing frivolous and vexatious legal work for the Enterprise, all knowingly using fraudulent documents and perjured testimony.  *Id*.  The Enterprise bribed these attorneys with promises of a percentage of ownership of the company they were pretending to represent as lawyers (2017 Yale, which owned title to the collateral subject to the liens they were attempting to destroy).  *Id*. They also bribed Parker to perjure himself, continue the sham, and participate in fraudulent transactions, also based upon a promised percentage of actual ownership of 2017 Yale, and accordingly all intended to benefit from their plan to split of the profits of their fraudulent Criminal Enterprise against Steadfast.  *Id*.

30.     2017 Yale never had any assets of any kind other than Steadfast's loan money (which it stole and distributed among the Yale Criminal Enterprise), and the record title to the collateral at 829 Yale subject to Steadfast's lien.  Exhibit 35, 35c*; Exhibit 102 starting

page 78; Exhibit 109, 110, *infra*.  2017 Yale later illegally tried to give title to the collateral away to Kelley's fake trust using Fugedi and Carb Pura Vida in a fraudulent transfer to avoid Steadfast's judgment and foreclosure. Exhibit B(a-c), G, 86(a-v), *infra*.  After stealing all Steadfast's (and its own contractors') funds, 2017 Yale only had $355 dollars left in its bank account. Exhibit 55, 109, 110.

> ***STEADFAST COUNEL: "…other than funds that were deposited into 2017 Yale's account that came from the loans, the Steadfast loans, was there ever any money contributed into or paid into 2017 Yale?*** *MS. FRAGA:  Objection.  Form. PARKER:  If we're going to ignore that small minor deposit that we're talking about to open an account, then I don't believe there was additional funds put in."* Exhibit 35, at pg. 34.

31.     In addition to participating in the bribes, fraudulent documents, fake legal representation, sham ownership of 2017 Yale, and frivolous litigation, Michelle Fraga also personally secretly formed and was president of a sham Wyoming company, Tax Relief, Inc.  *See e.g.* Exhibit G, 81-83, *infra*. The Enterprise secretly created this sham entity to fabricate a fraudulent tax lien scam against the collateral as part of the Yale Criminal Enterprise.  *Id*;  *see also* Exhibit 99(a-c), *infra*.[9]  Kelley and Fraga presented Parker to perjure himself in deposition about this transaction and other matters, and concealed all relevant documents from discovery, *infra*.

32.     David Alvarez is a Dallas businessman making real estate loans through his company D&A Alvarez Group, LLC. Exhibit 170. D&A also made a loan to Fisher/829 Yale St., LLC as a second lien lender secured by 829 Yale. *Id*; Exhibit 2. The Yale

---

[9] e.g. FRAGA:"what does that do with the tax lien because brad transferred it and the Secretary of State still shows brad parker on it?" Exhibit B(C) 0:19.

Criminal Enterprise also defrauded him out of his lien, all of his claims, and into releasing his debtors and tortfeasors, joining the Criminal Enterprise, and convinced him to file fraudulent documents on their behalf. *See e.g.* Exhibit 18, 29, 44-46, G, 86(a-v), *infra*. He lost everything as a result. *Id; see also* Exhibit 92. Alvarez then became a whistleblower and produced documents relevant to the Yale Criminal Enterprise in 2020 and 2021, which the conspirators had previously concealed.   Exhibit G, 86(a-v).

33.     Chris Wyatt was allegedly employed by Jetall Companies, Inc. as Chief Financial Officer, reporting to Choudhri. Exhibit B.   During Wyatt's employment, Choudhri asked Wyatt to record their conversations with Parker, Fraga, and Kelley, to use as leverage so that Choudhri could swindle more of the profits from the Yale Criminal Enterprise for himself at the expense of the other conspirators. *Id.  See also* Exhibit B, B(a-c).  Wyatt was (wrongfully) terminated for refusing to perjure himself for the Criminal Enterprise, became a whistleblower instead, and properly produced authenticated audio tapes and information relevant to the Yale Criminal Enterprise in 2021, finally shedding full light on the Enterprise. *Id*.

**Background:**

34.     This case arises from a borrower in default (Defendants 829 Yale St., LLC and Terry Fisher on a personal guaranty) entering into a fraudulent Enterprise (with Defendants Jetall, 2017 Yale, Choudhri, Parker, Kelley, Fraga, Fugedi and the others), to engage in a persistent pattern of criminal and fraudulent conduct designed to defraud, steal, or extort

the lenders' (Steadfast and Alvarez) money and title to the collateral property at 829 Yale in Houston (the "Yale Criminal Enterprise").[10]

35.     Defendants used the U.S. mail to send original fraudulent instruments to record in the Harris County Real Property records, used interstate electronic communications to electronically file fraudulent instruments in the real property records and state and federal courts,[11] sent perjurious affidavits and transcripts via interstate email, conspired and committed numerous predicate acts via interstate cellular communications, wired bribe money using vehicles of interstate commerce and national bank accounts, illegally wired Steadfast's loaned funds from 2017 Yale's bank account to the other members of the Enterprise, created a fake Wyoming company and fake Michigan trust to enter into sham transactions, and generally used interstate emails and cell phone communications to commence plan, and execute the Yale Criminal Enterprise and the criminal and fraudulent predicate acts against the Steadfast parties in multiple states.  *Id*.

**FIRST PREDICATE ACT:  The Yale Criminal Enterprise secretly forms and commits its first Scam: The Fisher/Jetall fraudulent title transfer, tortious interference, and extortion scam.**

36.     Steadfast loaned its money to 829 Yale St., LLC (and later to 2017 Yale Development, LLC),[12] subject to a valid, prior recorded first lien deed of trust.  Exhibit 1.

---

[10] The Allegations in this Petition are verified by Declaration of Marc Sherrin, Exhibit 170, but generally all corroborated with additional undisputed evidence and judicial admissions.  More detailed evidentiary citations are contained in the timeline below.  All Exhibits are provided to the Court by paper copy, and via thumb drive, concurrently with the filing hereof.  Those few Defendants who do not already possess copies of the Exhibits will be provided them after appearance.

[11] Even the Harris County District Clerk's website was illegally altered at one point. *See e.g*. Exhibits 90-91, *infra*.

[12] Brad Parker, the CFO of Ali Choudhri's infamous company, Jetall Companies, Inc., claimed to own 2017 Yale. They fraudulently induced and extorted Steadfast into doing a loan workout to 2017 Yale using the leverage of a frivolous suit by Jetall to enjoin Steadfast's foreclosure due to 829 Yale's fraudulent transfer of collateral to Jetall.

Fisher secretly caused 829 Yale St., LLC to illegally[13] give away title to Steadfast's collateral to Jetall (Exhibit 3, 4, 4a21, 4a22).   Jetall used its fake title to defraud (by promises of quick loan repayment, among other things) and extort (by threat of endless litigation if they didn't loan more 'short term' money) Steadfast into agreeing to a loan workout.  *See e.g.* Exhibit 170.   The Enterprise threatened to litigate against foreclosure forever, but in the alternative promised to use their 'hundreds of millions of dollars' to repay the loans quickly 'if Steadfast would just continue some bridge funding while they gathered the funds.' *Id*. Choudhri had Parker created the sham entity 2017 Yale, and Jetall conveyed title to 2017 Yale as part of that scheme.  Exhibits 11(a-e).   Steadfast funded more loan money to the Enterprise, six million dollars in total principle.  *Id*.

37.    Later, to avoid Steadfast's impending final judgment on the loan defaults against 2017 Yale, 2017 Yale illegally gave title to the collateral away again, this time to a fake trust, (the 'Carb Pura Vida Trust', Fugedi supposedly being the trustee), for no consideration other than the sham party bribes.  *See e.g.* Exhibits B(a-c), G, 86(a-v), *infra*.

38.    Not one of the Defendants ever paid a single cent for the property or to repay Steadfast's loans since the start of the Enterprise:   *Id*.  Exhibit 92, 170.

> "***Neither the Carb Pura Vida Trust nor 2017 Yale ever paid anything for the property or to Steadfast" "Kelley and Fraga, told me they had devised a stratagem … to prevent Steadfast from being able to foreclose on the Property."*** Exhibit G; *See also* Sherrin Declaration (Exhibit 170); *See also* Exhibit 35, 35c. 102 starting page 78.[14]  *See also* Exhibits 55, 109, 110.

---

[13] *See e.g*., Texas Penal Code § 32.33; Deed of Trust and CTNL, Exhibits 1, 11b and 20e, respectively.  *See* Exhibit 4, 4a22, and 3 for the secret deed and "MOU" deal to extort Steadfast and other lenders, *infra*.

[14] The only payment was Kelley's bribe to Alvarez to get him to sign the fraudulent, ineffective release.  Exhibit G. The fake illusory note was never signed.  Exhibit G; 86a,d,g.  The fake trust agreement was never signed, though the

STEADFAST COUNSEL: *Where did the money come from and who all is involved in this transaction?...***PARKER: *…outside of draws from the lender [Steadfast], that no meaningful funds were contributed [by the Yale Criminal Enterprise] to this."* Id;* Exhibit 35, at Pg. 104-5.

*THE 190th CIVIL DISTRICT COURT, JUDGE MILLER QUESTIONING: You made a deal with somebody for it [Steadfast's collateral] to be transferred?* **PARKER: I did** *--THE COURT: And you don't know who you did that with?* **PARKER: I don't know the specifics, no.** *THE COURT: How much money did you get for it?* **PARKER: Cash ~~mutual~~ [neutral], no money.**" Exhibit 102 (all with Kelley and Fraga presenting Parker).

STEADFAST COUNSEL: *"there's no disputing that you failed to make your interest payment …. right?* **A. That's --- [PARKER]: -- a true fact, yes."** Exhibit 35, at Pg. 104-5.

39.    Fisher, 829 Yale St., LLC, Jetall, Choudhri and Parker initially defrauded Steadfast by Jetall illegally taking title to Steadfast's collateral and conspiring to defraud Steadfast and tortiously interfere with Steadfast's original loan.[15] Exhibits 4, 3, 151a21; compare Exhibit 1 and Texas Penal Code 32.33, *infra.*   Choudhri owns Jetall, and employed Brad Parker (and Chris Wyatt).  Fisher took a personal bribe of $100,000.00 from Jetall, to have his company, 829 Yale St., LLC secretly and illegally give away title to Steadfast's collateral and have Choudhri and Kelley interfere with the loan and extort funds and title from Steadfast.  Exhibit 4, 3, 4a22.[16]  The Enterprise failed to inform the lenders of their

---

fraudulent lien release and the fraudulent transfer deed were recorded.  *Id.*   There was no fully formed real trust, no consideration, and no closing on July 22, 2019, the date of the deed.  *Id*;  Exhibit G, 86R.  There was never any consideration for the transfer to Fugedi.  *Id*; Exhibit 102 (ROA.3227); *see also* Exhibit 35 at pgs. 34, 206.

[15] Including Cause No. 2016-64847.  The 190th denied Steadfast's joinder of these claims, creating the mess on appeal in other cause numbers relating to the Disqualification of the 125th.

[16] Fisher perjured himself about this and other matters in deposition:

*"…why would you release Jetall and Ali Choudhri from claims or causes of action related to this property?... there's no particular reason for that? A.  Nothing. And what did you receive for that? A. Well, I wouldn't have received anything…What did he receive? A. The same smile back that -- he gave me. So as far as you know, no one paid anything to anyone for this agreement? A. Looks like we paid $10.00. Hand paid…. And a smile. And nothing else? A. Nothing else. You actually quit claimed 829 Yale property to 2017 Yale Development? A. If that's what it*

fraudulent transaction, which is a felony and a Loan Default. Exhibit 170, 1, 11(a-e). The Enterprise concealed the bribe, check, and signed agreement throughout the entire litigation. *Id*. The Enterprise never produced any significant documents, and never testified truthfully in any of the litigation.

***The Second scam:  The 2017 Yale fraudulently induced loan workout scam, and using the 190th District Court as a tool to extort and defraud the lenders.***

40.     The Conspirators filed frivolous suits to enjoin Steadfast and Alvarez' foreclosure, which the lenders immediately posted once they discovered the fraudulent conveyance to Jetall, *infra*.[17]  The Enterprise then created 2017 Yale to fraudulently induce and coerce a loan workout from Steadfast, 2017 Yale acquiring title to the collateral subject to Steadfast's liens, secured by the property at 829 Yale Street. *Id.  See also* Exhibits 14, 8, 11a-e.

41.     The conspirators told every Court, and every party, that Brad Parker owned 2017 Yale, and that he would pay off the loans quickly, 'he just needed some temporary bridge funds from Steadfast.' Exhibit 170. They also threatened Steadfast with endless frivolous litigation if Steadfast refused a loan workout.   *Id*.

42.     However, Choudhri secretly owned 2017 Yale, and Parker was a 'front man.' Then they secretly gave Lloyd Kelley all of the membership interest in 2017 Yale on October 9, 2017.[18]  *Id.  See* Secret Assignment, Exhibit A, with authenticating declaration Exhibit B,

___

says...***The undersigned Fisher Parties, for your $10.00, paid by 2017 Yale, and other good and valuable consideration, which there is none, right?...Nothing else?*** *A. That's it. The same smile I'm giving you."* Exhibit 185. Pg. 317-319

[17] Fisher was trying to scam more money on his own, which prompted a lender title search.

[18] Kelley used "Pabeshan LLC," to front for him.  However, it was Kelley all along:  *KELLEY: "Pabeshan?  You're crazy.  Pabeshan is not involved in that at all.  It's just not involved."* ***CHOUDHRI: "before me and you went to Pakistan, I transf…"*** *KELLEY: "you transferred 2017 to me"* ***CHOUDHRI: "yes"*** *B(C) 16:20.* Exhibit B.

and Exhibit 106.[19]   Kelley took a secret assignment signed by Parker and Choudhri in 2017, and then fraudulently transferred title to the collateral again during Steadfast's trial in 2019 to Kelley's fake "Carb Pura Vida" trust.   *See* Exhibit A; 86; G, 102. Kelley bribed Fraga, Parker, and others with secret ownership interests in 2017 Yale, all conspiring together to extort cash and title to the property from Steadfast.   *See* whistleblower audiotapes, Exhibit A, B, B(a-c), *infra*.[20]

43.     Choudhri had his conversations with Fraga, Parker and Kelley recorded by Jetall's employee, Chris Wyatt, intending to blackmail Kelley, Parker and Fraga into giving 2017 Yale back to him by using the audio in a confidential arbitration and/or threatening their law licenses.   *Id*.  All of the conspirators were planning together on stealing Steadfast's loan money and the title to the property.   *Id*.  The audiotapes reflect their arguments about which of them would benefit the most from their fraudulent Yale Criminal Enterprise against Steadfast.   *Id*.  These tapes are not privileged; Kelley didn't represent Choudhri, Jetall or any party at the time of the recording, the topics involve no Jetall business, and they are scheming to commit ongoing crimes and fraud throughout the conversations.   *Id*.  They have already been judicially admitted without controversion or dispute in other

---

[19] Choudhri secretly gave Kelley 2017 Yale in exchange for three million dollars Choudhri owed Kelley, apparently for defrauding Choudhri's wife in the divorce:  Kelley: "*you wanted to exchange that for some shit on yale which I've now spent two and a half years of my life on, it's always a fucking mess with you Ali, I just wanted the cash, just wanted the cash that you owe me, and then you wanted to sell me a condo, and then you wanted to sell me the whole building*"  Exhibit B(A) 17:16.  "*you know none of it is ever going to be delivered, you know that*." B(A) 17:41. "*You gave it to me because it's a piece of shit going that was going into litigation. That's the truth.   You sold me something you knew you couldn't even hold onto.*"  B(A) 17:45. All of these Defendants concealed this document, transaction, and evidence, and perjured themselves regarding this issue, *infra*.

[20] Due to time constraints, these lengthy audio tape transcripts were initially submitted with in-house created summaries, referenced by tape time; later transcribed by Court reporter, with later citations using traditional page-line references.  In the upcoming Summary Judgment pleadings, all references will be trued up to page line references. The Court also has the actual audio files for review.

Courts (the conspirators essentially "pleading the 5th"). *Id.*[21]  *See also* Memorandum on

Admissibility of Wyatt Audio filed in conjunction herewith and with <u>Exhibit B</u>.

| | |
|---|---|
| *Kelley:* | "I've got paperwork that shows you signed that said Brad [Parker] owns it and he's selling it to me." <u>Exhibit B, A, and</u> <u>B(A) 27:50.</u> |
| **Ali Choudhri:** | **"you knew because of my divorce, who owned 2017 Yale from the outset… 24:09…. I had Brad as my proxy in front."** <u>B(A) 24:24.</u> |
| *Lloyd Kelley:* | *"I OWN 2017 Yale!*  <u>B(A) 5:13.</u> |
| **Ali Choudhri:** | **"why did you have Brad testify that he owns and controls?"** *B(A) 22:24.* |
| *Kelley:* | *"I don't give a fuck what Brad testified to!"*  <u>B(A) 22:28</u>. *"because its MINE! Because 2017 Yale was mine, not yours!"* <u>B(A) 33:17</u>. |
| *Kelley:* | *"Brad was a front guy"* <u>B(A) 31:03</u>. |

44.     2017 Yale filed false Certificates of Formation with the Secretary of State

concealing 2017 Yale's true ownership.  <u>Exhibit 14</u>.[22]   Transferring the membership

interest of 2017 Yale to Choudhri or Kelley and the other Conspirators also constituted

another loan default, as Steadfast's Deeds of Trust and other Loan Documents precluded

not only transferring the collateral away, but also transferring any membership interest of

2017 Yale, the borrower, away.  <u>Exhibit 11b,d</u>.  The Enterprise concealed all this evidence

during the loan default case and trial, all the way through the title case, and to the present,

until the whistleblowers came forward in 2021.

45.     Kelley had secretly acquired 2017 Yale before it abandoned the Yale construction

project and missed its loan payments due Steadfast, defaulting in November of 2017.  *Id.*

*See e.g.,* <u>Exhibit 35, 35c, 10, 32, 10, 17, A</u>.   Kelley and Choudhri caused 2017 Yale to

---

[21] *See* Motions to Dismiss Appeals and for Just Damages filed in the 5th Circuit and First Court of Appeals of Texas, *infra*.
[22] 2017 Yale never produced any relevant documents, such as 2017 Yale's company documents, and the 190th denied Steadfast's Motions to Compel, even after mandamus.  The SOS records show circular management and membership – i.e., the manager LLC is the manager of 2017 Yale, and 2017 Yale is the manager of the manager LLC, to avoid accountability and hide ownership.

default, stop construction, and steal the loan money.  *Id.  See also* Exhibit 13a22, *infra*.[23]

As such, Kelley, Fraga, Parker and Choudhri each personally caused the defaults that resulted in the 190th's Judgment on the contractual loan default in favor of Steadfast, against 2017 Yale, for $8.4 million dollars.  Exhibit 92.  It is now known from the whistleblower evidence that they secretly personally caused the default.  *Id.*[24]

46.    Parker pretended to own 2017 Yale the entire time, and all of these lawyers and parties perjured themselves to that effect.  *See* Exhibits 10, 35, 35c, 102, 53, 32, 10, 17.  It turns out that Choudhri personally ordered 2017 Yale to not pay its construction contractors and abandon the project, during the time Kelley owned the company.  *Id.* Kelley and Choudhri each secretly held the project up to make their own fantasy changes to the construction plans, despite their scheme to defraud the lenders and the fact that neither of them ever paid a single cent for the property.  *Id.  See also* Exhibit 13, 13a22, 85 and B. Choudhri, Parker, and Kelley all personally caused the loan defaults and are personally responsible for the loan default final judgment, as well as for their torts and other causes of action set forth herein.  *Id.*

47.    Parker's fake ownership of 2017 Yale was critical to all of the scams from start to finish:

> KELLEY: *"I told you this is no good if Brad's out of the picture, no good…. if Brad doesn't have ownership, these claims are worthless."*  Exhibit B(c), Pg. 3-5.

---

[23] Another document concealed by the Enterprise until the whistleblowers came forward.
[24] The 190th Final Judgment only adjudicated the loan default, none of the crimes and torts.  The Yale Criminal Enterprise fraudulently concealed all of those facts from Steadfast and the Court.

FRAGA:   *"What does that have to do with the tax lien because that was Brad that transferred it and the Secretary of State still shows Brad Parker on it?"  Id.*

KELLEY:   *"Ali, you need to talk to Brad.  You need to get him over here or you're gonna have a real problem."*  [Parker then joins the call].  *Id.*

48.     This sham wasn't just the key to their fraudulent inducement of Steadfast's loans, or to allow Lloyd Kelley to drive all of their frivolous litigation posing as chief counsel instead of the owner.  It was critical to every scam.  Without Parker, Choudhri's wife would have a claim to whatever they took from Yale.   Thereafter, they would all be sanctioned and disbarred if anyone proved that fraud.    Parker's involvement was a felony for them all from the start, so they could never back off.  The title policy they planned to recover on if the frivolous title claim failed was fraudulently procured by Parker for 2017 Yale. They could never have duped Alvarez, *infra*, into hiring them, releasing his liens and claims against them, and 'flipping sides' if Alvarez had known Kelley and Fraga owned 2017 Yale.  The fake tax lien was assigned to Fraga's fake Wyoming company by Parker for 2017 Yale.  The void fraudulent transfer deed to the fake Fugedi trust was prepared by Parker for 2017 Yale.  Kelley and Fraga ran the frivolous litigation posing as lawyers. They had Parker sign a perjured supersedeas bond affidavit and perjure himself in deposition, at trial, and on appeal.  Fake trustee Fugedi's title policy was founded upon Parker's executed documents for 2017 Yale.  They had also attempted to procure <u>other loans</u> using Parker as a front for 2017 Yale.  Using Parker as a front for the original loan was a loan default justifying Steadfast's foreclosure all by itself, so none of the claims or property instruments could hold up at all if his perjury was exposed.  Everything flowed from that fraud.  The assignment to Kelley was itself a loan default, justifying foreclosure

all by itself.   That's why even after Ali and Parker had their falling out, they had to bribe

him to continue perjuring himself, *infra*.  Almost all of the attorneys filed their frivolous

claims and pleadings and worked on the fraudulent cases based upon promised percentage

interest in 2017 Yale, all founded upon Parker's fake ownership and perjured testimony to

that effect.  As Lloyd said, everything would unravel but for the Parker 'front.'   Now it

has all been proven to be a fraud by judicial admission.  All of the litigation completely

frivolous by judicial admission.  All of the transfers and fraudulent releases felonious, by

judicial admission.

49.    As Choudhri ironically stated at the end of his 2020 call with Kelley, Fraga, and

Parker, Exhibit B(c), "*These guys are f\*\*king crooks*."

### The Third Scam:  Stealing Steadfast's Loan Money.

50.    2017 Yale stole Steadfast's construction loan money remaining in 2017 Yale's bank

account, instead of paying their own construction contractors as required by Steadfast's

loan.  *See* Exhibits 11e, 17, 35, 35c, 55, 15, B.

51.    The new whistleblower evidence proves that Choudhri and Parker stole 2017 Yale's

bank account funds and quit paying its workers because they had already secretly conveyed

2017 Yale to Lloyd Kelley.   Exhibit A, B.   Kelley and all Defendants knew about

Steadfast's valid lien but did nothing to pay them or prevent any of the defaults.  *Id*. The

money went to Fisher, Choudhri, and their companies and conspirators, and was later used

to bribe other conspirators to participate as fake trustees, fraudulent lien releasors,

fabricators of fraudulent abstracts and documents, etc., *infra*. Even Parker and his wife,

and her company M.Naeve Antiques cut a secret $40,000 deal with Fisher for 'consulting' at Yale pursuant to the MOU, *infra*.  None of this was never disclosed to Steadfast, nor were these agreements or the emails circulating them produced in response to discovery, or in depositions.  Exhibit 4a22b, 4a22b DOC 475.

52.     Instead, Kelley bribed Fraga and others to join Choudhri, Fisher and Parker's scheme to defraud and split the lenders, try to wipe out legitimate liens by fabricating fraudulent evidence and frivolous litigation, obstruct foreclosure, and steal the money loaned and the property itself. Exhibit A, B, 19, 18.[25]

***The Fourth Scam: A Three Million Dollar Debt, Hidden Assets In A Divorce, And A Secret Deal Between Ali Choudhri And Lloyd Kelley Exposed By A Whistleblower.***

53.     It turns out that Choudhri owed Lloyd Kelley over three million dollars in legal fees, as he was helping Choudhri assets from Choudhri's wife and the divorce court; so, they cut a secret deal.  Choudhri and Parker secretly gave the entire membership interest in 2017 Yale to Lloyd Kelley on October 9, 2017, in exchange for extinguishing the debts of Choudhri, his mother Shanaz, and all of their entities.  Exhibit A.[26]

54.     2017 Yale's first loan payment was due in November of 2017.  Exhibit 11(a-d), 35, 35c.  The Enterprise emptied 2017 Yale's bank account and sent Steadfast's loan money

---

[25] They tried to split the lenders, buy Steadfast's first lien at a discount, without paying the second, and then fabricate a sham default to foreclose on the subordinate second lien; they tried Fraga's tax lien fraud scam, to have her straw man company foreclose and wipe out the liens; they tried to bury the lenders with thousands of pages of pleadings, and extort them into settling; they tried the fake trust fraudulent conveyance scam during trial; they tried a frivolous eviction suit; they obtained a seven million dollar baseless sanctions award against Steadfast, resulting in the disqualification and recusal of the 125th voiding that absurd abuse;  they filed a fake title abstract in a frivolous federal quiet title suit; they obtained a wrongful possession order from a J.P. Court;  this list goes on, *infra*.
[26] That transfer constitutes yet another newly discovered Loan Default, as the borrower cannot convey away its ownership without lender consent under the Loan Documents, Exhibit 11b, 20e, *infra*.

to Choudhri and the developer's entities, as per their extortion scheme and MOU.  Exhibit 4, 55.[27]  2017 Yale never paid a cent for the property or on the loan.  Exhibit 35, 35c.

55.    Despite receiving loan money from Steadfast earmarked to pay their contractors, they stole the money, and their unpaid contractors ultimately stopped work and filed M&M liens against Steadfast's collateral.  Exhibits 15, 17, 35, 35c, 170. Fisher skipped town with his portion of the bribe and the stolen loan money, and he and 2017 Yale abandoned the property and the loans.  Id.  2017 Yale and the conspirators tried, unsuccessfully this time, to swindle another loan workout from Steadfast, and then tried to acquire Steadfast's first lien without paying the second lien, so they could wipe out Alvarez and take the property on the cheap that way.  Id.  See also Exhibit 19.[28]

56.    Steadfast and Alvarez refused to participate in that scam against Alvarez, refused another loan workout, and the lenders moved to foreclose again, so Kelley offered Fraga a percentage interest in 2017 Yale to help him with the Enterprise's frivolous litigation.  Exhibit B(a-c).  They kept Parker as their 'front man' and filed frivolous suit pretending to be lawyers instead of principles in the 190th[29], to enjoin foreclosure by Steadfast and Alvarez.  Id.  They tried to bury their fraud under tens of thousands of pages of baseless

---

[27] KAVAC, CityScape, Assurance Home Warranty were all sham Fisher companies secretly getting funds from the criminal enterprise pursuant to the secret MOU, rather than using them for construction, infra.

[28]  The conspirator's first plan was to extort a purchase of the first lien from Steadfast on the cheap, fabricate grounds to use the first lien to foreclose and wipe out Alvarez' second lien, and get the property nearly free that way.  See e.g., Exhibit 19.  Fisher allegedly had some equity in the property, prior lenders had supposedly taken a loss, and Alvarez' $2.25m lien was going to be wiped out, so the conspirators would have acquired the property unburdened by over five million dollars of equity or debt.  However, Steadfast refused to betray Alvarez or participate in the conspirator's scheme.   Thereafter, the conspirators moved to Alvarez instead and tricked him into turning on Steadfast with frivolous claims to obscure the truth and prolong the extortive litigation, and then fabricate new sham transactions to try to steal the property, infra.

[29] See e.g, Exhibit 101, 111 – complete outright fabrications.

allegations and tried numerous scams out of court to try to destroy the liens against the property they secretly owned.[30]

57.     Shahnaz Choudhri a/k/a Shanaz Akter, Texas REIT, LLC, North Office Tower, LP, Worldwide Lending Fund LLC all agreed to this scam and endorsed the secret assignment to benefit from the fraud on Steadfast and secretly extinguish their debts to Kelley.  <u>Exhibit A, B(a-c).</u>

**The Fifth Scam:  *Attempted acquisition of the first lien by extortion, use it to wipe out the second lien and acquire the property.***

58.     Originally, the Enterprise wanted to acquire the first lien from Steadfast on the cheap and use it to wipe out the other liens through a fabricated foreclosure.  <u>Exhibit 19</u>. When Steadfast refused to participate in their scam, they switched tactics again, *infra*.

**The Sixth Scam:  *Contacting the Steadfast Lenders directly, to defraud them behind their attorneys' backs and dupe them into turning on the other Steadfast lenders***

59.     Kelley and Fraga knew that the Steadfast Lenders were represented by counsel. Kelley and Fraga secretly owned Steadfast's borrower, 2017 Yale, *supra*, and were pretending to be counsel for 2017 Yale suing the Steadfast Lenders.   <u>Exhibit 18</u>. Despite all that, Fraga sent the <u>represented</u> Steadfast Lenders a secret letter, without copying their

---

[30] The Enterprise caused frivolous litigation, mandamuses, attempted recusals, and appeals including the following, none of which ever adjudicated any tort claims raised herein on the merits, as the Enterprise concealed evidence and argued successfully against joinder of any such tort claims against them: 01-19-00463-CV; 01-19-00499-CV; 01-19-00555-CV; 01-19-00726-CV; 01-19-00793-CV; 01-20-00027-CV; 01-20-00133-CV; 01-20-00134-CV; 01-20-135-CV; 01-20-00188-CV; 01-20-00189-CV; 01-20-00190-CV; 01-20-00480-CV; 01-20-00481-CV; 01-20-00482-CV; 2016-64847, in the 190th Civil District Court of Harris County; 2019-23950, 2019-59191; 2019-51432 in the 125th; 03-19-CV-00249 in the Southern District, Galveston Division; 21-40365 in the Fifth Circuit; 119110044885 in Harris County Justice Court 115005 in Harris County Court at Law.

counsel, trying to get some of the lenders to fall for their deceptions, 'flip sides' and turn on the other lenders and Steadfast. <u>Exhibit 19b</u>. This is what they later did to Alvarez, a disastrous decision for him, *infra*. They typically use such tactics create so much confusion and corruption in their cases that they get away with fraud all the time. This time, the Steadfast lenders could not be duped or corrupted, and had the grit to fight through to ultimately prove the truth.

### The Seventh Scam: The Alvarez Deception

60.     When they couldn't get Steadfast to participate in their scam against second lien holder Alvarez, the Yale Criminal Enterprise instead tricked Alvarez into a massive, almost unbelievable disaster. They tricked Alvarez into ceasing communications with Steadfast and his own attorneys, ceasing prosecuting his foreclosure against the Enterprise, and dropping his lawsuit against his borrowers. They tricked him into hiring Kelley and Fraga as his lawyers (without disclosing that Kelley and Fraga secretly owned and controlled his collateral and debtors; without disclosing that they had a secret deal with Fisher to defraud Alvarez; and without disclosing that they had first tried to get Steadfast to sell Alvarez out).[31] They tricked Alvarez into releasing his two and a quarter million-dollar lien against the Property they secretly owned, and releasing the personal guaranty against Fisher, their other client. They tricked him into releasing all of his claims against Kelley, Fraga, Parker, Jetall, Choudhri, 2017 Yale, 829 Yale and Fisher, the people who defrauded him and defaulted on his loan. They tricked Alvarez into quitclaiming his interest in the property to

---

[31] Kelley tricked Alvarez into signing an arbitration agreement, so presumably they are now engaged in that forum, together with likely bar and judicial complaints.

their secretly owned entity, 2017 Yale, without even telling their own client that he was actually giving the property to them. They tricked him into flipping sides in the suit, and suing Steadfast and his prior lawyer on baseless claims instead (subject of course, to a 45% contingent fee). *See* Exhibits 18, 19, 29, 44, 45, 46, G. They induced Alvarez into defaulting on his own obligations to Steadfast. *Id*. They tricked him into doing this all for no consideration. *Id*. Their trickery and his releases precluded causation of any damages by Steadfast or Alvarez' prior attorney (Aycock) as a matter of law, even if Steadfast had ever done anything wrong. *See e.g.* Exhibit 174. Of course, they lost all of those frivolous and fraudulent claims for Alvarez, exposed Alvarez to criminal liability for the fraudulent lien releasees and other documents they induced him to sign, and subjected him to a civil judgment of over eight million dollars against his company D&A Alvarez, *See e.g.* Exhibit 92, *infra*. However, this deception relieved the Yale Criminal Enterprise of over two million dollars of debt, and from tort and debt claims by Alvarez. This deception caused massive confusion in the Courts.

***The Eighth Scam: The Tax Lien Scam.***

61.     The Yale Criminal Enterprise secretly formed another sham company ('Tax Relief, Inc." in Wyoming) as a straw man. Exhibit 81-83, *infra*. Fraga incorporated it and was its president. *Id*. They declined to authorize the sham company to do business in Texas to keep its identity secret and confuse it with the real "Tax Relief, Inc." which knew nothing about it. *Id*. Exhibit 170. Fraga and Kelley tricked their new client, Alvarez, into giving them another two hundred plus thousand dollars to pay delinquent Harris County property taxes owed by 2017 Yale on the collateral. *Id*. However, instead of extinguishing the tax

lien as legally required, by having 2017 Yale use the money to pay the taxes directly, they instead had Tax Relief, Inc. secretly pay the taxes using Alvarez' money.  This sham arguably created an assignable (though fraudulent) tax lien instead of extinguishing the lien.  *Id.*[32]  But for fraud, which they felt no one could prove, the tax lien would be superior to Steadfast's lien.  They caused 2017 Yale (using Parker again) to assign the fake tax lien to the fake Tax Relief, Inc., which they then intended to use to secretly foreclose the fraudulent but legally superior tax lien held by Fraga's sham company. This scam would arguably wipe out Steadfast's first lien, giving the Yale Criminal Enterprise title to and possession of the property.[33]  *Id.*    They would have then quickly found or fabricated a "bona fide purchaser" before Steadfast or the Courts learned of the fraud, and denuded the funds, the liens, and rendered Steadfast's remedies useless.  *Id.* Steadfast discovered the scam and prevented that scam from being consummated. *Id.*   Ultimately, when Alvarez became a whistleblower and fired Kelley and Fraga as his lawyers, his new counsel released the fake tax lien.  *Id.*

***The Ninth Scam:  The Tort Severance/TCPA sanctions scam.***

62.    During the litigation, Steadfast became aware that the Jetall deed transfer and some of the early defaults were also likely tortious, even though the Enterprise concealed or spoliated all of their documents, refused to produce any documents, convinced the court to

---

[32] Kelley, Fraga and Parker perjured themselves on this point too, claiming that 2017 Yale took a loan and extinguished the tax liens in deposition, *infra*.

[33] In theory, a superior lienholder owes a subordinate no notice of foreclosure.  Steadfast busted that scheme, but the 190th refused any of Steadfast's related relief requested. Steadfast sleuthed out the scam and shed light on it, preventing it from going forward.  When Alvarez finally figured out how badly he had been defrauded, he fired Kelley and Fraga, gained control of Tax Relief, Inc., and released the fraudulent tax lien to avoid civil and criminal liability as he became a whistleblower.

deny Steadfast's motions to compel, and perjured themselves to cover up the truth. Exhibit 170.  The Steadfast Parties attempted to assert the tort claims they had become aware of in 2019 as counter and third-party claims in the frivolous suit by the Criminal Enterprise. *Id.  See also* the massive trial court record in the 190th, Cause No. 64847.  However, the Enterprise convinced the 190th to force Steadfast's tort counter and third-party claims into the 125th District Court of Harris County, Texas, instead of being heard together with the note default counterclaims, and the baseless tort claims the Yale Criminal Enterprise had fabricated against Steadfast to obstruct foreclosure and bury their fraudulent conduct.  *Id.* The Enterprise 'somehow' "convinced" the 125th to arbitrarily and *ex parte* award them nearly seven million dollars in absurd sanctions and fees, mere three weeks into that case, in the middle of trial preparations for the 190th, in spite of clear and convincing undisputed evidence proving Steadfast's claims, and without any supporting pleadings or evidence of their own.  *Id*.  The Enterprise and 125th accomplished this farce through proven misconduct ultimately resulting in the proper disqualification and recusal of the Judge of the 125th after a lengthy trial by the Honorable Judge Susan Brown.  Exhibits 90,91,170. That disqualification order renders that judgment void. *Id*. Carter is one of the three judges already disqualified, forced to recuse, or forced to resign so far, *supra*.

**The Tenth Scam:  The Fraudulent Transfer of Collateral to Kelley's Fake Trust.**

63.    After causing Steadfast over a million dollars in unnecessary legal fees, the Yale Criminal Enterprise lost summary judgments on the contractual debt default, and all of their fake tort claims and defenses against Steadfast in the 190th.   During Steadfast's damages trial on 2017 Yale's liability for the contractual note defaults, the conspirators

caused 2017 Yale to secretly fraudulently transfer its only asset (Steadfast's collateral, the property at Yale), again, this time to a fake "trust," which they attempted to paint as a 'bona fide' purchaser.  Exhibit G, 86(a-v), audiotapes B(a-c), *infra*.  Still concealing the true ownership of 2017 Yale, the fake grantor, they bribed Defendant Fugedi to join the Enterprise as a fake Michigan trustee, to be a fake grantee.  Elberger, Herman, Lopez all created or participated in fake beneficiaries and settlors of this fake trust and the Transact Title Defendants deliberately circulated the fraudulent documents, obtained the fraudulent title policy, and prepared a fake closing.  *Id*.  Steadfast regularly reviewed the real property records for new scams committed by the Enterprise, and thus discovered the secret transfer during trial.  Exhibit 86(o), 102, starting page 78, *infra*.  Kelley, Fraga, and Parker perjured themselves in the 190th, claiming that they had nothing to do with that secret transaction.  *Id*.  They also bribed and defrauded Alvarez into executing a fraudulent release of Steadfast's lien, and used that ineffectual fake document to try to spring the entire fake transaction, attempting to make the fake trust a bona fide purchaser free of Steadfast's lien.  Exhibit G, 86(a-v), *infra*.  The Enterprise fraudulently obtained a title insurance policy with Transact Title and First American and used that together with a fraudulent title abstract by Huebner to fabricate a quiet title claim in federal court in Galveston.  *Id.  See e.g.* Exhibit 86(a-v), 95, 94 v. 115, *infra*.

64.     The Enterprise had 2017 Yale secretly give away a deed to its only remaining asset, the property at 829 Yale, to Kelley's fake trust, with Fugedi posing as the fake trustee.[34]

---

[34] This transfer is also a felony by Kelley, Choudhri, Parker, 2017 Yale, Fugedi, the fake trustee, and numerous others. *See* Penal Code § 32.33, *infra*.  *See also* Exhibits 11b, 20e, 88, 89, G, 102.

**CHOUDHRI:** *"how is the trust, the pura vida or whatever it is, gonna deed the property back to me?  How is that going to happen?*
*KELLEY:*       *"it's not…"*

**CHOUDHRI:** *"but I thought we were moving it to protect it and it would be deeded back"*

*KELLEY:*       *"we moved it so that* **[Steadfast]** *couldn't get it."*  *B(B) 11:18; Pg. 19-20.* Exhibit B authenticating*.

**Criminal and fraudulent intent confirmed**.

65.     The trust scam was more than just a fraud on Steadfast, Alvarez, and the Courts. When the Enterprise lost the loan default summary judgments and all of their fake tort claims and defenses, Kelley began arguing with Choudhri about the secret assignment of 2017 Yale in exchange for canceling Choudhri's prior debt to Kelley.   Exhibits B, B(a-c). Obviously, the Yale Criminal Enterprise had only been successful in defrauding Steadfast and causing Steadfast damages, but had not been able to steal title to the collateral. Suddenly, Kelley didn't like that crooked deal anymore, and regretted extinguishing $3 million in debt to Choudhri and his family and companies, in exchange for Yale.  *Id*.  By (illegally) putting the property into his "fake trust" during trial, Kelley was also gaining leverage against Choudhri.  *Id*.  This was Kelley's attempt to benefit the most from the Yale Criminal Enterprise, if the Enterprise was ultimately successful in stealing the collateral or extorting a settlement.  *Id*.

66.     The new whistleblower evidence filed herewith exists because Choudhri was having his conversations with Kelley taped, for use against Kelley to threaten his law license, after

they stole title to Steadfast's collateral.[35] *Id*.  They were fighting over which of them would benefit the most from the Criminal Enterprise's fraud on Steadfast. *Id*.

**The Eleventh Scam:  *Perjury and fraudulent documents to fabricate a claim of bona fide purchaser by the fake trust.***

67.     Still being defrauded as to the extent of the Criminal Enterprise, Steadfast discovered the fraudulent transfer of Steadfast's collateral during the 190th note damages trial.  *See* Exhibit 102, starting at pg. 78.   Parker maintained the fiction that he owned Yale under oath again.   *Id*.  Kelley and Fraga claimed on the record that they were not involved, and that the fake trust was a bona fide purchaser.  *See* Exhibit 102, 88.  That argument was frivolous on its face, because the transfer was expressly prohibited by Steadfast's prior recorded Loan Documents, which had just been adjudicated to be valid, binding, in default by 2017 Yale, without excuse. *See* Exhibit 11b, 20e, 88, 92.  Steadfast's Deed of Trust and Collateral Transfer Loan Documents precluded any of these transactions, all of which are felonies.   Basic title law precluded "bfp" status to Fugedi.[36]  *Id*.  However, the fraudulent lien releases they induced and bribed Alvarez to sign, together with the fraudulent title abstract, formed the basis of their subsequent frivolous litigation to cloud Steadfast's title and preclude Steadfast from mitigating its damages, even to this day.   Exhibit G, 86(a-v), 94.

---

[35] The 190th declined Steadfast's motions to compel discovery, limited Steadfast's requested deposition time, and Choudhri, Parker, Appellee, Kelley and Fraga concealed all relevant evidence from Steadfast and the Courts in every case involving this Property, even after mandamus.  The Enterprise also violated a Restraining Order requiring them to produce such documents.  Exhibit 98.  Choudhri repeatedly blames Kelley on tape for having Parker perjure himself and repeating that the fake trust scam was Kelley's idea, through Choudhri admits participating in the scam.
[36] As ultimately confirmed by the Federal Court in Fugedi, Kelley's fake trustee's frivolous federal quiet title action. *See* Exhibits 88, 89.  *See also* Exhibits 11b, 20e.

68.     On discovering the fake trust transfer, the 190th took Parker under oath, and also questioned Kelley and Fraga about that transfer, on the spot.  *See* Exhibit 102, starting at pg. 78.   Kelley told the 190th:

> "*I did not handle the transaction*." *Id* at pg.80.

That was an outright lie.

69.     The 190th had already adjudicated that 2017 Yale borrowed six million dollars, and never paid a cent back.  *See e.g.*, 190th MSJ Number 6 and Order, 92.[37]   The 190th had already adjudicated that 2017 Yale defaulted by abandoning the Property, failing to make its payment, failing to use loan money for construction, failing to pay its vendors, property taxes or insurance, and other defaults.  *Id*.   The 190th already adjudicated that the defaults by 2017 Yale were without excuse. *See* Summary Judgment pleadings, and Final Judgment, Exhibit 92.   The 190th had already adjudicated all of the Yale Criminal Enterprises' tort claims and contract defenses against Steadfast were baseless as a matter of law and undisputed fact.  *Id*.   Steadfast had already proven that the only assets 2017 Yale ever had were the (fraudulently induced) title to the collateral at 829 Yale, and the money that Steadfast loaned it. *Id*.   *See also* Exhibit 35,35c, 102.[38]   This was all known by the Yale Criminal Enterprise by the time 2017 Yale fraudulently transferred Steadfast's collateral to their fake trust during the damages trial.[39]

---

[37] The Enterprise also stole funds from its own construction contractors. *Question:  Have you ever made any effort to pay any of those mechanic's and material lien vendors on this property?* **Parker: That wouldn't make business sense, so no.**" Exhibit 35c, pg. 89

[38] *See* Exhibits 11e, 55, 15, 17, 35.

[39] Though the 190th declined to allow Steadfast's tort counter and third-party claims in that cause number, the undisputed evidence was of record.  However, due to the total lack of honesty by the Criminal Enterprise, most of the evidence was concealed until the recent whistleblowers came forward.

70.     Brad Parker, standing right beside Kelley and Fraga in the 190th, admitted that the property at 829 Yale was 2017 Yale's only remaining asset and that it received no consideration for the transfer. Exhibit 102, *infra*. All of the elements of fraudulent transfer are judicially admitted, though not allowed to be adjudicated.[40]

71.     In fact, Kelley had personally drafted and circulated the void fraudulent transfer deed to his sham trust. *See* Exhibit 86(a-v), Exhibit G.  Kelley personally drafted and circulated the illusory fake note and assignment to his purported client, Alvarez (which was never signed, honored, or paid). *Id*.  Kelley personally drafted and circulated the fake real estate sales contract. *Id*.  He personally drafted and circulated the fraudulent Alvarez release of lien.[41] *Id*.  He personally drafted and circulated the fake assignment. *Id*. He personally arranged for his friends, Robert Elberger, Ed Herman, and Norma Lopez to help set up a sham LLC to be the secret settlor and beneficiary of his sham trust. *Id*.  Kelley personally selected and bribed Fugedi, who was a friend of his from Michigan, to be the fake Trustee, presumably to manufacture diversity to get into federal court to try to enjoin Steadfast's foreclosure again. *Id*.   He personally attended the meeting inducing Alvarez

---

[40] Exhibit 102, the trial transcript, proved that 2017 Yale received no consideration, did it to avoid judgment, and the transfer rendered it insolvent.  The federal case thereafter proved all the elements again as part of the quiet title defense, and adjudicated that Steadfast's lien was superior. *See* Federal Judgment quieting title in Steadfast, Exhibit 88, 89.

[41] The Enterprise needed something to support the "bona fide purchaser" argument for his fake trust. Alvarez had conditionally acquired Steadfast's first lien subject to Steadfast's superior rights, but defaulted due to Kelley and Fraga. He had no right to release Steadfast's lien (Exhibit 11b, 20e, 88, 89), but Kelley bribed and induced Alvarez to execute and record a fraudulent lien release anyway.  The Enterprise claimed that fraudulent release functioned to make Fugedi and the fake trust a bona fide purchaser, and justified the fraudulent title policy.  That release is also a felony under Penal Code 32.33.  They also used this fraudulent lien release with the help of the title company in issuing a policy.  They filed a fraudulent title abstract, in two courts, deliberately omitting the valid, prior recorded loan documents that were just adjudicated herein, to try to make that "bfp" argument. *See* Exhibits 88, 99.

to enter into this transaction with his other conspirators, right before the 190th damages trial. *Id*.

72.     Kelley still did not disclose to his own client at the time (Alvarez), whom he was swindling yet again, that Kelley secretly owned the property.  *Id*.  Choudhri knew about the entire fraud, participated in it, and perjured himself about it.  Exhibit B, 120. Choudhri, Parker, Fugedi, and others also participated in it and perjured themselves in furtherance of the conspiracy in Kelley and Fraga's presence, because he was bribed to do so.  *Id*.  *See also e.g.* 35, 35c, 121, 122*, infra*.

73.     The fraudulent transfer not only operated as a fraud on Steadfast, it was also a fraud on the Court (the Court thought it was adjudicating the liens such that the collateral could be foreclosed; Alvarez was expressly enjoined from selling the property, and the Court had verbally ordered the conspirators to preserve the property status quo).[42]

74.     After lying about his involvement to the 190th, Kelley said that he was not even familiar with the details, when in fact, he had just held meetings and drafted the documents himself and paid the bribes not two days before.  *Id*. Kelley responded to the Court's question as to who took the title with: "*it's called Caribbean or Carribe something trust… Carribe carribbita trust holds it for a company who's owned by a gentleman named Robert Elbert who is in Costa Rica.*" Exhibit 102 at pg.80, 84.

75.     After telling the 190th that: "*I did not handle the transaction*," Exhibit 102 *at* pg. 80, Kelley lied again when the 190th asked him: "*Were you part of forming this entity?*

---

[42] *See* Exhibit 21, versus 88; The 190th otherwise denied all of Steadfast's motions to try to protect the property.

Mr. Kelley: *No*." *Id*. The Court asked "*are any of you part of that entity*? Kelley and

Fraga both answered: "*No sir*." *Id* at pg. 79. The Court again asked Mr. Kelley if he was

the lawyer, and Kelley misled the Court again: *And are you the lawyer, Mr. Kelley?   Mr.*

*Kelley: "I'm the lawyer for David Alvarez,*" omitting the truth. *Id* at 83.

76. Kelley's fake trust didn't pay 2017 Yale or Parker anything for the fraudulent

transfer. *See* Exhibits 88, 89, 102. Kelley and Fraga were the ones in the courtroom who

knew those answers, but they lied:

| | |
|---|---|
| **Ali Choudhri:** | **"you knew because of my divorce, who owned 2017 Yale from the outset…** **24:09…. I had Brad as my proxy in front."** B(A) 24:24**;** Pg. 36, 43-5. |
| *Lloyd Kelley:* | *"I OWN 2017 Yale!* B(A) 5:13, Pg. 3, 8-9. |
| **Ali Choudhri:** | **"why did you have Brad testify that he owns and controls?"** B(A) 22:24. |
| *Kelley:* | *"I don't give a fuck what Brad testified to!"* B(A) 22:28.Pg. 33. *"because its MINE!  Because 2017 Yale was mine, not yours!"* B(A) 33:17; Pg. 49. |
| *Kelley:* | *"Brad was a front guy"* B(A) 31:03. Pg. 45. |
| **Choudhri:** | **"You knew that all along"** B(A) 31.04. **"Why did you let brad testify the next day?"** B(A) 29:57. |
| *Kelley:* | *"He just testified that he was the authorized rep, that's all he testified to."* B(A) 5:40. *"He didn't testify he owns it, he said I'm an authorized agent"* |
| **Choudhri:** | **"That's not what he said, Kelley, you told him to say that he owns it and he manages it, that's what you told…"** B(A) 31:03. |
| *Kelley:* | *"He never said the word owns"* B(A) 24:24**;** Pg. 36, 43-5. |
| **Choudhri:** | **"Yes he did, you told him to say that he owns it and he manages it.  He said he's the only … You told him to say that. Lloyd, I'm telling you, you said that"** B(A) 31:14*, Id.* Exhibit B. |

77. In fact, Brad Parker, with Kelley and Fraga present and making objections and

instructing him throughout the deposition, did testify under oath that he owned 100% of

2017 Yale in 2019:

"*How is 2017 Yale affiliated with Jetall?*
**I'm affiliated with Jetall, and I own the company.**   Exhibit 35 at Pg. 35-6.

"*Who is Yale development GP llc?*
**It's an affiliated company.  2017 Yale development has – record owner…one is tied to the other.**
**I own both entities.**  *Id* at Pg. 234.

*Are there any other members of either LLC?*
**No. I'm --** **I'm the sole member of both**.        *Id.*

78.       Kelley and Fraga objected for Parker immediately before and after this testimony,

at pgs. 232 and 235, and throughout the case, without clarification.

79.       Parker perjured himself because he was bribed by Kelley, Fraga and Choudhri, who

promised to <u>actually</u> give Parker some of the membership interest:

*Choudhri:*        *"you wanted Brad to testify that to be representative for 2017, you did not want 2017 Yale to show…."*  <u>Exhibit B(A) 5:25</u>.

*Kelley:*        *"Brad didn't want to show up, and you talked about giving Brad 5% or 10% which I thought was a great idea, so he's getting his 5 or 10%, so he stays in. "* <u>Exhibit B(A) *3:41*. Pg. 7-8.</u>

*KELLEY:*        *"… I told you this is no good if Brad's out of the picture. No good. if Brad doesn't have ownership, these claims are worthless.*  <u>Exhibit B(c), Pg. 3-5</u>.

***CHOUDHRI:***        ***"brad never had ownership"*** <u>Exhibit B(c)</u> *0:19*.

*FRAGA:*        *"what does that do with the tax lien because brad transferred it and the secretary of state still shows brad parker on it?" Id.*

80.       Choudhri also perjured himself in Kelley and Fraga's presence:

***Q. You're affiliated with 2017 --*** *MS. FRAGA: Objection. Form.* **- Yale**
*A. CHOUDHRI:  No.*
Deposition of Ali Choudhri, Pg. 209, ln 5-8; <u>Exhibit 120</u>.

***Q. (STEADFAST COUNEL): Do you have any right to control anyone that's associated with 2017 Yale Development LLC?***
*A. No.*  *MR. KELLEY: Objection Form…. MS. FRAGA: Objection Form.*

Deposition of Ali Choudhri, Pg. 210, Ln 3-7,9; <u>Exhibit 120</u>.[43]

---

[43] Just as Fisher made a farce out of his deposition, so did Choudhri.  *See* <u>Exhibit 120</u>, including some example video excerpts attached.  Choudhri couldn't be bothered not to check his phone on the record, and found the whole case uncontrollably funny, despite his having ruined dozens of lives in this case alone.

***The Twelfth Scam:  The Fraudulent Title Abstract and Frivolous Federal Suit.***

81.     After notice of their frivolous appeal in the 190th, supported by another fraudulent affidavit by Parker, Kelley and Fraga had their fake Trustee Fugedi file a frivolous Petition to quiet title against Steadfast in the Southern District of Texas, Galveston Division, seeking to enjoin Steadfast's foreclosure again, and quiet title in the fake trust.  Exhibit 170.  Quieting title was the only claim and counterclaim in that Court, the conspirators still concealing all of their crimes, torts and the true ownership of the parties.  *Id*.  The 190th had just adjudicated that Steadfast's lien was valid, in default, without excuse, and the Enterprise admits on the whistleblower tapes that the whole case was a fraud, *infra*.

82.     That Court properly declined the Criminal Enterprise's restraining order, despite the Enterprise hiring thirteen lawyers to present the case and attend hearings, and ultimately adjudicated title to the collateral in favor of Steadfast after much delay, confusion, and expense.  Exhibit 88, 89.    However, that suit remains a cloud on title due to the Yale Criminal Enterprise's frivolous appeal and fraud on the Fifth Circuit, and has prevented Steadfast from selling the collateral for value, causing further millions of dollars in additional damages to date, in excess of the stolen principle, including interest, maintenance, security, legal fees, insurance, broker's fees, and other costs.  Exhibit 170. The delay and additional damages were caused in part by conspirators filing a fraudulent title abstract, fraudulent lien releases, and making clearly frivolous claims, which deliberately omitted Steadfast's key valid, prior recorded Loan Documents.[44]  *Id*. Their

---

[44] *See* Exhibits 88, 94, 115, 20e, G, *infra*.

abstract deliberately omitted Steadfast's liens, which Kelley, counsel, and the fake Trustee, all knew were properly recorded and rendered the clearly fraudulent transfer void, *supra*. They also knew the 190th had just adjudicated them to be valid, in default, without excuse, *supra*.  They knew that Steadfast had already foreclosed on the collateral, and yet told the Federal Court that no liens existed, using a fraudulent abstract, *infra*.   *Id*.   All of their evidence submitted was fraudulent and perjurious.

**The Thirteenth Scam: The frivolous Eviction Case, also based on the fraudulent title abstract.**

83.     The Yale Criminal Conspiracy also filed a frivolous forcible entry and detainer action against Steadfast's security guard company protecting the property.  *Id*.  They filed that suit in the Justice Court presided over by the brother of the disqualified Judge Carter in the 125th.[45] *Id*.  The fake Trustee, Plaintiff in that fraudulent case, never had any landlord relationship or any other rights in the property, clearly had no standing or grounds for a writ of possession. *Id*.   That Court clearly lacked jurisdiction, as a Justice Court cannot award possession while a federal Court is adjudicating title.   *Id*.   Nonetheless, the conspirators obtained a groundless writ of possession, which they would use to obstruct any attempted sale by Steadfast, show to law enforcement to allow them wrongful access onto the property, and to generally harass Steadfast and delay Steadfast's proper recovery. Steadfast had to post bond and appeal.   *Id*.

84.     The Enterprise filed the fraudulent title abstract omitting Steadfast's recorded Loan

---

[45] Judge Carter in the 125th had to be properly recused and disqualified for arbitrarily and *ex parte* granting baseless sanctions and rulings, and other misconduct or appearances of impropriety associated with the cases in the 125th. *See* Exhibit 90, 91.

Documents in the County Court appeal of that writ of possession as well. *Id*. That county court, presided over by the now disgraced former Judge Barnstone, also clearly lacked jurisdiction, but nonetheless forced a sham trial, issued an absurd order sanctioning Steadfast without due process in what appeared to be another *ex parte* "setup," and Steadfast was required to mandamus and file an interlocutory appeal in that Court as well.[46] *Id*. The First Court of Appeals recently ruled that Carter and Barnstone lacked jurisdiction, the disgraced former Judge Barnstone's attempted sanctions against Steadfast void, and affirmed Steadfast's appeal. *Id*. *See* Exhibit 180. The conspirators were again abusing another Court as a tool to help commit their fraudulent schemes.[47] *Id*. Just days ago, the Enterprise filed a dilatory motion to extend their deadline to file a frivolous motion to reconsider that clearly proper decision, for the sole purpose of obstructing and hindering Steadfast's ability to sell the collateral property and mitigate its damages. *Id*.

85.     The new whistleblower evidence also reveals judicial admissions that the Yale Criminal Enterprise knew that 2017 Yale's and Conspirators' claims and defenses in all of the courts were frivolous. Conspirators' cases all stood upon the fraudulent testimony of Choudhri and Brad Parker, as presented by Kelley, Hill, and Fraga, as well as the fraudulent affidavits of Parker, Huebner and Fugedi. The entire suite of litigation was a fraud, based solely on fraudulent lien releases, deeds, and title abstracts. All of the parties to all of the transactions were Defendants, members of the Yale Criminal Enterprise.

**Choudhri:**          ***"transferring the property to the trust was stupid. I did it because you forced me to do it."*** Exhibit B(A), P.49 Ln. 1-5.

---

[46] Neither Steadfast nor Counsel has ever been involved in a mandamus before these cases.
[47] It must be noted that the conspirators filed all these suits, chose all these venues, and argued against consolidation by Steadfast every time.

| | |
|---|---|
| *Kelley:* | *"Because 2017 Yale was mine!"  Id.* |
| **Choudhri:** | **"You don't own 2017 Yale, I didn't agree to even transfer the interest that you told me to transfer to the fucking trust, I thought that was a stupid idea, in the middle of trial, transfer the property."**  B(A) 7:20. |
| *Kelley:* | **"it was a brilliant idea!"**  B(A) 7:23. |
| **Choudhri:** | **"You knew because of my divorce[48], who owned 2017 Yale from the outset, you knew that Lloyd, so don't go there…** B(A) 24:09…. **because of the divorce I had Brad [Parker] as my proxy in front.  You know that."**  B(A) 24:24. **"why did you have Brad testify that he owns and controls?"**  B(A) 22:24. |
| *Kelley:* | *"I don't give a fuck what Brad testified to!"*  B(A) 22:28, Pg. 12. |
| *Kelley:* | *"[Parker] was the front guy"* Id at 43, Ln. 4. 31:03. |
| **Choudhri:** | **"I thought we were moving it to protect it and it would be deeded back."** |
| *Kelley:* | **"we moved it so that [Steadfast] couldn't get it."**  Exhibit B(B)11:18 Pg. 20, Ln 11-14. |

*See* certified transcripts, Supplemental Exhibits B(a-c) to the audio, and Appendix attached as Exhibits B(a-c); Declaration of Wyatt, Exhibit B.; Secret Kelley Assignment, Exhibit A; Pabeshan Certificate proving Kelley's ownership, Exhibit 106.  This evidence was not discovered until 2021 after all of the trials, due to fraud, discovery abuse, and spoliation by Conspirators and Counsel.

86.     They knew that they had no right to the property.  They knew the eviction Court had

no jurisdiction.  They knew they had no legitimate claim to title:

> KELLEY: *"…Ramey [Steadfast] owns the whole thing and we're done… I'm spinning my wheels with a whole lot of lawyers and it's over.* Exhibit B(c) Pg.13, Ln.10-14.[49]

87.     The Yale Criminal Enterprise asserted throughout the cases that Brad Parker owned

all of the membership interest in 2017 Yale at all relevant times.   They also claimed that

---

[48] Choudhri initially bribed Parker to front for 2017 Yale because he was defrauding his wife in divorce court.
[49] This admission predates the final rulings by a year and another million dollars in fees and expenses.

Fugedi was a real trustee and bona fide purchaser, when in reality they bribed him with five thousand dollars to act as Kelley's sham Trustee.[50]  Lloyd Kelley secretly owned and had Elberger and Herman form Carb Pura Vida, LLC, posing Norma Lopez as the fake owner, pretending to be the settlor and beneficiary of the Enterprise's fake trust.  *Id*. Lloyd Kelley secretly owned 2017 Yale, Steadfast's borrower, which defaulted on Steadfast's loans.[51]  Kelley, Choudhri, Parker, 2017 Yale and Counsel misrepresented to Steadfast, the Secretary of State, and Courts, under oath, that 2017 Yale was owned by Parker, in order to perpetrate fraud. 2017 Yale is Fugedi and the fake trust's grantor.

88.      Kelley acted as counsel against Steadfast, representing Fisher, 2017 Yale, Alvarez, and Choudhri whenever convenient for the Enterprise.[52]  When 2017 Yale lost[53] in the 190th District Court, Kelley secretly created the fake "Carb Pura Vida Trust"; formed a sham "Carb Pura Vida, LLC" as fake beneficiary; and bribed Fugedi as fake trustee, to avoid judgment and manufacture diversity to delay foreclosure further.[54]  Kelley and

---

[50] Exhibits G, 86(a-v).

[51] Exhibit A: "*Whereas Parker desires to assign 100% ownership interest to PaBeShan Castle, LLC in 2017 Yale Development, LLC…. Which own a property known as 829 Yale Street*…" [signed by Parker and Choudhri individually and for 2017 Yale, and Kelley individually and for Pabeshan].  Pabeshan was just another front; "*Pabeshan?  You're crazy.  Pabeshan is not involved in that at all*." CHOUDHRI: "*before me and you went to Pakistan, I transf*…" KELLEY: "*you transferred 2017 Yale to me*" CHOUDHRI: "*yes*" B(C) 16:20. Exhibit B(c) Pg. 28, Ln 1-4.

[52] None of the conspirators had any respect for any Court's ability to administer justice, nor concern that they were robbing Steadfast and their construction contractors.  They've even sued each other claiming fraud.   Exhibit 103.  These lawyers generally played a shell game on who they represented when, going back and forth, etc.

[53] Exhibit 102, pg. 78; Exhibit 92: Exhibits 90-91.

[54] Exhibit 86a "*Lloyd, I did not compare the trust that you sent… Lloyd, I have attached the… Trust agreement*…" 86b:"*Lloyd – Here is the…acknowledgment that CARB pura vida, LLC is in existence…*"; 86C:"*Carb Pura Vida Trust, is one of Lloyd's friends.*"; 86d:"*These are the final docs Lloyd reviewed.*"   Exhibit G.   "*Neither the Carb Pura Vida Trust nor 2017 Yale ever paid anything for the property or to Steadfast*"; Kelley and Fraga, told me they had devised a stratagem … to prevent Steadfast from being able to foreclose on the Property. They began working together … to avoid the judgment … by transferring the Property to the "Carb Pura Vida Trust…and …handle*

Counsel fabricated frivolous claims, attempting to paint the scam as a bona fide transaction.

***Kelley secretly controlled both sides of the transaction by which Kelley's fake trust took the void deed.***

89.     Just as Jetall never paid a cent of the loans or for the property, other than the Fisher bribe, 2017 Yale never paid a cent for the property, nor to repay the millions it borrowed and stole from Steadfast.   Similarly, Kelley's fake trustee also never paid a cent for the property, to satisfy Steadfast's valid lien, or for the secret void fraudulent transfer deed into the fake trust.   Exhibit 86a-v; B, B(a-c), 102, C, G.   It was a conveyance from one sham entity to another under the Enterprise's secret common control, without consideration, rendering the sham grantor insolvent. *Id*.   The transfer was made upon judgment against 2017 Yale, to avoid collection and delay foreclosure – a textbook fraudulent transfer.

***The Fourteenth Scam:  Bribing attorneys to file frivolous litigation based on fraudulent documents and perjured testimony.***

KELLEY:     *"All of that is being held together because of me.  All these lawyers are working for me."*  B(B) 14:00; B(B) Pg.23, Ln.18-20.

*"I want to send a trust -- a piece of this case -- a piece of the company so those lawyers can get paid."* B(A) Pg.42, Ln.20-22.

*"...Ramey owns the whole thing and we're done... I'm spinning my wheels with a whole lot of lawyers and it's over.* B(c) Pg.13, Ln.10-14.

*I can just focus on...2017 Yale, which I've got [Fraga]in...You haven't spent a fucking dime, Ali.*  B(A) Pg.31, Ln.13-19.

*This is coming down to me paying...and it's always been me.*  B(A) Pg.6, Ln.23-24.

*"Marc Hill...is actually getting paid...because I paid him…."* B(B) Pg.6,Ln.17-18.
**Choudhri:**     **"I just want to have clarity on what we are doing"** B(B) 3:00.
Kelley:     *"Johnny Patterson, Michelle, me, Marc Hill. Marc is actually getting paid."*

---

*the transaction from both sides*."; 86v: All conspirators received the fraudulent closing documents.

**Choudhri:** *"I thought marc is getting paid from the tcpa."*
*Kelley:* *"... he's getting paid because I paid him some money." Id.*

90.    Note:  "the tcpa" referenced in this quote is the Ninth Scam, *supra*,  using Judge Carter in the 125th to grant fraudulent sanctions against Steadfast. Investigation is underway.

91.    Neither 2017 Yale and Kelley's fake trust, nor anyone in the Enterprise, ever owned any legitimate interest, never hired Counsel, never paid fees, or anything else.  Their conduct reveals exactly how much respect they have for Courts to discern the truth and administer justice.  All Counsel should be disqualified and sanctioned for their misconduct

**Conspirators and Counsel knew their litigation was frivolous; violated bar rules, F.R.C.P., F.R.A.P., and criminal statutes.**[55]

92.    The Yale Criminal Enterprise knew their 190th litigation and all claims therein were frivolous and based solely upon fraud.  Their entire original case to enjoin Steadfast's foreclosure was founded upon frivolous allegations that Steadfast had made promises to extend two notes, when the parties only closed one loan modification.  The other main fabricated claim and defense against the notes was that they were defrauded into thinking the second lien was getting its maturity date extended.  The tapes prove that they knew that

---

[55] 2017 Yale's defenses and claims alleged "failure to renew both notes" in the loan workout, trying to cover up the fact that 2017 Yale simply stole the loan money and abandoned the property and loan.  They claimed that Steadfast quit funding loan draws, when actually, their own workers abandoned them and filed M&M liens because 2017 Yale stole the loan money instead of paying them.  This was a legally irrelevant argument, because legally the closing eliminated any such claims by merger; and the undisputed facts proved them false in any event.  However, now we have judicial admission that the Enterprise <u>knew</u> they were false.  *See* audiotapes and MSJ's in the 190th.

both arguments were a joke from the start (along with the whole premise of the loan of course):

| | |
|---|---|
| ***Choudhri:*** | ***"they were supposed to extend the loan, they were supposed to extend the second lien and the first lien…"*** B(A) 18:19. Pg. 27 *e.g.* |
| *Kelley:* | *" the problem is you didn't have workers out there, they weren't working on it, you sat there."* B(A) 18:26. |
| ***Choudhri:*** | ***"you were making changes!"*** B(A) 18:32. |
| *Kelley:* | *"I didn't make changes you were! I didn't tell people to stop working"* B(A) 18:33. |
| | *"Brad just sat there and twiddled his thumbs for 4-5months and didn't even pay attention to the paperwork. Who doesn't get a deal that says they're both extended? Who doesn't do that? In writing? It was in the closing documents!"* B(B) 25:20. Pg. 39. |
| *Kelley:* | *"all of that is being held together because of me."* B(B) 14:00. <u>Exhibit B</u>. |

93.    In fact, we now know that during that time period, the Enterprise was secretly trying to defraud even more prospective lenders.  While hiding Kelley's ownership from the existing lenders, they secretly told CBRE that Lloyd Kelley owned the property to try to obtain more loans.  The last fabricated claim and defense against Steadfast's notes was the claim that Steadfast couldn't keep funding loan draws, which was legally irrelevant and also proven false as a matter of undisputed evidence.  However, in their emails to CBRE, they also admitted that Steadfast was willing to continue funding loan draws but for the Enterprise's defaults, that Kelley was the one delaying construction to make penthouse design changes to the property.  These and other incredible facts only came to light after the whistleblowers came forward.  *See e.g.* <u>Exhibit 13a22</u>, *infra*.

94.     All of their litigation was a complete sham.[56]

95.     The Enterprise knew their quiet title and forcible entry cases were frivolous as well,

all a part of the pattern of extortion, theft, and fraud:

Kelley:          "he [Ramey] got the property in November, because apparently, we screwed up on
                 the transfer to the trust and he's got case law that says we can't put it in a trust[ee]"

**Choudhri:      "why did we screw up?**

Kelley:          "the title company screwed up[57]...if that wouldn't have happened he would have
                 already foreclosed on it..." B(B) 0:21. "... the property was transferred and was
                 transferred to a trust, and in Texas you can't transfer property to a trust, and that's
                 an issue of Texas trust law, and can't get around it, and if it's not, then the trust
                 never had the property, it was in 2017 Yale and it was foreclosed on, and it's over."
                 B(B) 20:24.

**Choudhri:      "at the end of the day, how do we get the property back?"**

Kelley:          "I don't know that you ever get it back.  You have a damage claim against the
                 insurance company, you have a title policy from April 4th, what's your title policy
                 worth eight million dollars?  You're going to get cash." B(B) 2:27.[58]

Kelley:          "Galveston? He [Judge Edison] wasn't giving us crap, he's got a judgment from
                 Miller, had a state court judgment that flat out says you don't get it, so I don't know
                 what you think something different would have happened or where you criticize
                 what we've done."  B(B) 22:20. Exhibit B.[59]

96.     Defrauding the Courts and using them to further their Criminal Enterprise was

clearly part of the plan.

97.     In other words, Kelley knew that 2017 Yale's transfer of title to his fake trust, and

fake trustee, Fugedi, was void from the start, making their fraudulent federal litigation even

---

[56] *See* certified transcripts, Supplemental Exhibits B(a-c) to the audio, and Appendix attached as Exhibits B(a-c);
Declaration of Wyatt, Exhibit B.; Secret Kelley Assignment, Exhibit A; Pabeshan Certificate proving Kelley's
ownership, Exhibit 106.  This evidence was not discovered until June and July of 2021 due to fraud and spoliation by
Conspirators and Counsel.  It was disclosed by whistleblowers and admissible under F.R.A.P. 27(b) and the F.R.E.
[57] Actually, Kelley and Transact personally drafted the void deed and screwed it up, *see* Exhibit 86, G.
[58] They filed a suit against the title company too, Cause No. 2021-19648 in Harris County.
[59] They filed their frivolous federal suit in the Trial Court in the Galveston Division.  This tape was made a year
before Galveston granted Summary Judgment on the title.  Yet they knew their case was 'crap.'

more obviously frivolous.  Kelley also admits that the 190th's Judgment flat out said the trust doesn't get the property; a position they frivolously argued against in the other cases after these tapes.  *See* Exhibit 88, 89. Kelley admits that the Conspirators' case would have been frivolous even if the whole transaction had not been a fraud, with Kelley owning both sides of the transaction in which no money changed hands.

| | |
|---|---|
| ***Choudhri:*** | ***"I thought we were moving it [the Property to Kelley's fake trust] to protect it and it would be deeded back."*** |
| *KELLEY:* | ***"we moved it so that* [Steadfast] *couldn't get it."***  Exhibit B(B) 11:18. Pg.20, Ln.11-14. |
| *KELLEY:* | *"…we screwed up on the transfer to the trust and he's got case law that says we can't put it in a trust"* Exhibit B(B) Pg.2, Ln.14-17. |
| ***Choudhri:*** | ***"… how do we get the property back?*** |
| *Kelley:* | *"I don't know that you ever get it back."* B(B)2:27. Exhibit B(B) Pg.5, Ln.1-7. |

98.     Everyone knew Steadfast had a valid superior recorded Deed of Trust, Collateral Transfer of Note and Lien ("CTNL"), held the <u>original</u> Promissory Note – and that Steadfast retained superior right, title and interest to Fugedi, and the right to foreclose against Fugedi and 2017 Yale.   They knew the law and the documents precluded Alvarez from releasing Steadfast's lien, and precluded 2017 Yale from transferring the collateral to Fugedi.   They all knew that Steadfast could foreclose against 2017 Yale, and Fugedi.  Exhibits 88-9, 94, 115, 20e, 11b, G:

> "*<u>[2017 Yale] may not sell, transfer, or otherwise dispose of any Property</u> [10] … <u>this…lien will terminate</u> **only** <u>if [Steadfast] releases this deed of trust</u>..*"   Exhibit 11(b).

"*[D&A Alvarez] agrees to: Preserve the liability of all obligors on the Collateral and preserve the priority of all security for the Collateral… [D.7]"* <u>Exhibit 20(e).</u>

"*[Steadfast] is the original Lender…and shall maintain possession of the original Collateral Note... [G.1] …This agreement binds…all successors"* [H.3]. Id.

"*[D&A Alvarez] agrees not to… modify the Collateral Note <u>nor grant releases of any part of the Property</u> [E.1]* [E.2]" <u>Exhibits 11b, 20e.</u>

99.    These State Bar loan forms were proven valid, previously recorded, in default, without excuse, <u>Exhibit 92</u>, leading Kelley to admit that the Trial Court in Galveston, "*wasn't giving us crap"* in a secret acknowledgement that the whole claim was frivolous.

100.   The only basis to argue against these obvious conclusions were the fraudulent lien releases, lis pendens, deeds, and title abstracts which the Enterprise fabricated, and filed and argued vexatiously for years.

**The Fifteenth Scam:  The fake title abstract to fabricate a title claim.**

101.   In addition to using the fraudulent Alvarez releases, Conspirators defrauded these Courts claiming: "Fugedi's Abstract traced title from the sovereign to Fugedi…"  Huebner filed his perjurious affidavit and abstract, omitting the dispositive CTNL:

56

| Doc. # | Instrument#: | Type: | Inst. Date: | Filing Date: | Grantor: | Grantee: | Inst. Type: |
|--------|-------------|-------|-------------|--------------|----------|----------|-------------|
| 79 | RP-2017-153161 | RP | 4/4/2017 | 4/11/2017 | 2017 Yale Development LLC, a Texas limited liability company | Benjamin K. Williams, Trustee fbo Steadfast Funding, LLC, Bruce L. Robinson, Initram, Inc, | Deed of Trust |
| 80 | RP-2017-151659 | RP | 4/4/2017 | 4/10/2017 | Jetall Companies, Inc | 2017 Yale Development LLC | General Warranty Deed |

Appellant's fraudulent abstract knowingly omits Exhibit 20e, ROA 3106-3117, the prior recorded Collateral Transfer of Note and Lien, which expressly precludes D&A Alvarez from releasing Steadfast's lien, and precludes either 2017 Yale or D&A Alvarez, both borrowers subject to Steadfast's lien, from transferring title to Fugedi's trust.   Appellant's own lien release, which they defrauded Alvarez into filing, identifies this Document by RP number as a prior instrument in the chain of title.

Specifically, 20e, recorded on 1-31-18 at RP- 2018-65405, expressly precludes the fraudulent release induced by Kelley which Appellant and counsel recorded at RP-2019-317071 below. The inducement and filing of that release is also a felony, and a fraud on this Court.

| | | | | | | | |
|--------|-------------|-------|-------------|--------------|----------|----------|-------------|
| 87. | RP-2018-65405 | RP | 1/30/2018 | 2/16/2018 | D&A Alvarez Group, LLC | Bruce L. Robinson, et al. | Assignment/ Collateral Transfer of Note and Lien |
| | RP-2018-324056 | RP | 7/14/2018 | 7/18/2018 | D&A Alvarez Group , LLC | 829 Yale St, LLC, a Texas limited liability company in favor of Williams, | Release of Lien |
| | RP- 2019-317071 | RP | 7/22/2019 | 7/23/2019 | D&A Alvarez Group, LLC | 2017 Yale Development LLC in favor of Benhjamin K. Williams as Trustee | Release of Lien |
| | RP-2019-317072 | RP | 7/22/2019 | 7/23/2019 | 2017 Yale Development LLC, a Texas limited liability | CARB Pura Vida Trust | General Warranty Deed |

102.   Compare <u>Exhibit 94</u> to <u>Exhibit 115</u>, Steadfast's non-fraudulent <u>actual</u> abstract,

which accurately reflects the recorded CTNL:

| | | | | | | | |
|--------|-------------|-------|-------------|--------------|----------|----------|-------------|
| 87. | RP-2018-65405 | RP | 1/30/2018 | 2/16/2018 | D&A Alvarez Group, LLC | Bruce L. Robinson, et al. | Assignment/ Collateral Transfer of Note and Lien |

103.    TransAct, Mansoor, Salima, Marol all worked with First American to fabricate a fraudulent title insurance policy, and the Enterprise filed that as an Exhibit to try to prove their title.

104.    Cursory review of the Collateral Transfer of Note and Lien ("CTNL_ Exhibit 20e) and basic hornbook law was completely dispositive of that case in Steadfast's favor, and the Yale Criminal Enterprise knew it.   That is why Conspirators and Counsel filed the fraudulent abstract with the federal Trial Court and this Court, omitting it.   *See* Exhibits 94, 115.[60]   The CTNL is a conveyance,[61] an "instrument affecting title," legally putting Fugedi on irrebuttable presumptive notice of Steadfast's superior lien and title.[62]   The CTNL expressly preserved Steadfast's valid first lien and right to foreclose on Fugedi's in interest the Property, period, regardless of any other issues.   The CTNL precluded Conspirators from relying on any release by Alvarez.   It puts the world on notice that Steadfast maintained the original note and first lien, and the right to foreclose on the property.   The CTNL and Deed of Trust preclude 2017 Yale from transferring the property to Fugedi.[63]

---

[60] Conspirators also defrauded these Courts by arguing that they had a judgment against Steadfast on the fraud claims signed by Judge Carter, who had to be disqualified for that egregious misconduct, Conspirators and Counsel knowing that this absurd farce of a judgment was void as a matter of law.  *See e.g.,* Exhibits 90. 91.

[61] It even contains words of present grant.  ROA.3106, at top of pg. 6.

[62] The CTNL is a standard State Bar of Texas Commercial Loan Document, used in this case for its traditional purpose. If Conspirators can ignore it, then we are all going to be very famous, because every lender that has financed an assignment of a real estate loan or mortgage in Texas – which happens all the time - will never be able to foreclose on their lien.

[63] It turns out that the Enterprise secretly had a prior WFG title commitment, which they knew excepted the Steadfast Deed of Trust, Lien, and CTNL, *infra*.  They didn't pay for a policy; only the fraudulent First American Policy omitting the lien.  They hid that policy from the Courts.

105.    Despite all that, Kelley induced Alvarez into recording fraudulent lien releases, then argued that they released Steadfast's lien, which they could never do.  Exhibit G; Exhibit 86m.  They and Transact Title issued a fraudulent First American Title Company title insurance policy, No. 5825548-0022684e, from First American Title using the fake release as well, and then filed that fraudulent policy as further fake evidence to argue that they had superior title to Steadfast.  Exhibit 95.

106.    Their use of this release, policy, and abstract is felonious and a fraud.[64] *Id.*  Fugedi took only subject to Steadfast's prior recorded lien, and all terms of the CTNL and Loan Documents, as a matter of basic law.  TEX. PROP. CODE §13.002; *Regold Mfg Co. v. Maccabees*, 348 S.W.2d 864 (Tex.Civ.App.—Fort Worth 1961); *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982).   Steadfast ultimately foreclosed and owns the property.  Exhibit 97.  Nothing can change that.[65]  However, the Yale Criminal Conspiracy has continued to tortiously interfere with sales and title, deliberately continuing to file fraudulent instruments, including "correction deeds," and lis pendens, into 2022. The Yale Criminal Conspiracy apparently expects to get away with their fraud based upon who they think they are and their perceived personal influence over the courts, despite clear and undisputed abuse, and the fact that this matter now gaining significant public interest.

---

[64] Texas Penal Code §§ 37.10; 33.33; 32.49; 32.46; 32.32; and 18 U.S.C. §§ 1341, 1343, 1346; 2326-7; and 18 U.S.C. § 1512:

[65] The Enterprise tried to salvage their defective void fraudulent transfer fake trust deed by filing fraudulent 'correction' deeds.  However, under TEX. PROP. CODE § 5.030 (c) A correction instrument is subject to the property interest of a creditor or subsequent purchaser.  Steadfast filed lis pendens and foreclosed after the void deed, and before the corrections. Steadfast purchased the Property at a valid foreclosure sale on November 4, 2019.  Fugedi and Conspirators remained subject to Steadfast's prior lien and foreclosure.  They have no claim to title.  *Hooks v. Neill*, 21 S.W.2d 532 (Tex. Civ. App.—Galveston, 1929, writ ref'd).

**The Sixteenth Scam:  Conspirators, Counsel and Kelley continue to defraud these Courts and deliberately cloud title with false allegations and arguments and fraudulent real property filings.**

107.    A deed or release procured by fraud is void.  A void deed or instrument is an absolute nullity and cannot be cured or revived.  *Parham Family Ltd. P'ship v. Morgan,* 434 S.W.3d 774, 787(Tex. App.–Houston[14th Dist.]2014, no pet.)*(citing Lighthouse Church of Cloverleaf v. Tex. Bank,* 889 S.W.2d 595, 600 (Tex.App.–Houston[14th Dist.]1994))*; Wofford v. McKinna,23 Tex.,* 36, 46 (1859); *Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex.App.—El Paso, 1997); *Lasater v. Jamison*, 203 S.W. 1151, 1154 (Tex.Civ.App.—San Antonio 1918, writ ref'd);TEX. PROP. CODE §5.030.   The Yale Criminal Enterprise attempted to cure their void deed by filing additional fraudulent "correction deeds" in 2021 in an effort to continue to cloud title, fabricate frivolous litigation claims, and obstruct any sale of the property for market value by Steadfast. Exhibit 171. These cases and instruments remain a cloud on Steadfast's title and obstacle to the sale of the Property, and continue to cause Steadfast damages.  Exhibit 170.

**The Seventeenth Scam:  The 2022 Fraudulent Lis Pendens, another crime and tortious interference, fitting right into the pattern of the Yale Criminal Enterprise.**

108.   After years of trying to sell the property privately, all of which efforts were unsuccessful due to the Yale Criminal Enterprise, the Steadfast Parties listed the property publicly to sell it at a dramatically reduced price, to avoid it becoming a worthless tear-down property due to dilapidation.  The Enterprise sent a spy to the showing, concealing their identity, and attempted to entrap the Sellers, spy on proceedings, and submit a fraudulent bid.  *See* Exhibit 170.   All best and final bids were due from prospective buyers

by February 25, 2022. *Id*. In order to tortiously interfere with any sale, and preclude Steadfast from proper recovery and mitigation of their damages, the conspirators filed a fraudulent lis pendens, yet again, on February 25, 2022. Exhibit 163. This lis pendens is based solely on their fraudulent lawsuit and title abstract on appeal.

109. This long-standing conspiracy to commit a lengthy pattern of related fraudulent and criminal title transfers, fraud, stolen loan money, extortion, frivolous litigation, fraudulent real property document filings, fraudulent court exhibits, all calculated to steal Steadfast's loan money and title to Steadfast's collateral, continues to this day, and continues to cause Steadfast millions of dollars in damages.

**V.**
**DETAILED TIMELINE:**

07/07/2016    Steadfast Parties loan $4.2million for construction funds to Terry Fisher/829 Yale St., LLC secured by a First Lien. As construction progressed, Steadfast fully funded this loan through December of 2016, and the property was essentially built to its present state before the Yale Criminal Enterprise formed. Exhibit 1,7. Compare photos in Exhibit 7, before the fraudulent Enterprise formed, to Exhibit 12, after abandonment of the project by 2017 Yale, after millions in additional funds. Compare Exhibit 172, current pictures of dilapidation caused by the Yale Criminal Conspiracy. The first lien Deed of Trust in favor of Steadfast, executed by the borrower, 829 Yale St., LLC, was recorded at RP-2016-430945. Exhibit 1. That deed of trust clearly precluded 829 Yale or Terry Fisher, its owner, from conveying the collateral to Jetall, Inc., or conveying any ownership interest in 829 Yale St., LLC to any third party without prior written consent of Steadfast. *Id*.

Fisher making False Statements to Obtain Property or Credit - § 32.32[66] First Degree Felony. §31.01.[67]

---

[66] § 32.32. False Statement to Obtain Property or Credit
(b) A person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit, including a mortgage loan. (c) An offense under this section is: (7) a felony of the first degree if the value of the property or the amount of credit is $300,000 or more.

[67] § 31.01 Deceive means: creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true.
(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true.

07/14/16    Fisher requests more money; Alvarez loans $2.25m to Fisher/829 Yale in Second Lien position, subordinate to Steadfast's lien.  Alvarez fully funds at closing. Exhibit 2.

09/23/16[68]    Fisher/Kavac's real estate "empire" begins collapsing for numerous defaults with other lenders on other properties; Fisher hides this from Steadfast, and instead secretly engages with Choudhri, Jetall and Parker to cut a secret extortion deal. Commencing the Enterprise, Fisher illegally has his company, 829 Yale, Steadfast's borrower, convey a secret deed to Steadfast's 829 Yale collateral (and other lender's collateral on other property loans) to Choudhri's company, Jetall, in exchange for one hundred thousand dollars plus Jetall's promise to tortiously interfere with Fisher's Lenders, including the Steadfast Parties. This formed the Yale Criminal Enterprise, and began their scheme to delay or obstruct the lenders' valid foreclosures.  They agreed to split profits from this fraud and extortion scheme.  Choudhri files the first T.R.O. on the same day against other lenders (Paul & Partners) and they begin their extortion scheme.  This is the case they eventually brought Steadfast into with yet another frivolous *ex parte* T.R.O. in 2017 (2016-64847 in the 190th, eventually resulting in Steadfast's Judgment on the contract default for over eight million dollars).  Exhibit 1, 3, 107, 4, 4a21, 4a22, 6, 160, 92.

<span style="color:red">Inducing Fisher into signing fraudulent documents – § 32.46[69] First Degree Felony.</span>

---

<span style="color:red">(C) preventing another from acquiring information likely to affect his judgment in the transaction.</span>
<span style="color:red">(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or</span>
<span style="color:red">(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.</span>
<span style="color:red">(2) "Deprive" means: (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.</span>
<span style="color:red">(3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:</span>
<span style="color:red">(A) induced by deception or coercion; (B) given by a person the actor knows is not legally authorized to act for the owner.</span>

[68] Even if the four-year limitations periods for all causes of action were not obviously tolled by deliberate fraud, spoliation of evidence, and discovery abuse, a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless when the RICO violation causing such injury occurred. *Love v. National Medical Enterprises*, 230 F.3d 765, 773 (5th Cir.), reh'g denied, 239 F.3d 367 (5th Cir. 2000) (quoting *Bankers Trust v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988), cert. denied, 490 U.S. 1007 (1989)).  Further, only the first few scams were committed more than four years ago, and none were discovered so as to render any of the seventeen scams untimely hereunder.

<span style="color:red">[69] § 32.46 - Defendants Choudhri, Parker, Kelley, Fraga, Fisher</span>
<span style="color:red">A person commits an offense if with the intent to defraud or harm any person, he, by deception:</span>
<span style="color:red">(1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person; (7) felony of the first degree if the value of the property, service, or pecuniary interest is $300,000 or more.</span>

18 U.S.C. §§ 1341, 1343, Mail and Wire fraud, recording fraudulent instruments, issuing a check to bribe Fisher, emailing a secret MOU to interfere with lenders' rights.[70], 18 U.S.C. § 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, as many of the Steadfast Parties were over 55 years old.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Theft of Loaned funds – § 31.03,[71] First Degree Felony, proven by bank records and recorded documents.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

Fisher illegally secretly gave Steadfast and Alvarez' multi-million-dollar collateral to Jetall in exchange for a secret $100k check. Neither ever paid for the property or to repay the loans, and they executed a secret MOU agreeing to obstruct the lenders' foreclosure, extort the lenders and split the illicit profits. This transfer was clearly precluded by the Loan Documents and by Texas civil and criminal law.  More than 10 of Steadfast's lenders are over 55.

110.    Defendants Fisher, Choudhri, Parker, 829 Yale St., LLC, and Jetall Companies, Inc. commenced the fraudulent Enterprise, conspiring to steal Steadfast's loaned funds, title to the property, and interfere with Steadfast's lien and property rights, by circulating a secret agreement.   Exhibit 4, 107.   This secret agreement was circulated by email and the fraudulent deed to Steadfast's collateral, circulated by email, and recorded by mail and circulated electronically in the Harris County real property records.  *Id.* Exhibit 3.  Such a

---

[70] Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than twenty years, or both.

[71] § 31.03 (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
(b) Appropriation of property is unlawful if: (1) it is without the owner's effective consent.
 (c) For purposes of Subsection (b):
(1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty.
(7) felony of the first degree if the value of the property stolen is $300,000 or more.

transfer is felony Hindering Secured Creditors under Texas Penal Code § 33.33 – First Degree Felony, intent is presumed.  This misconduct using interstate commerce via email and mail also violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, as many Steadfast Parties qualify under §§ 2326-7.   This agreement and fraudulent deed also constitute a violation of 18 U.S.C. § 1512.[72]   Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10 and a violation of Texas Government Code Sec. 51.901.

111.    Kelley and Fraga presented Parker for a perjurious deposition, in which Parker testified in front of them that no one paid any consideration for the Jetall fraudulent deed transfer; that no money changed hands for that deed, that there were no agreements about that transfer, and that Parker had never spoken with anyone about what would happen with any money received by 2017 Yale.  Exhibit 35 at pages 42-44.  Fisher claimed all he got was 'a smile', *supra*.

112.    However, in 2021, Steadfast learned that instead, Jetall paid a one hundred-thousand-dollar bribe to Fisher personally to have Fisher's company, Steadfast's borrower, 829 Yale

---

[72] 18 U.S.C. § 1512:
(b) Whoever knowingly uses intimidation, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to--
(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding.
(3) hinder, delay, or prevent the communication to a judge of the United States of information relating to the commission or possible commission of a federal offense.
(c) Whoever corruptly--
(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

St., LLC execute the illegal fraudulent transfer deed to Jetall tortiously interfering with Steadfast's lien.  Exhibit 3, 4, 4a22.  This payment and fraudulent agreement were circulated by United States Mail and interstate Email. *Id*. This is a violation of 18 U.S.C. § 201(c)(3) and constitutes a violation of 18 U.S.C. §§ 1503 and 1512 as well as the mail and wire fraud statutes.  This instance reflects a pattern of repeated activity in furtherance of a common Enterprise, these same acts being repeated below and intent proven by whistleblower tapes.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution.

Defendants devised a scheme to defraud, intended to deprive another of money or property or bring about some financial gain.

Defendants employed false material representations [pretenses or promises], having a natural tendency to influence, or is capable of influencing, someone's decision (the person deceived doesn't have to be the person who was cheated).

The representations were untrue or was made with reckless indifference as to their truth, with specific intent to defraud, deceive or cheat.

Defendants mailed something for the purpose of executing such scheme (the actual mailing doesn't have to contain false info) (§ 1341).

Defendants transmitted or caused to be transmitted, by wire communications, in interstate commerce, any writing for the purpose of executing such scheme (wire need not be an essential element of the scheme; rather, it is sufficient for the wire to be incident to an essential part of the scheme) (§ 1343).

This instance reflects the commencement of a long pattern of repeated activity in furtherance of a common enterprise, these same acts being repeated below and proven by whistleblower tapes.

| | |
|---|---|
| 9/19/16 | Brad Parker and his wife Margaret Naeve Parker, and her business, M.Naeve Antiques, LLC, now forfeited by the Secretary of State, secretly joined the Yale Criminal Enterprise, taking a flat $40,000 fee for 'consulting' at 2017 Yale.  This was never disclosed to Steadfast, nor was this agreement or the email circulating it produced in response to discovery, or in depositions.  Exhibit 4a22b, 4a22b DOC 475. |

01/09/17     Steadfast Parties discover Jetall's secret deed during a title check arising from Fisher's efforts to swindle another loan out of Steadfast.  The lenders work together to deal with the defaults.  Fisher abandoned work, fails to pay the loans, and fails to pay his contractors, resulting in M&M liens against the collateral at 829 Yale, another default.  Exhibit 170.

01/17/17     The lenders cooperate and send Notice of Default to Fisher for the "due on sale" Loan Document violation and default caused by the secret Jetall deed.  Notice is posted for 2nd lien instead of 1st by agreement, to protect Alvarez. Jetall/Choudhri/Parker/Fisher/829 Yale begin fraudulently inducing the Steadfast Parties into loaning more money, on Choudhri's promises to help Fisher finish the project and refinance quickly, promising to pay the lender's notes. On the other hand, Choudhri threatens to obstruct foreclosure and litigate to the ends of the earth if a loan workout is not agreed.  Exhibit 170.  Using interstate emails, Choudhri, Parker, Jetall made demonstrably false statements about their assets and financial capability, as well as intent.  This misconduct if a felony Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony, by using fraudulent internet email and mail communications.  18 U.S.C. §§ 1341, 1343.

18 U.S.C. § 1951(a).

 "Extortion" is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened fear." *Id*. at § 1951(b)(2). The elements of a violation of the Hobbs Act are: "(1) that the defendant induced a person to part with property; (2) the defendant acted knowingly and willfully by means of extortion; and (3) that the extortionate transaction delayed, interrupted, or adversely affected interstate commerce." *United States v. Stephens*, 964 F.2d 424, 429 (5th Cir.1992).

**The Enterprise forms a sham company to perpetrate its fraud and extortion scheme:**

113.   2017 Yale Development, LLC, and its General Partner 2017 Yale Development GP, LLC, were formed by Choudhri and Parker for the sole purpose of defrauding Steadfast in furtherance of the secret Enterprise (and Choudhri's wife in his divorce case, being handled by Lloyd Kelley), both of them representing that 2017 Yale was a legitimate company with the intent and ability to repay the loans quickly.  Choudhri, Parker, and 2017 Yale also submitted fraudulent filings with the Comptroller of the State of Texas and Secretary of State, improperly reflecting circular ownership and management, i.e., 2017 Yale supposedly managed and owned all of the membership of 2017 Yale GP, and *vice versa*, a fraud intended

66

to conceal the true ownership of both companies.  Exhibit 14.  2017 Yale was always secretly intended as a complete sham, with no assets, other than those stolen from Steadfast.  Exhibit 35, 35c, 78, 102, 55, 109, 110.  *See* Exhibit 170, and whistleblower audio tapes, Exhibit A, B(A-C), *infra*.  Kelley, Fraga, Choudhri, Jetall, 2017 Yale, Fisher, 829 Yale, and Parker all perjured themselves, representing falsely that Brad Parker was the sole owner of 2017 Yale and the GP.  *Id.*

 Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

Emailing and recording fraudulent company records with the comptroller and secretary of state, and fraudulently inducing Steadfast's loan workout by extortion and false representations using email; §§ 1341, 1343.

Filing fraudulent documents with the Secretary of State is a second-degree felony under Penal Code 37.10 and a violation of Texas Government Code Sec. 51.901.

1951(a) *supra*.

**The Enterprise's Second Fraudulent Transfer and Fraudulent loan inducement/extortion scam:**

04/04/17       The 2017 Yale loan workout closes.  Exhibit 11(a-e). Choudhri/Parker/Fisher/Jetall conveyed title the collateral from Jetall again, this time by deed to 2017 Yale. Choudhri secretly owned 2017 Yale, but presented Parker as a fraudulent "front man" fake owner, to keep the assets away from Choudhri's wife and other litigants. Steadfast and 2017 Yale close a new First Lien refinance loan workout, based on the Choudhri conspirators' false promises and threats. 2017 Yale was the new borrower, and up to $8.2 million was available for funding subject to the Construction Loan Agreement and other Loan Documents, the loan secured by Steadfast's Deed of Trust and Promissory Note.   The recorded Deed of trust, as is customary, also puts the world on notice that 2017 Yale cannot transfer the property without paying Steadfast's lien. Steadfast pays the M&M liens and other defaults by Fisher and Jetall with loaned funds at this closing.[73] Steadfast pays the unpaid 2016 M&M lien contractors the Yale Criminal Enterprise had ripped off and abandoned out of this closing.

The first interest payment would come due in November of 2017.  The unmodified Alvarez second lien would still mature on August 1, 2017.  Choudhri, Parker and

---

[73] The Enterprise stole $261,567.90 of the Closing Funds that were not used to pay the contractors they had ripped off already (Exhibit 162), in addition to the other hundreds of thousands of dollars in funds the later stolen directly out of the loan draws by the Enterprise.  Exhibit 55.

Fisher promise that they will commence construction and refinance the loans before then.  They had also threatened endless litigation if Steadfast did not do the workout loan to 2017 Yale.

Steadfast begins funding construction loan draws to the conspirators to pay for continued construction, ultimately funding six million dollars to the Enterprise; however, the real goals and competencies of the conspirators were real estate fraud rather than property development.  The Yale Criminal Enterprise commences floating and late paying their contractors and stealing the loan funds in accord with their secret MOU, Exhibit 4, *infra*.  For example, the roof construction deviates from plan and is just a sham cover to hide its faulty substrate, in order to scam another construction loan draw from Steadfast.

The recorded Deed of Trust clearly precludes Parker from conveying ownership in 2017 Yale to Kelley or Choudhri, and clearly precludes 2017 Yale from giving away title to the property to anyone without paying Steadfast's full lien.  Exhibit 11a-e.

114.   The Warranty Deed dated April 4, 2017 from Jetall Companies, Inc. into 2017 Yale Development, LLC and recorded at RP-2017-151659 of the Official Public Records of Harris County was fraudulently induced by Parker, Choudhri, Fisher, Jetall, 2017 Yale, Fisher, and 829 Yale St., LLC.   Exhibit 11a-e.  This deed remained the last conveyance of record, subject to Steadfast's Deed of Trust and Collateral Transfer of Note and Lien, until the later fraudulent transfer by the Enterprise to the fake trust, *infra*, and then the ultimate foreclosure by Steadfast.  Exhibit 97.

115.   This misconduct, committed by making fraudulent misrepresentations, false promises, and threats of extortion and endless litigation, via interstate email and mail, was engaged in by the Enterprise to induce a loan workout from Steadfast by fraud and duress. This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10 and a violation of Texas Government Code Sec. 51.901.  Filing fraudulent 2017 Yale formation documents with the comptroller and

Secretary of State, filing fraudulent deed of trust concealing 2017 Yale's ownership are all violations of this statute.

| | |
|---|---|
| 08/01/17 | The unmodified Alvarez Second Lien matures without payment by the Enterprise borrowers, <u>Exhibit 2</u>, and 2017 Yale commences committing numerous other defaults on both loans.   Choudhri and Kelley secretly begin looking at Yale as Choudhri's payment for Kelley's past due legal fees for defrauding Choudhri's wife in her divorce case.  Parker remains both of their fraudulent "front-man" for the Enterprise.  <u>Exhibit A, B(A-C),</u> *infra*. |

2017 Yale starts secretly stealing Steadfast's loaned funds and wrongfully pays Fisher/Jetall entities almost $400k, instead of using the loan money to pay their legitimate contractors as required by the Loan Documents, in secret anticipation of defaulting on the note payment and dumping the company on Kelley.  They start "floating" contractors' payments to keep them working, to swindle more loan draws, without actually paying the contractors for the work.  The unpaid M&M Liens for unpaid invoices from June 2017 forward and walk off the job (both are defaults excusing further performance by the Lenders).  Steadfast later learns that Cityscape Rentals, Assurance Home Warranty are also Fisher companies, and KAVAC was also secretly getting fraudulently transferred funds out of 2017 Yale in violation of the Loan Documents.   <u>Exhibit 14, 15, 53, 55, 92, 160</u>.

116.   In addition to the $261,567.90 of the Closing Funds stolen by the Enterprise, and the money they stole out of 2016 draws instead of paying their construction contractors, Steadfast was fraudulently induced to advance another $511,824.21 in construction loan funds to 2017 Yale on the fraudulently induced loan renewal during this period.  <u>Exhibit 55</u>.  2017 Yale wrongfully sent $206,596.46 of that money to Cityscape Rentals, an undisclosed front for Terry Fisher, run by Allen Fisher, in violation of the loan (<u>Exhibit 11a-e</u>), but in furtherance of their MOU to defraud Steadfast (<u>Exhibit 4</u>).  <u>Exhibit 55</u>.  2017 Yale similarly sent $140,761.56 to Fisher's other company, KAVAC, LLC.  2017 Yale sent $49,240.58 to Jetall.

117.   It is unknown how many of its own construction contractors 2017 Yale ripped off instead of paying as required, but the following unpaid contractors filed M&M liens: Contractors Access Equipment $36,512.96; Mustang Rental Services $18,500.64, $7153.39, and $7,713.99; Supply Network d/b/a Viking Supply $7,438.86; Ferguson Fire and Fabrication, LLC $6,077.61; Chero-Key Piping Company $55,000.00.   All of which funds were required to have been paid to these contractors by 2017 Yale using Steadfast's construction loan funds.   Exhibit 15; compare Exhibit 11(e).     Instead, the fraudulent Enterprise stole the money, floating their contractors to induce them to continue working without full payment, to induce Steadfast's inspections of their work progress justifying additional loan draws from Steadfast.  *Id.*

> *Question:  Have you ever made any effort to pay any of those mechanic's and material lien vendors on this property?*  ***Parker: That wouldn't make business sense, so no.***"  Exhibit 35c at pg. 89:

118.   They strung it out to perfectly time their contractors walking off the job with their loan payment coming due, neither of which they ever intended to pay.  They later used this money to bribe more participants in the Yale Criminal Enterprise.

119.   Kelley further held the project up to make his own fantasy changes to the construction plans. *Id*.  *See also* Exhibit 13, 13a22,  85 and B. 2017 Yale stole Steadfast's construction loan money remaining in 2017 Yale's bank account, instead of paying the construction contractors. *See* Exhibits 11e, 17, 55, 15, B.  The new whistleblower evidence proves that Choudhri and Parker stole 2017 Yale's bank account and quit paying its workers because they had already secretly conveyed 2017 Yale to Lloyd Kelley in violation of the Loan Documents.  Exhibit A, B.  Kelley knew about Steadfast's valid lien but did

nothing to pay them.  Instead, Kelley retained Fraga and others to join the Enterprise, and embarked on further schemes to split the lenders, wipe out liens, commence frivolous litigation, obstruct foreclosure, and steal the property. <u>Exhibit A, B, 19, 18</u>.[74]

Theft of Loaned funds – § 31.03, First Degree Felony, proven by bank records and recorded documents.

§§ 32.33, 1341, 1343 – also TPC §§ 31.03, 32.33 intent presumed; §32.49 intent presumed.[75]

---

[74] They tried to split the lenders, buy the first lien without paying the second, and then foreclose on the subordinate lien; they tried Fraga's tax lien fraud scam, have her straw man company foreclose and wipe out the liens; they tried to bury the lenders with thousands of pages of pleadings, and break them into settling; they tried the fake trust fraudulent conveyance scam during trial; they tried a frivolous eviction suit; they obtained a seven million dollar baseless sanctions award against Steadfast, resulting in the disqualification and recusal of the 125th;  they filed a fake title abstract in a frivolous federal quiet title suit; they obtained a wrongful possession order from a J.P. Court; this list goes on.

[75] (b) A person who has signed a … mortgage or deed of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property.

(c) a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed:
(1) to pay the part then due; and
(2) if the secured party had made demand, to deliver possession of the secured property to the secured party.

(d) An offense under Subsection (b) is a: (7) felony of the first degree if the value of the property destroyed, removed, concealed, encumbered, or otherwise harmed or reduced in value is $300,000 or more.

(e) A person who is a debtor under a security agreement, and who does not have a right to sell or dispose of the secured property or is required to account to the secured party for the proceeds of a permitted sale or disposition, commits an offense if the person sells or otherwise disposes of the secured property, or does not account to the secured party for the proceeds of a sale or other disposition as required, with intent to appropriate (as defined in Chapter 31) the proceeds or value of the secured property. A person is presumed to have intended to appropriate proceeds if the person does not deliver the proceeds to the secured party or account to the secured party for the proceeds before the 11th day after the day that the secured party makes a lawful demand for the proceeds or account.

An offense under this subsection is: (7) a felony of the first degree if the proceeds obtained from the sale or other disposition are money or goods having a value of $300,000 or more.

§ 32.49. Refusal to Execute Release of Fraudulent Lien or Claim
They failed to execute releases of their fraudulent liens and claims:  Penal Code § 32.49.  This Class A misdemeanor also carries presumed intent.

(a) A person commits an offense if, with intent to defraud or harm another, the person:
(1) owns, holds, or is the beneficiary of a purported lien or claim asserted against real or personal property or an interest in real or personal property that is fraudulent, as described by Section 51.901(c), Government Code; and

10/10/17    Choudhri and Parker secretly give ownership of the borrower, 2017 Yale Development, LLC and the GP, to attorney Lloyd Kelley, in supposed payment of the Choudhri legal fees from the divorce case.  This extinguishes debt not only of Choudhri, but his mother Shanaz, and all of his entities which hid assets from the divorce.  This transfer was an obvious loan default under the Loan Documents if it had not been kept secret; the borrower cannot convey away its entity ownership without lender consent.   <u>Exhibit 11a-e</u>. However, Kelley, Choudhri, and Parker continue the fraud that Parker is the sole owner of 2017 Yale, all three perjuring themselves throughout all of the subsequent litigation. This secret conveyance is concealed from all parties and courts throughout discovery and trials, until the whistleblower, a Jetall employee, came forward and exposed the audiotapes proving this fraud in 2021.   <u>Exhibit A, B(A-C)</u>. Kelley and Fraga formally join the secret criminal Enterprise and continue efforts to steal Steadfast's loan money and funds, still using Parker as their front-man.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, intent presumed.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.[76]

10/14/17    2017 Yale defaults, ceases communication  with the Lenders and abandons the 829 Yale project in the face of first upcoming interest payment due on the First Lien.  The property at 829 Yale has remained a dangerous unfinished blight on the Houston skyline ever since, due to these bad actors.  <u>Exhibit 10, 17, 35, 53, 55, compare 7 to 112 and 172</u>.

---

(2) not later than the 21st day after the date of receipt of actual or written notice sent by either certified or registered mail, return receipt requested, to the person's last known address, or by telephonic document transfer to the recipient's current telecopier number, requesting the execution of a release of the fraudulent lien or claim, refuses to execute the release on the request of:
(A) the obligor or debtor; or (B) any person who owns any interest in the real or personal property described in the document or instrument that is the basis for the lien or claim.
(b) A person who fails to execute a release of the purported lien or claim within the period prescribed by Subsection (a)(2) is presumed to have had the intent to harm or defraud another.
(c) An offense under this section is a Class A misdemeanor.

[76] Aggravated Perjury - § 37.03 Third Degree Felony.

(a) A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning:
(1) he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; or
(2) he makes a false unsworn declaration under Chapter 132, Civil Practice and Remedies Code
03 during or in connection with an official proceeding, and (2) is material.

120.    Terry Fisher, Ali Choudhri, Brad Parker fraudulently induced Steadfast into funding construction loan draws.  The loan only funds upon proof of construction, so they slow paid and ultimately robbed their construction vendors to show some progress in order to obtain more loan money.  They sent misleading emails regarding progress, and ultimately built a defective roof to get roofing funds.  When their first note payment was coming due, they stopped paying their vendors at all, abandoned the project, and stole the loan money, distributing it among themselves.  The vendors filed liens, and Steadfast was left with a dead project subject to the MOU scheme to extort the lenders.

| | |
|---|---|
| 11/01/17 | Steadfast having funded six million dollars in loans, 2017 Yale's first payment on the Loan comes due on this date.  Exhibit 11a-e.  Construction stalled, as Choudhri/Jetall have stolen all of the loan funds out of 2017 Yale's bank account, secretly given the company to Kelley, and not paid their contractors or the loan, *supra.* Kelley, Parker and Choudhri decide 2017 Yale will not pay the loan payment coming due. 2017 Yale defaults and abandons the property, leaving more unpaid contractors filing M&M liens against Steadfast's collateral.  Exhibit 15, 17, 19. |
| 11/14/17 | The Lenders Notice foreclosure again. |
| 12/04/17 | Kelley and Fraga purport to represent 829 Yale as lawyers, concealing their personal participation in the Enterprise and ownership of 2017 Yale.  They file a frivolous *ex parte* T.R.O. against the lenders to enjoin the foreclosure, and continue their efforts to defraud and extort the lenders out of their money and property at Yale.  (Cause No. 2017-80654).  They are already litigating against other lenders on other properties for Fisher pursuant to the MOU among the Yale Criminal Enterprise in other courts, including the 190th in 2016-64847. |

This misconduct violates 18 U.S.C. § 1341, 1343, 1346; 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

| | |
|---|---|
| 12/13/17 | In newly discovered emails the Yale Criminal Enterprise never produced, it turns out that the Yale Criminal Enterprise was trying to swindle more loan money from third parties, trying to get CBRE to refer them additional lenders they could defraud. Exhibit 13a22. |
| | On December 13, 2017, Jetall, Parker and Choudhri secretly told CBRE that: |

*"Mr. Kelley came into the project in the last quarter to add additional strength for the refinance....Mr. Kelley stepped into the project with the current debt in place with the plan of immediately refinancing. Mr. Kelley has financial strength and is committed to completing the project." Id.*

This email also serves as yet another newly discovered sources which undisputedly proves that the Yale Criminal Enterprise knew that its entire lawsuit against Steadfast in the 190th was frivolous. The Enterprise fabricated all manner of legally untenable claims and defenses in that case, filed solely to obstruct the lenders' foreclosure, as they had secretly agreed to do with Fisher in the MOU (Exhibit 4, 4a21, 4a22). The Enterprise's fabricated claims and defenses against Steadfast's loan primarily relied on Parker's perjurious allegation that 'we had no idea that the lenders were not modifying the second lien and extending its maturity' and 'Steadfast refused to fund construction loan draws and stalled funding, which is the only reason we abandoned the project.'

Those arguments were proven fabricated, and were legally untenable even if they had been true, as ultimately proven at huge expense by Steadfast's Summary Judgment and Final Judgment in the 190th on 2017 Yale's loan default. However, this concealed email proves that those fabricated claims and defenses were knowingly frivolous.

In response to a prior conversation about swindling more lenders, CBRE asked Choudhri and Parker by email why Steadfast was not willing to fund the loan anymore to complete construction, what the current loan terms were, when Mr. Kelley 'purchased' the property, was construction still active, and why did Fisher sell a partially complete project? Exhibit 13a22.

Parker and Choudhri told CBRE by this email, sent shortly before their frivolous claims were filed against Steadfast in the 190th, that:

"*What we discovered was Fisher had no problems on this project except <u>the loan was maturing</u>. <u>We got an extension on the noteholder holding the first lien</u> and with the right to refinace [sic] without penalty [sic]…. <u>The lender is willing to continue funding the deal (there is enough term)</u>…*. Exhibit 13a22.

They also told CBRE that, rather than their delay in construction being caused by Steadfast refusing to fund the loan as they falsely alleged in the 190th, the reality was that:

"*Mr. Kelley is deciding to install upgraded floor to ceiling windows in the penthouse units. Construction has been stalled for about 2 weeks while Mr. Kelley is focused on refinancing the project*"

121. Parker's deposition, presented by Kelley and Fraga, was perjurious throughout, *infra*, but it is worth pointing out here that Parker testified that:

STEADFAST COUNSEL: "*Did you ever seek any money that Ali had control over, direct control over, for this project?*   MR. KELLEY: *Objection. Form.* FRAGA: *Objection -- join:* PARKER: *Not to my knowledge.   Did Ali ever offer to put any funds into this project for any reason?*   MR. KELLEY: *Objection.· Form*.   MS. FRAGA: *Objection Form.*     PARKER:  *Not to my knowledge."* Exhibit 35, at pg. 102.

STEADFAST COUNSEL: *Where did the money come from and who all is involved in this transaction?* [PARKER]: *...outside of draws from the lender, that no meaningful funds were contributed to this. So I don't see how it's relevant... I can tell you that the only entities that were involved with this transaction was 2017 Yale Development and then myself, with Jetall Companies Inc. I'm an employee of Jetall Companies Inc.  Those are the only -- the only entities that would have anything remotely to do with this asset.*  Exhibit 35 at pg. 104-105.   (Kelley and Fraga immediately suborn this perjury and immediately attack another lawyer in the deposition). *Id.*

STEADFAST COUNSEL: *So, again, what entities were active with the Secretary of State of any state that are under your control, Ali's control, Jetall's control, or 2017 Yale's control during the pendency of this lawsuit?*  MR. KELLEY: *You don't have to answer.* MS. FRAGA: *You don't have to answer that." Id* at 108.   STEADFAST COUNSEL:  *And there's no expectation that you -- your expectation is not to share a penny of that with Ali or anybody else?* PARKER: *I don't know how many more times I can answer this.· I've said no consistently.· The answer is no. It's my entity." Id* at 115.  *See also* Pg. 311.

01/31/18     The lenders cooperate with each other to commence foreclosure again.  D&A Alvarez acquires a collateral transfer of the defaulted First Lien from Steadfast, so he could control the property and process, protect his subordinate lien, and complete or sell the property himself, subject to Steadfast's superior first lien rights as recorded in the Collateral Transfer of Note and Lien.  Steadfast retained the original note and superior rights to foreclose on the collateral until paid in full. Exhibit 20a-g, specifically 20e.

The Recorded Loan Documents clearly preserve and put the world on irrebuttable constructive notice of Steadfast's superior first lien and Deed of Trust; they put the world on notice that Steadfast retains the original 2017 Yale promissory note and all rights to enforce the note and foreclose on the Property at 829 Yale. *Id*.  They preclude 2017 Yale from transferring ownership of the entity, or of title to the property to anyone, without paying Steadfast's lien; preclude Alvarez from releasing Steadfast's lien, clearly put the world on notice that Steadfast retains the original promissory note, and clearly preserves the right to foreclose on the

collateral at 829 Yale if Steadfast is not paid.  Exhibit 20e.  All of the litigation by the Yale Criminal Enterprise was frivolous.[77]

02/01/18    Kelley and Fraga, posing as lawyers, use their fake 2017 Yale front man, Brad Parker, to obtain a frivolous *ex parte* T.R.O. and later injunction by 829 Yale and 2017 Yale, preventing the lenders' foreclosure.  This frivolous litigation is in furtherance of the Enterprise's 09-23-16 MOU extortion scam.  Exhibit 4, 4a22. They file their fraudulent lawsuit enjoining foreclosure in their existing 190th Paul & Partners lawsuit (2016-64847) to cause maximum confusion and complexity, and begin trying to split the lenders in negotiations (they tried to buy Steadfast's first lien separately, planning on wiping out Alvarez' second lien by fraudulent foreclosure on the first lien, typical of their scams. However, Steadfast refuses to betray Alvarez.).  Exhibit 19, 160.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.  Filing fraudulent affidavits and evidence in the state court is a violation of Penal Code §37.10 and a violation of Texas Government Code Sec. 51.901, and E-filing and service of fraudulent documents by email violates §§ 1341, 1343, etc.

122.    Choudhri, Kelley and Fraga conceal their secret ownership of the borrower, 2017 Yale, and send fraudulent letters by email, mail, and make interstate phone calls to try to bribe Steadfast Parties to sell out Alvarez or each other, in furtherance of the Enterprise' efforts to steal Steadfast's (and Alvarez' money and title).  Exhibit 19.   The Steadfast Parties decline to participate in this scam and refuse to sell their first lien without also selling the Alvarez second.

This misconduct using interstate commerce via email and mail also violates 18 U.S.C. § §1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, as many Steadfast Parties qualify under Section 2326-7.

---

[77] The Collateral Transfer of Note and Lien executed by D&A Alvarez Group, LLC in favor of the Steadfast Parties, dated January 31, 2018 and recorded at RP-2018-65405, remained valid, in full force and effect until foreclosure by Steadfast, and all rights thereunder are enforceable by the Lenders therein, and further, such validity and priority were already adjudicated in the 190th.  Exhibit 92.

The Steadfast Parties remained holders of the original Promissory Notes associated with said Deed of Trust, and Collateral Transfer of Note and Lien (Exhibit 11a-e). and are now sole record title holders in the Property free and clear of all liens and claims.  *Id.  See also* Exhibit 89, 97.

03/12/18     Confused, Alvarez defaults on his collateral obligation to Steadfast and fails to handle the foreclosure or litigation diligently on behalf of both his own interests and Steadfast's.  Kelley, Fraga, Parker, and Choudhri trick Alvarez into secretly turning on Steadfast, having failed to get Steadfast to turn on Alvarez.  Discovery commences in 2016-64847, the Enterprise concealing all relevant facts and documents, including the fact that Kelley, Fraga, and Choudhri personally own and control the defaulting debtor for their own schemes.

<span style="color:red">Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.</span>

<span style="color:red">Inducing Alvarez into signing fraudulent documents – § 32.46 First Degree Felony.</span>

<span style="color:red">Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.</span>

<span style="color:red">§§ 32.33, 1341, 1343 – also TPC § 33.33 intent presumed; § 32.49 intent presumed</span>

06/05/18     Kelley deposes Alvarez and obtains a private meeting with Alvarez alone.  The Yale Criminal Enterprise solidifies its plan to dupe Alvarez to assisting them in stealing title to the collateral, and convince Alvarez to spy on privileged communications among Steadfast and D&A Alvarez attorneys on behalf of the Yale Criminal Enterprise.

07/14/18     Kelley and Fraga secretly dupe Alvarez into hiring Kelley and Fraga as his new lawyers, without disclosing that Choudhri and/or Kelley and Fraga secretly own 2017 Yale, his borrower, and control Fisher and 829 Yale, Alvarez' debtors and the record owner of Alvarez' and Steadfast's collateral.

     Kelley and Fraga duped Alvarez into releasing his second lien for no consideration at all.[78]

     Kelley and Fraga dupe Alvarez into Releasing <u>all of his claims</u> against Fraga, Kelley, his lawyers; Fisher, 829 Yale (his defaulted 2nd lien borrower and guarantor, the developer who threatened tortiously "sink the project" (with the city, etc.)  and who was holding the construction documents hostage)[79]; Jetall, Choudhri, 2017 Yale all (his defaulted borrowers, and all of the tortfeasors who wronged him). <u>Exhibit 107.</u>

---

[78] Kelley found that very funny while presenting Parker for his perjurious deposition:
STEADFAST COUNSEL.· David -- or D&A Alvarez released that deed of trust? **PARKER:  Yeah. They filed a release --**MR. SAVOIE:· Is something funny, Mr. Kelley? **MR. KELLEY:· Yeah, it is.** <u>Exhibit 35, pg. 145.</u> Kelley thought the secret MOU and Parker lying about its terms and whether it was executed was funny too.  *Id* at <u>pg. 300-301.</u>

[79] [STEADFAST COUNSEL] ***"Do you think anybody could have finished the project without you?*** FISHER:· *<span style="color:red">I'll sink the project</span>….<span style="color:red">why would you do that? Angst, I think is the word."</span>* <u>Exhibit 185</u>, at pg. 127.

Kelley and Fraga defraud Alvarez into quitclaiming (to the defaulted borrower, 2017 Yale) all of his right, title and interest in the 829 Yale property.  They duped Alvarez into recording a Release of Alvarez' second Lien against the property.

They tricked Alvarez into joining their frivolous suit against Steadfast and Alvarez' former attorney and loan servicer in their Fourth or Fifth Amended Petition, each containing hundreds of pages of false allegations, hopelessly confusing the Court.

This trick puts Alvarez into defaulting on his New D&A Loan Documents with Steadfast, eventually resulting in D&A Alvarez owing a judgment to Steadfast for over eight million dollars.  These actions were not disclosed to Steadfast, who had a contractual relationship with Alvarez. The Yale Criminal Enterprise spoliates or conceals all key evidence from the Courts despite Rule 11 agreement, and motions to compel by Steadfast and other parties.

Ultimately, Steadfast was able to prove the obvious using only its own evidence, and Fraga and Kelley lost all of the frivolous claims they duped Alvarez into filing, as well as all of their own frivolous claims, 2017 Yale and D&A Alvarez owing over eight million dollars to Steadfast.   Exhibit 18, 19, 29, 44, 45, 46, 101, G; 174.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Inducing Alvarez into signing fraudulent documents – § 32.46 First Degree Felony.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.


§§ 32.33, 1341, 1343 – also TPC § 32.33 intent presumed; § 32.49 intent presumed.  (All of these tricks were performed using email).


Parker testified that Kelley, Choudhri, Alvarez and Parker were all present.  Exhibit 35 at pg. 314-319.

10/21/18     Steadfast hires new counsel, who determines that the 190th case was a simple loan default, and files for Summary Judgment.  The Yale Criminal Conspiracy uses tens of thousands of pages of fraudulent filings to confuse the Court and cause millions of dollars of useless legal fees, before the Court finally comprehends that this was really a simple loan default case and grants summary judgments.


**Another Secret Fraudulent Transfer by the Enterprise calculated to steal the property:**

12/20/18     During the litigation, 2017 Yale also failing to have paid its property taxes, Harris County sues 2017 Yale asserting a tax lien.  The Yale Criminal Enterprise dupes Alvarez into another scam.  Fraga secretly incorporates and is president of "Tax

Relief, Inc." a sham Wyoming company, intending to pull a tax lien scam the Jetall group has apparently pulled before.  Fraga declined to authorize her sham company to do business in Texas, to conceal its identity and confuse it with the real "Tax Relief, Inc.," a legitimate Texas Corporation which knew nothing about this. Parker, Choudhri, Kelley and Fraga dupe Alvarez into giving Tax Relief the two hundred plus thousand dollars required to pay the taxes.  However, instead of 2017 Yale paying the taxes directly and legitimately as required, and extinguishing the tax lien, they had their fake Tax Relief Company pay the lien, and then had their fraudulent front man for 2017 Yale, Brad Parker, assign Harris County's first priority tax lien against the property to the sham company.  Such an assigned tax lien, but for that fraud, would have held a superior lien to Steadfast.  Their intent was to use the tax lien's priority to secretly foreclose on Steadfast's lien and steal the property regardless of the litigation. Steadfast discovered the fraudulent scheme, and ultimately the sham lien was released. Exhibit 81-83, G.  Parker Kelley and Fraga perjured themselves about this transaction, *infra*.

§§ 32.33, 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  – also, TPC § 32.33 intent presumed; § 32.49 intent presumed.

This conduct also violates Wyoming Statutes 6-5-308, Penalty for Filing False Document, which is a felony punishable by two years in prison, as acknowledged by Fraga's signature on Exhibit 83.

01/03/19    Judge Miller is sworn in in the 190th and is thoroughly confused by the Criminal Enterprise, refusing Steadfast's summary judgment on the Loan Documents, refusing to grant procedural relief requested by Steadfast, ultimately requiring mandamus, and allowing the Enterprise to cause millions of dollars of depositions and discovery, all calculated solely by the Enterprise to confuse the issues, intimidate or trick the Steadfast lenders into turning on each other, and confuse the Court.  The 190th ultimately refuses to allow joinder of any tort or other of Steadfast's counterclaims or third-party claims against Kelley, Choudhri, and his cohorts, forcing Steadfast to file another suit and move to consolidate in both Courts. Exhibit 160.

Fraga and Kelley present Parker and Choudhri to perjure themselves in depositions, claiming among many other things that Parker owns 2017 Yale,  pretending it was a legitimate company and borrower, and saying no one else had anything to do with the collateral. Exhibit 35, 35c, 102, 120.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

01/18/19    The Enterprise records their fraudulent tax lien assignment, hoping to use its priority for the straw man company to secretly foreclose on Steadfast and Alvarez' interest.  Exhibit 81-83.

§§ 32.33, 1341, 1343 – also TPC § 32.33 intent presumed; § 32.49 intent presumed.

123.    It is worth noting that Kelley and Fraga presented Parker to perjure himself regarding this transaction as well, Mr. Parker testifying that 2017 Yale obtained a loan from D&A Alvarez "satisfied all tax obligations…." Exhibit 35 at Pg. 93-04.

01/31/19 -     Kelley and Fraga present Fisher, Choudhri and Parker for deposition to perjure
02/12/19       themselves.  They testify that 2017 Yale was a legitimate company and that Brad
               Parker owned both 2017 Yale and 2017 Yale GP, with no control by anyone else.
               They fraudulently concealed the Enterprise, and that the entity was formed purely
               to defraud the Courts, Choudhri's wife in her divorce, and Steadfast.

"*How is 2017 Yale affiliated with Jetall?*
**I'm affiliated with Jetall, and I own the company.**  Exhibit 35 at Pg. 35-6.

"*Who is Yale development GP llc?*
**It's an affiliated company.  2017 Yale development has – record owner…one is tied to the other.**  *I own both entities.*  Id at Pg. 234.

*Are there any other members of either LLC?*
**No. I'm -- I'm the sole member of both.**     *Id.*

"*Where did the money come from and who all is involved in this transaction?*
**[PARKER]: …outside of draws from the lender, that no meaningful funds were contributed to this. So I don't see how it's relevant… I can tell you that the only entities that were involved with this transaction was 2017 Yale Development and then myself, with Jetall Companies Inc. I'm an employee of Jetall Companies Inc.  Those are the only -- the only entities that would have anything remotely to do with this asset.** Exhibit 35 at pg. 104-105.   (Kelley and Fraga immediately suborn this perjury and immediately attack another lawyer in the deposition).  *Id.*

STEADFAST COUNSEL: *So, again, what entities were active with the Secretary of State of any state that are under your control, Ali's control, Jetall's control, or 2017 Yale's control during the pendency of this lawsuit?*  **MR. KELLEY: You don't have to answer. MS. FRAGA: You don't have to answer that."** *Id* at 108.

STEADFAST COUNSEL: *And there's no expectation that you -- your expectation is not to share a penny of that with Ali or anybody else?* **PARKER: *I don't know***

80

*how many more times I can answer this. I've said no consistently. The answer is no. It's my entity."* Id at 115.

124.   Kelley and Fraga objected for Parker immediately before and after this testimony, at pgs. 232 and 235, and throughout the case, without clarification.

125.   Parker perjured himself because he was bribed by Kelley and Choudhri, who promised to give Parker some of the membership interest.  Compare their conversation on the whistleblower audiotapes, discovered by Steadfast Parties in July of 2021. Exhibits B(A-C):

| | |
|---|---|
| *Ali Choudhri:* | ***"you knew because of my divorce, who owned 2017 Yale from the outset… 24:09…. I had Brad as my proxy in front."*** *B(A) 24:24.* |
| *Lloyd Kelley:* | *"I OWN 2017 Yale!  B(A) 5:13.* |
| *Ali Choudhri:* | ***"why did you have Brad testify that he owns and controls?"*** *B(A) 22:24.* |
| *Kelley:*<br>*Kelley:* | *"I don't give a fuck what Brad testified to!"  B(A) 22:28.*<br>*"Brad was a front guy" B(A) 31:03.* |
| *Choudhri:* | ***"You knew that all along"*** *B(A) 31.04.*  ***"Why did you let brad testify the next day?"*** *B(A) 29:57.* |
| *Kelley:* | *"He just testified that he was the authorized rep, that's all he testified to."  B(A) 5:40. "He didn't testify he owns it, he said I'm an authorized agent"* |
| *Choudhri:* | ***"That's not what he said, Kelley, you told him to say that he owns it and he manages it, that's what you told…"*** *B(A) 31:03.* |
| *Kelley:* | *"He never said the word owns"* |
| *Choudhri:* | ***"Yes he did, you told him to say that he owns it and he manages it. He said he's the only … You told him to say that. Lloyd, I'm telling you, you said that"*** Exhibit B(A) 31:14. |

| | |
|---|---|
| ***Choudhri:*** | ***"you wanted Brad to testify that to be representative for 2017, you did not want 2017 Yale to show...."*** *B(A) 5:25.* |
| *Kelley:* | *"Brad didn't want to show up, and you talked about giving Brad 5% or 10% which I thought was a great idea, so he's getting his 5 or 10%, so he stays in.  I was told he wanted to do that." B(A) 3:41.* |
| *Kelley:* | *"... I told you this is no good if Brad's out of the picture.  No good. if Brad doesn't have ownership, these claims are worthless.* |
| ***Choudhri:*** | ***"brad never had ownership"*** *B(C) 0:19.* |
| *Fraga:* | *"what does that do with the tax lien because brad transferred it and the secretary of state still shows brad parker on it?"* |

126.    Choudhri also perjured himself in Kelley and Fraga's presence as counsel:

> ***Q. You're affiliated with 2017 --*** *MS. FRAGA: Objection. Form.* ***- Yale***
> *A. No.*
> Exhibit 120. Pg. 209, ln 5-8.

> ***(STEADFAST COUNEL:) Do you have any right to control anyone that's associated with 2017 Yale Development LLC?***
> *A. No.   MR. KELLEY: Objection Form. MS. FRAGA: Objection Form.*
> Exhibit 120, Pg. 210, Ln 3-7,9.

**The Enterprise uses over two hundred hours of deposition time for the sole purpose of harassing, abusing, intimidating, and attempting to turncoat the Steadfast Lenders against each other as they did Alvarez:**

> Over Steadfast's objections and requests for protective orders, the Yale criminal Enterprise forced dozens of out of state Steadfast lenders to appear in Houston for abusive and harassing depositions.  During the depositions, the Yale Criminal Enterprise was incredibly abusive.  Their worst abuses were when they thought the record wasn't running.  For example, read the first 25 pages of Sal Ballesteros' deposition – Steadfast had to call the police on Mr. Kelley. Exhibit 186. He thought that wasn't on the record, but it was that time.  It was like this when the record was not on.  Sal is a great man, a successful small businessman, but not a wealthy man.  He loaned his money because we had a well secured construction loan, but for the fraud by the Yale Criminal Enterprise.  But he is English second language and they attempted to abuse that and call Sal's and Steadfast's attorney racist. (The Yale Criminal Enterprise has pulled other false race-baiting tricks as well, for instance hiring or bribing or influencing "Quannell X" to call other opposing counsel 'racists' in other cases).  The real reason for all of this is that they were never trying to learn information in these depositions.  They knew their

entire case was a fraud.  They were trying to trick, intimidate, or harass the lenders into giving up, bribing them, extorting them, or making disastrous decisions to flip sides like Alvarez did.

## The Enterprise obtains improper *ex parte* relief from a Harris County Judge:

06/04/19    During heated summary judgment and discovery practice in the 190th, the Steadfast Parties are forced to file what should be their recently discovered counter and third-party claims as a separate suit.  Despite their objections and Motion to Consolidate, this case was sent to the 125th, (beginning with 2019-23950), and consolidation was denied.   Judge Carter in the 125th ignored undisputed evidence, law, procedure, logic, equity, and the rules, and simply arbitrarily grants roughly seven million dollars in baseless sanctions against the Steadfast Parties three weeks after the Petition was filed, on June 25, 2019.

The 125th reviewed and took express judicial notice of Steadfast's conclusive, irrebuttable, clear and convincing, and uncontroverted evidence and pleadings, filed with Steadfast's Petition, Motion to Consolidate, and other pleadings from the start of the case, proving the 2017 Yale conspirator's fraudulent transfer and stolen loan funds as a matter of law. The file included the fraudulent transfer deed and the Deed of Trust making it illegal.  The file included 2017 Yale's bank records proving they stole the loan money, along with other conclusive evidence proving Steadfast's case. The 125th nonetheless made an absolute mockery of procedural and substantive law, and arbitrarily awarded the 2017 Yale conspirators a seven-million-dollar final judgment against the Steadfast Parties, on obviously frivolous and facially defective T.C.P.A. motions, without any supporting evidence, merely three weeks into that case, in an *ex parte* ruling.

The 125th informed Steadfast's Counsel that no hearing was going forward, and then held an *ex parte* hearing with the 2017 Yale conspirators anyway; the 125th was proven to have engaged in other *ex parte* communications with the 2017 Yale conspirators and counsel as well; the District Clerk's website was later proven to have been altered to allow otherwise untimely sanctions against Steadfast.

The 125th was later disqualified after a lengthy trial supported by uncontroverted evidence before the Honorable Judge Susan Brown for egregious misconduct, and its orders and judgments voided.  Due to this misconduct and vexatious litigation by Kelley and his cohorts, two more related cause numbers exist in the 125th as well (2019-51432 and 2019-59191).  These cases all remain stalled in the 190th pending the Yale Conspirator's frivolous appeal of Judge Brown's Order Disqualifying Judge Carter.  Exhibit 90, 91, 160.  The void Orders of Judge Carter leave all of these torts unadjudicated, though now proven by judicial admissions herein and ready for summary disposition and final justice.

The District Clerk's website was also altered after the fact to accommodate prejudicial rulings against the Steadfast parties, and other matters merit investigation into felonious conduct under Penal Code §§ 39.02, 39.03; 18 U.S.C. § 201.

06/21/19    Steadfast is forced to mandamus the 190th on eighteen grounds.  Mandamus was denied but 190th ruled on some procedural motions thereafter, later admitting on the record (after the Enterprise also tried to recuse, disqualify, and mandamus the 190th as well, without any valid basis) that it had essentially granted nearly all procedural relief requested by the Yale Criminal Conspiracy during that case. Exhibit 181.

07/09/19    All contractual note default claims and defenses, and the Yale Criminal Enterprise's frivolous tort and other claims and defenses against Steadfast are resolved in the 190th by Summary Judgment in Steadfast's favor, even though no one yet knew Choudhri, Kelley and Fraga secretly owned 2017 Yale or that they were conspiring another fraudulent title transfer.  The Court set trial on damages for July 23, 2019. Exhibit 160.

The Criminal Enterprise begins planning the fake trust fraudulent transfer scam, and to that end, circulates a prior title commitment they had secretly obtained from WFG in 2018.  Exhibit 154a22 7-9 eml (the Enterprise always planned insurance fraud as a backup to lender fraud – See Exhibits B(a-c), supra).  2017 Yale Development LLC had secretly acquired a commitment proving yet again that the Enterprise knew that Steadfast's CTNL and Loan Documents constituted a prior superior lien.  Exhibit 154a22, at page 6, item 6.  This commitment is yet more evidence that the Enterprise knew that all of their federal and eviction pleadings were frivolous.   The Enterprise concealed this email and commitment in discovery.

**Yet another sham company and fraudulent transfer calculated to steal the property:**

07/22/19    Finally staring foreclosure and a judgment against 2017 Yale in the face, Kelley begins secretly arguing with Choudhri over their "deal" to let Kelley steal the property at 829 Yale in settlement of their prior fee obligation for their fraud on Choudhri's divorce Court.  (Kelley and Choudhri, both being crooks, have sued each other for fraud on occasion as well.  See Exhibit B(A-C) and 103.  Kelley concocts a fraudulent scheme to gain sole control over the property using 2017 Yale and the fact that the conveyance to Lloyd still remained secret.

Kelley bribes Nicholas Fugedi, a Michigan acquaintance, into pretending to be a trustee.  Kelley has other friends, Elberger, Herman and others, create trust documents for his fake trust, and create a sham beneficiary entity.  Exhibit 59, G, 86a-v.   They create this fake trust and fake transaction documents, circulating all by interstate emails and mail, and recording fraudulent releases and deeds in the Harris County Real Property records by U.S. mail and fake documents with the Secretary of State.  Id.

Kelley tries to get Alvarez to execute another fraudulent lien release, this time purporting to release Steadfast's first lien, even though such a release is clearly

precluded by Steadfast's Loan Documents. Alvarez apparently won't do it unless Kelley pays him, so Kelley arranges to pay Alvarez $251,000 to get him to sign the fraudulent lien release. The Criminal Enterprise lied to the Federal and state Courts, claiming that Fugedi, who had no assets, paid the funds to Alvarez for the bribe to get the fraudulent lien release. However, Kelley later admits that 2017 Yale, his secret company, which also had no assets, is the one that funded his money to Alvarez in the bribe to induce the fraudulent release. (*See* Designation of Responsible Third Parties in the 190th, filed February 25, 2022). Either way, that was Enterprise money, stolen from Steadfast, and invested into the Enterprise to continue its pattern of fraud.

Kelley has Parker, the fake owner of 2017 Yale, execute a fraudulent deed to Kelley's fake Trust, on a defective deed form which is void for lack of a grantee. (Kelley's fake deed should have named his fake trustee, Fugedi, instead of just the fake trust itself as the grantee under Texas law).

Kelley and Choudhri use their shady title agency, Transact Title, and their lawyers, to obtain a title insurance policy based on the fraudulent Alvarez release.

The entire Criminal Enterprise knows that Alvarez can't release Steadfast's liens; that Steadfast had a judgment pending; that Kelley owned both sides of the fake transaction, and that the entire sham was solely to perpetrate a fraud.

Kelley and Transact Title secretly record the fake deed to the trust on July 22, 2019. 2017 Yale pays nothing. The Carb Pura Vida trust paid nothing. Neither has any other assets. They are both just a sham for Kelley and Choudhri, with Fraga and Parker getting promised a cut as well to participate in the fraud. Exhibit G, 86(a-v), 95, 35, 102, 109, 110.

After losing everything, Alvarez later finally realizes he will never see a dime from the Criminal Enterprise, retains real lawyers in 2020, and ceases cooperating with Kelley and Choudhri's frauds. Exhibit B(A-C); G.

127.　The fraudulent transfer Deed recorded on July 23, 2019, at RP-2019-317072 of the Official Public Records of Harris County, Exhibit 68, and the fraudulent Release of Lien filed by D&A Alvarez Group, LLC, fraudulently purporting to release a lien held by Steadfast Defendants, recorded at RP-2019-317071 of the Official Public Records of Harris County, are facially void, in breach of contract, and are fraudulent transfers and lien documents, constituting numerous felonies. Exhibit 94, pg. 402.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Inducing Alvarez into signing fraudulent documents – § 32.46 First Degree Felony.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

§§ 32.33, 1341, 1343 – also TPC § 32.33 intent presumed; §32.49 intent presumed.

2017 Yale lost the civil suit, and to avoid judgment, Kelley, still its secret owner, formed a fake Michigan trust, bribed a Michigan friend to be a sham trustee, bribed and tricked Alvarez into executing and recording a fraudulent lien release, wired Alvarez some funds for the sham release (about what they had stolen from him for the tax lien scam) and 2017 Yale again illegally and fraudulently transferred another sham deed to the collateral from 2017 Yale to the fake trust. Kelley had the trust make out a fake promissory note to Alvarez to supposedly get Alvarez to participate.   They also defrauded First American Title Insurance Company using the fake lien release, using their buddies at a local crooked title agent.   The bribes to Fugedi and Alvarez were made by interstate wire and email.

07/24/19        During the damages trial, Steadfast searched the real property records discovering the secret fraudulent transfer of the void deed. The Court takes Parker under oath who admits the fraudulent transfer. Parker, Fraga, Kelley all lie to the Court and pretend that Parker owns 2017 Yale and that the trust is a real bona fide purchaser. Court continues with the jury on the contract loan default issues presently before the Court.  Exhibit 102, pg. 78-85.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

Aggravated Perjury - § 37.03 Third Degree Felony.

128.    Kelley, though he personally created the entire sham just two days before, lied to

Steadfast and the Trial Court and said:

> "*it's called Caribbean or Carribe something trust… Carribe carribbita trust holds it for a company who's owned by a gentleman named Robert Elbert who is in Costa Rica.*"  Exhibit 102 at pg.80, 84.   After telling the 190th that: "*I did not handle the transaction,*" Exhibit 102 at pg.80; Kelley lied again when the 190th asked him: "*Were you part of forming this entity?*  Mr. Kelley:  *No.*" The Court asked "*are any of you part of that entity*?  Kelley and Fraga answered: "*No sir.*"  *Id* at pg.79.  The Court again asked Kelley if he was the lawyer, and Kelley misled the Court again:

*And are you the lawyer, Mr. Kelley?   Mr. Kelley: "I'm the lawyer for David Alvarez,"* omitting the truth. *Id* at 83.   Compare Exhibit G, 86(a-v), B(a-c), where Kelley deliberately drafted all the documents, bribed all the players, and concocted the whole 'brilliant idea', *supra*, solely to defraud Steadfast.

07/26/19   190th Jury enters verdict in favor of Steadfast.  Kelley's cohorts engage in extended vexatious and fraudulent post-judgment litigation in the 190th and the 125th to avoid justice and delay the judgment, including mandamusing Judge Miller and filing Motions to Recuse and Disqualify Judge Miller based upon false allegations of unethical conduct.  Exhibit 160.  The Ancillary Court enjoins all the criminals from further action against the collateral and orders production of documents, which Order the criminals all completely ignore.  Exhibit 98, compare 105.  Kelley goes to the property at 829 Yale and gets into an altercation threatening Steadfast's security guards, requiring law enforcement intervention, and illegally placing his own lock on the property in violation of the T.R.O.  *See* Exhibit 105.

Civil and Criminal contempt, trespass.

08/01/19   Kelley pays Hill and other lawyers to have his fake trustee, Fugedi, file a frivolous federal quiet title action against Steadfast in the Galveston District Court (3-19-cv-00249), seeking to enjoin Steadfast's foreclosure again.   Fraga frivolously sues 2017 Yale's title insurance company they defrauded in Harris County District Court.  Exhibit 93.  Fugedi, Kelley's fake trustee, perjures himself in an affidavit electronically filed from Michigan in the E-Filing system of the Federal Court.  Exhibit 121.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, intent presumed.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

Judge Carter continues a pattern of abuse in favor of the Conspirators in various cause numbers in the 125th, resulting in mandamus and disqualification.

10/22/19   After numerous vexatious tactics, hearings, trials on recusal, disqualification, T.C.P.A motions, contempt hearings dodged by false allegations of illness and other tactics, Judge Hill denies recusal or disqualification of Judge Miller, the Courts of Appeals deny their Mandamus of Judge Miller, and Judge Miller enters Final Judgment in the 190th on the contractual liability of the borrowers.  Exhibit 92.  2017 Yale appeals frivolously, still concealing the fact that Choudhri, Fraga, and Kelley secretly own 2017 Yale. They present fraudulent supersedeas bond affidavits, obstructing Steadfast's remedies and recovery for years more.  Exhibit 110.  The 190th refuses Steadfast's requested relief to protect the property.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, intent presumed.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

11/04/19        Conspirators file a frivolous quiet title case in Galveston Federal Court seeking to enjoin Steadfast's foreclosure again, based upon the fraudulent transaction with the fake trust, perjurious affidavits, and fraudulent evidence.  After extensive hearing, the Honorable Jeffrey Brown declines to enjoin foreclosure.

Penal Code § 37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.

11/06/19        Steadfast properly forecloses on the collateral, properly sending and recording all notices and its Substitute Trustee's Deed.  <u>Exhibit 97</u>.  None of the frauds make any offer for the Property, neither Choudhri, Parker, Kelley, Fisher, 2017 Yale, 829 Yale, or any of their conspirators ever having paid or offered a cent for the property, or to repay the loans.  However, the Yale Conspirator's fraudulent pleadings, evidence, and real property records, as well as spies posing as potential buyers, prevent Steadfast from being able to sell the collateral, and cause additional damages.

11/07/19        After losing the T.R.O. hearing, the Enterprise seeks out Judge Carter's brother's Justice of the Peace Court to files a frivolous eviction lawsuit (191100448845) on behalf of Kelley's fake trustee, Fugedi, against Steadfast's security guard company, seeking to effectively evict Steadfast, obstruct sale of the property, and gain access.  Carter ignores the law, evidence, rules, equity, and obvious lack of jurisdiction, and gives the fake trustee a judgment for eviction after a trial. They also record a frivolous Lis Pendens against the Property. <u>Exhibit 96</u>.  Steadfast is forced to post bond and appeal to the County Court.  The now resigned and disgraced Judge Barnstone in the County Court also ignores the law, evidence, equity, logic, rules and obvious lack of jurisdiction or standing and attempts to sanction Steadfast for the condition of the property.   After mandamuses, appeals, and unnecessary trials and hearings, Barnstone is ultimately forced to resign from the bench for misconduct.[80]  The First Court of Appeals ultimately affirms Steadfast's appeals of the misconduct by these courts.  <u>Exhibit 180</u>.

Penal Code § 37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.

Steadfast files clearly valid motions to dismiss and for summary judgment in the Enterprise's frivolous federal quiet title and state eviction cases, to no immediate

---

[80] https://lawsintexas.com/texas-judge-george-barnstone-resigns-rather-than-face-any-discipline/

avail due to the Enterprise's fraudulent documents, perjury, and apparent undue influence on certain judges (Carter, Barnstone).

12/18/19    Judge Carter issues the absurd judgment evicting Steadfast's security company and gives the Enterprise a baseless writ of possession.  Steadfast appeals to County Court, landing in soon-to-be-forced-to-resign-in-disgrace Judge Barnstone's Court.

01/09/2020    Conspirators appeal 190th judgment on fraudulent pauper's supersedeas bonds. Exhibit 110.

Penal Code § 37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.

01/13/20    Exhibit B(b) is recorded, proving the Yale Criminal Enterprise federal case was frivolous, and their fraud was the only thing that obstructed Steadfast's proper foreclosure; proving that the title companies were involved in the transfer; the fake trust scam started the minute they lost the summary judgments in the 190th; planning how to bribe Parker to give perjured testimony in support of supersedeas bond for that frivolous appeal; admission that the Fugedi transfer was really the Yale Criminal Enterprise's fake trust plan to steal the property and set up frivolous claims; admission that Choudhri expected to get 829 Yale back or be given the trust ownership back, after the Yale Criminal Enterprise's frivolous litigation stole it from Steadfast; sharing the profits from the transaction among Choudhri, Fraga, Parker, Kelley, Mansoor;  implication that the Yale Criminal Enterprise rigged the wrongful Judge Carter TCPA judgment and intended to use that fraudulent judgment to pay the attorneys; admit that Stephanie Alvarez, Shanaz Choudhri and all of Choudhri's companies were using the scams to avoid their debts;  proof that Kelley was originally promised a condo at Yale, and instructed Choudhri not to settle the 2017 Yale case with Steadfast, and that the entire 190th case was frivolous, because Parker and 2017 Yale didn't extend both notes;  admit that the Criminal Enterprise's relationship with Judge Brittany Morris made it impossible to lose in her Court;  proof that Choudhri promised that Pierce, Fraga and other attorneys would be paid out of the Yale Criminal Enterprise, or by assignment of 2017 Yale; discussion of various judicial ethics abuses.  *See* Highlighted Certified Condensed Transcript Exhibit B(b), and audiotape.  These tapes are probably best reviewed in this format, reviewing B(a) first, B(b) second, and B(c) third.

01/27/20    Kelley's lawyers for his fake trust bribe landman Don Huebner into creating a fake title abstract, and the attorneys file the fake abstract in the Federal Court to try to claim Alvarez released Steadfast's liens and the fake trust should be a bona fide purchaser. They also file the fake abstract in the Barnstone's frivolous County Court eviction case. Exhibit 94, 115.

These Parties filed fraudulent and fraudulently induced instruments in the Harris County real property records, and U.S. Federal Court for the Southern District of Texas, Galveston Division. Government Code Sec. 51.901 requires notice to the County or District Attorney once we notify them.  Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10.  The

<span style="color:red">false title abstract and affidavit in Federal Court; the fraudulent deeds; the fraudulently induced lien releases, and the fraudulent corrective instruments are all violations. Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.</span>

02/07/20    The Honorable Susan Brown concludes a lengthy trial and properly disqualifies Judge Carter of the 125th, voiding those orders. <u>Exhibit 90, 91</u>.

Steadfast demands retraction of fraudulent real property documents under Penal Code § 32.49.  <u>Exhibit 100</u>.  None of the Yale Criminal Enterprise respond, except Alvarez, who takes control back of Tax Relief, Inc., and releases that fraudulent lien as he became a whistleblower and renounced the fraud.  As such each of these parties is guilty of an automatic Class A misdemeanor.

<span style="color:red">Failing to release fraudulent instruments – § 32.49, Class A misdemeanor, at least 3 counts, intent is presumed.  Even this crime alone supports RICO relief, as it is punishable by one year in prison.</span>

02/10/20    Conspirators file numerous frivolous mandamus actions of Judge Brown's disqualification of Carter.

02/14/20    Steadfast mails notice of demand under Penal Code § 32.49 to the Yale Criminal Enterprise, who ignores it, cementing their felony under § 32.49 without need for further evidence proving intent, *supra*.

<span style="color:red">Penal Code § 32.49, intent presumed.</span>

02/21/20    Exhibit B(c) recorded by Ali.  Fraga, Parker, Choudhri, Kelley; discussing perjury, *ex parte* communications with judges, the goal of the Yale Criminal Enterprise to defeat Steadfast and steal the property; proof that Kelley was paying for frivolous claims and appeals; proof that the sole purpose of the fake Fugedi trust was to denude Steadfast's judgment and obstruct foreclosure; admit federal case was frivolous; admit Mansoor and the Transact Title Defendants were in on the fake trust scam; parties plotting the scope of Parker's future perjury. *See* Highlighted Certified Condensed Transcript <u>Exhibit B(c)</u>, and audiotape.

04/06/20    Conspirators file frivolous appeal of the Disqualification of Carter.

<span style="color:red">Penal Code §37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of § 1343.</span>

04/14/20    <u>Exhibit B(a)</u> is recorded, wherein the Yale Criminal Conspiracy confirmed their 2017 Yale assignment to Kelley, to cancel debts of the Choudhri, Shanaz and companies through the Yale Criminal Enterprise fraud; arguing over whether they cancelled the fraudulent transactions between them for the debt or not (now that their victory over Steadfast was slipping); pressing Parker to perjure himself to try to steal Yale, and bribed him with "5 or 10%";  proof that Choudhri expected to get the Yale property back after the fraudulent trust transfer and frivolous litigation; Kelley explaining that he had control of Yale and the fake Trust instead, pushing

Choudhri for cash; Kelley concealing his ownership from the Court and Parker's perjury; offering a percentage of the Yale Criminal Enterprise to lawyers to participate in the fraud; acknowledging that Kelley and Choudhri still have the power to "undo the trust transfer" and control 2017 Yale and Fugedi's trust; proof Choudhri caused 2017 Yale to abandon the loan and construction, and told workers to stop, and that the entire 190th lawsuit was frivolous, as Steadfast's supposed "failure to renew the second lien' was 'not the problem.'" Admits Kelley gave Fraga a percentage of the Yale Criminal Enterprise to work on the frivolous litigation; proof that Kelley and the others agree that both Choudhri and Brad are still getting 5 or 10% of the Yale Criminal Enterprise; Kelley offers to sell 2017 Yale back to Choudhri for cash; proof that they both instructed Parker to perjure himself and claim sole ownership of 2017 Yale in all the Courts, and proof that without that fraud, the entire Yale Criminal Enterprise was worthless. *See* Highlighted Certified Condensed Transcript Exhibit B(a), and audiotape.

06/30/20    Conspirators file another frivolous mandamus of Judge Brown.

12/16/20    Soon-to-be-former Judge Barnstone holds sham trial and attempts seemingly "setup" sanctions and injunctive hearing against Steadfast and later trial, without jurisdiction.  Steadfast mandamuses and appeals,

04/16/21    Galveston Federal Court finally issues final summary Judgment in Steadfast's favor, failing to address many key issues, but deciding on the valid ground that the Enterprise's fraudulent deed was void for lack of a grantee.   Exhibit 89. Conspirators file a frivolous appeal, continuing to defraud the Court as to ownership of 2017 Yale and the fake trust, lying to the Court claiming that the trust paid millions of dollars to buy the property, and relying on their fraudulent title abstract, perjurious affidavits, and fraudulent releases and deeds. *See* Motion to Dismiss Appeal filed in the 5th Circuit, Cause No. 21-40365.

<span style="color:red">Penal Code § 37.10, Aggravated Perjury §§37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.</span>

12/15/21    Oral Arguments held in the First Court of Appeals on the Yale Criminal Enterprise's frivolous appeal of the 190th contractual liability Judgment on the notes. The Criminal Enterprise makes numerous frivolous claims and arguments, and of course their entire case was founded in fundamental fraud on the Court.

01/31/22    Oral Arguments are held in the Fifth Circuit on the Yale Criminal Enterprise's frivolous appeal of the federal quiet title judgment. The Criminal Enterprise makes numerous frivolous claims and arguments, and of course their entire case was founded in fundamental fraud on the Court.

02/08/22    Conspirators file request of Justice Hecht to remove appeals from the First Court of Appeals.  In response, Steadfast requests a Special Master to coordinate combined federal, state, civil, administrative, and criminal investigations into the Yale Criminal Enterprise.   The Clerk of the Supreme Court declines the

Enterprise's request to remove the cases from the Court of Appeals. The Court is silent as to the Special Master request. The Criminal Enterprise makes numerous frivolous claims and arguments, and of course their entire case was founded in fundamental fraud on the Court.

02/23/22   After years of trying to sell the property privately, all of which efforts were unsuccessful due to the fraudulent litigation, and likely other fraud and tortious interference by the conspirators, the Steadfast Parties must list the property and sell it at dramatically reduced price, to avoid it becoming a worthless tear-down property due to dilapidation. The conspirators sent a spy to the showing, concealing their identity, and attempted to entrap the Sellers' broker, spy on proceedings, and file a fraudulent bid. *See* Sherrin Declaration <u>Exhibit 170</u>. All best and final bids were due from prospective buyers by 02/25/22. *Id*.

First Court of Appeals overturns frivolous Carter J.P. and Barnstone Judgments and reverses the judgment and order of both Courts in Cause No. 01-21-0036<u>. Exhibit 180.</u>

02/25/22   In order to tortiously interfere with any sale, and preclude Steadfast from proper recovery and mitigation of their damages, the conspirators filed a fraudulent lis pendens again. <u>Exhibit 163</u>. This lis pendens is based solely on their fraudulent lawsuit and title abstract on appeal.

These Parties filed fraudulent and fraudulently induced instruments in the Harris County real property records, and U.S. Federal Court for the Southern District of Texas, Galveston Division. Government Code Sec. 51.901 requires notice to the County or District Attorney once we notify them. Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10. The false title abstract and affidavit in Federal Court; the fraudulent deeds; the fraudulently induced lien releases, and the fraudulent corrective instruments are all violations. Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.

The conspirators still did not make an offer to buy the property, just as they never paid a cent for the property in the entire history of the case, never offered a cent in settlement, and never offered a cent at the substitute trustee's sale.

3/16/2022   The Yale Criminal Enterprise filed yet another frivolous pleading founded upon fraudulent documents and perjured testimony, requesting an extension of time for the Criminal Enterprise to request a rehearing from the First Court of Appeals on their frivolous eviction case against the Steadfast Parties' Security Guard Company. The only possible purpose for these actions is to continue their fraudulent pattern, continue frivolous pleadings, for the sole goal of increasing damages to the Steadfast Parties and obstructing the sale of their collateral in mitigation of damages.

03/19/22          After four years, twenty cause numbers in eight different courts,[81] with fourteen mandamuses, seven appeals, and after oral arguments in the First Court of Appeals and the Fifth Circuit of the United States; after two hundred and fifty thousand dollars in deposition transcripts, and over two million, four hundred thousand dollars in legal fees by Steadfast, no Court has yet seen fit to do justice or rectify these wrongs. Steadfast moved for a summary judgment that was clearly and obviously dispositive within the first ninety days and first forty thousand dollars of attorney's fees.  Nothing has changed since then, except that Kelley and Choudhri have been desperately and successfully spending effort, fees, and "capital" of whatever kind necessary to preclude any justice from ever being done.  The 190th and Galveston Court eventually came to their judgments, but the path to get there was not justice and their rulings essentially hollow.   No one has sanctioned these criminals.   These criminals have ruined so many lives that Wayne Dolcefino released a series of exposes.   Judges have been disqualified and forced to resign. Bar complaints have been filed.  Criminal investigations are apparently underway. But so far, few Courts have properly or timely administered justice, as did the Honorable Judge Susan Brown, and there remain appeals unresolved to this day. All of the Courts had clearly dispositive motions and evidence before them almost immediately, by 12(b), or Motions to dismiss or for Summary Judgment.  All of these Courts have had clear, undisputed whistleblower evidence of this multi-million-dollar fraudulent Enterprise since July of 2021.  Now this Court is armed with the whistleblower evidence and judicial admissions to finally make this right.

This is an interstate Criminal Enterprise among several corporations, trusts, LLC's and individuals, using mail and email communications to engage in a pattern of fraud in these and other cases, as well as a conspiracy to engage in vexatious and frivolous litigation and "extortion by courthouse." They have attempted to collect fraudulent debt and violated 18 USC §§ 1341 and 1343.  Their fraudulent inducement of the deeds from STF, and the releases from DA are clear violations of 18 U.S.C. § 1951(a). Their witness tampering and fraudulent inducement of DA to testify against his own and STF's interests is a clear violation of 18 U.S.C. §§ 1503 and 1512.  These federal crimes all have ten- or twenty-year punishments.

Such "racketeering activity" means (A) any act or threat involving extortion, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of

---

[81] 01-19-00463-CV; 01-19-00499-CV; 01-19-00555-CV; 01-19-00726-CV; 01-19-00793-CV; 01-20-00027-CV; 01-20-00133-CV; 01-20-00134-CV; 01-20-135; 01-20-00188-CV; 01-20-00189-CV; 01-20-00190-CV; 01-20-00480-CV; 01-20-00481-CV; 01-20-00482-CV; 2016-64847, in the 190th Civil District Court of Harris County; 2019-23950, 2019-59191; 2019-51432 in the 125th; 03-19-CV-00249 in the Southern District, Galveston Division; 21-40365 in the Fifth Circuit; 119110044885 in Harris County Justice Court 115005 in Harris County Court at Law.

justice), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1546 (relating to fraud and misuse of visas, permits, and other documents), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering) section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958.

There is already another Civil RICO action against these Parties in the Southern District Bankruptcy Court.

129.    The reality of a case is found by following the money.  Conspirators deliberately and illegally inserted themselves into the title to Steadfast's collateral, and pursuant to their scams, stole millions of dollars from Steadfast and D&A Alvarez.  Conspirators never put a penny of their own into the loan or the Property.  Conspirators are infamous for leaving a blight of hundreds of cases involving real estate fraud scattered throughout Harris County, with abandoned properties littering Houston's skyline.  The only money ever paid by the Yale Criminal Conspiracy was a $100,000 bribe to Terry Fisher to illegally give away title and let Jetall and the rest of them extort and steal loan money; a $5,000 bribe to Fugedi to be a fake trustee, and a $251,000 bribe to Alvarez for the fraudulent lien release, and then the money Kelley secretly paid other lawyers to pretend to be lawyers for real parties, and defraud Steadfast.  That money came from the Enterprise's theft of Steadfast funds, and was reinvested in furtherance of their scams against the Yale property.

**Attorneys must be disqualified:**

130.    These taped calls evidence ongoing crimes and fraud.   They were recorded by the participants.  None of the players on this call even legally own an interest in the subject

matter of this suit.  None are attorney of record.   *See also* Memorandum Confirming

Admissibility of Wyatt Audio, Exhibit B; Exhibit 122.

KELLEY:          *"All of that is being held together because of me.  All these lawyers are working*
                 *for me." B(B) 14:00.*

                 *"You never paid any attorney's fees…" B(B) 23:18.*

KELLEY:          *"I've got to make the decision to rescind the transaction and sue you,*[Choudhri]
                 *or continue with the transaction." B(A) 5:53. Alright Ali, keep complaining about*
                 *your lawyers, you are about to have an avalanche of shit hit you, it ain't even*
                 *gonna be funny. You got no good lawyers. None that I am aware." B(A) 14:45.*
                 *"I'm tired of working my ass off, worried about these people that I've got involved*
                 *in this shit worried about whether they're gonna commit malpractice.  and*
                 *somebody's gonna come after me.  I'm gonna make assurances to them.  I want*
                 *to send the trust, a piece of this case, a piece of the company to these lawyers to*
                 *get paid." B(A) 28:25. "I can just focus on the last part which is 2017 Yale. Which*
                 *I've got Michelle in, and Michelle… thinks she's going to miss deadlines, and she's*
                 *already missed one. She's got a… to pay this shit up. You're forking up the money?*
                 *You haven't spent a fucking dime Ali, so how do you own it, and you've spent*
                 *nothing and you're gonna claim all this shit later?  What did you do Ali, you don't*
                 *spend a fucking nickel?  No thanks.  This is expensive shit and you ain't paid a*
                 *goddamn dime yet.  Shit.* <span style="color:red">*We're offering you a free 5 or 10% and the 10% was*</span>
                 <span style="color:red">*supposed to be for Brad."*</span>*B(A) 20:42.  "I'm not handling the appeal'" B(A) 32:22.*
                 *"If you want free advice, that's free, just because you fuck it up later, and don't do*
                 *the right thing ain't my problem.  When I give you free shit, or free shit on the*
                 *phone like, how do you deal with Moore, and you're not paying and it's not my*
                 *case, I'm not responsible how it all turns out at the end.  Exhibit B(A) 15:40.*

KELLEY:          *"I don't represent anybody in that case anymore." Exhibit B 6:15.*

131.   It is worth noting that Kelley and Fraga had recently presented Parker to perjure

himself and testify that only Jetall would have paid these attorneys. Exhibit 35 at pg.1-103:

 **("STEADFAST COUNEL:)  The attorneys that have been paid by -- were they -- the attorneys**
**for Fisher, were they paid by Jetall or who paid those fees?** *MR. KELLEY:  Objection.  Form.*
*MS. FRAGA:  Objection.  Form. PARKER: I don't recall.  **(STEADFAST COUNEL:)  Would it***
**-- who would it have been if it wasn't Jetall?** *MR. KELLEY:  Objection.  Form. MS. FRAGA:*
*Form. PARKER:  It could have been – it could have been Jetall." Id.*[82]

---

[82] Kelley and Fraga both clearly advised Parker what to say and both hid behind privilege for 2017 Yale and Parker.
*See e.g.* Exhibit 35 at pg. 210-212.

132.   Hill participated in this fraud by filing fraudulent title abstracts, and knowingly representing a secret real party in interest, while perpetuating the fraudulent trust scam on the Court.

133.   T.D.R.P.C. 102(c) provides that: A lawyer shall not assist or counsel a client to engage in conduct that the lawyer knows is criminal or fraudulent. Section (d) and (e) require disclosure of such conduct.  T.D.R.P.C. 105 precludes privilege for this conduct.

134.   A lawyer shall not represent opposing parties to the same litigation, or involving a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client. Rule 1.06.

135.   A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client. Rule 1.08.

136.   A lawyer shall not accept compensation for representing a client from one other than the client.  *Id*. A lawyer shall not enter into a business transaction with a client unless fair and reasonable to the client and are fully disclosed and consented to. *Id*.  A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client.  *Id*.  A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client.  *Id*.

137.   Where attorney disqualification and waiver issues are legal ones that can be resolved entirely on the written record of the proceedings below, no evidentiary hearing is necessary. *In re EPIC Holdings, Inc*., 985 S.W.2d 41 (Tex. 1998).

138.    Additionally, disqualification of a lawyer arises when the lawyer may be called to testify. Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct restricts a lawyer's representation if that lawyer believes he may be a witness "necessary to establish an essential fact…."  At this point, it is quite clear that Kelley and Fraga have some explaining to do under oath.

139.    Rule 3.01 provides that:  A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous. Rule 3.02 provides: In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.

140.    Rule 3.04 of the Texas Disciplinary Rules of Professional Conduct forbids an attorney from compensating or offering to compensate "a witness . . . contingent upon the content of the testimony of the witness or the outcome of the case." Kelley and Fraga personally induced Alvarez and Parker to commit various felonies and execute fraudulent documents.

141.    Rule 1.05: a "reasonable probability" of a violation of confidentiality in the attorney-client relationship can be the basis for disqualification of an attorney. *In re Roseland Oil & Gas*, 68 S.W.3d 784, at 787 (Tex.App.—Eastland 2001).  Reasonable probability of a violation of confidentiality may include: "(1) "'an unauthorized disclosure of confidential information' obtained from a client or former client or (2) the inappropriate use of confidential information to the detriment of a former client." *Id.*  When the lawyer secretly owns 2017 Yale and the Appellee's trust, it is hard to reconcile these rules and the

97

Attorneys must be disqualified, especially when the 2017 Yale is now filing motions in the 190th to try to force Alvarez to offset the judgment against 2017 Yale.

141.   Rule 3.08 prohibits an attorney from serving as an advocate and witness in the same proceeding other than in the circumstances listed within this Rule.

142.   Rule 3.03 states that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal; fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act, or offer or use evidence that the lawyer knows to be false.  Rule 3.03(d) requires affirmative disclosure. Rule 3.04(d) states that a lawyer shall not obstruct another party's access to evidence; falsify evidence, counsel or assist a witness to testify falsely, or pay, offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the witness or the outcome of the case;  nor can an attorney disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal.

143.   Rule 3.05 provides that a lawyer shall not seek to influence a tribunal concerning a pending matter by means prohibited by law or applicable rules of practice or procedure. Rule 4.01 provides that a lawyer shall not knowingly make a false statement of material fact or law to a third person; or fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client.  Rule 5.04 provides that a lawyer shall not share or promise to share legal fees with a non-lawyer. Rule 8.02 provides that a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory

official or public legal officer, or of a candidate for election or appointment to judicial or legal office.  Rule 8.04 provides that a lawyer shall not commit a serious crime or commit any other criminal act that reflects adversely on the lawyers honesty, trustworthiness or fitness as a lawyer in other respects; engage in conduct involving dishonesty, fraud, deceit or misrepresentation; engage in conduct constituting obstruction of justice; state or imply an ability to influence improperly a government agency or official; knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

144.    It is hard to find a disciplinary rule that the conspirator attorneys have not violated.


# VI.
## CAUSES OF ACTION

145.    All of the pleadings, allegations, evidence, exhibits, and arguments listed above, and all of the criminal statutory analysis set forth above, are repeated and incorporated herein in all sections hereof, for all purposes.

## CIVIL RICO

146.    A private federal RICO cause of action exists for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c)*; Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 508 (1985). Plaintiff is such a person within the meaning of 18 U.S.C. § 1961(3) and 1964(c).

147.    Defendants are all: (1) culpable persons who used interstate commerce to engage in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct,

or control of an Enterprise, which violation causes 4) injury to Steadfast's business or property, harming people all over the country through their criminal and fraudulent Yale Criminal Enterprise. 18 U.S.C. § 1962. *de Pacheco v. Martinez*, 515 F. Supp. 2d 773 (S.D. Tex. 2007). *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993).

148.    Defendants constitute an Enterprise for purposes of 18 U.S.C. § 1961(4). Alternately, Defendants with their members formed an association-in-fact for the purpose of depriving Plaintiff of its property. This association is an "Enterprise" within the meaning of 18 U.S.C. § 1962(c). This Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

149.    Defendants are all persons wrongfully "employed by or associated with" the Yale Criminal Enterprise, who "conducted and participated, directly or indirectly, in the conduct of such Enterprises' affairs, through a pattern of racketeering activity" under Section 1962(c).

150.    Defendants all have been clearly proven to have conspired to engage in that pattern of racketeering activity under Section 1962(d).

151.    Defendants are all persons who acquired or maintained, directly or indirectly, an interest in or control of the Yale Criminal Enterprise, which was engaged in, and whose activities affected interstate commerce, through a pattern of racketeering activity under Section 1962(b).

152.    Plaintiff is a person or class of persons injured in its business or property by a violation of 18 U.S.C. § 1962, and hereby sue for damages, treble damages, costs of filing the lawsuit, and reasonable attorney's fees. Defendants, including persons employed by or associated with the Enterprise, specifically the Defendants, and its members, conducted or participated,

directly or indirectly, in the operation and/or management of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and § 1962(c). Defendants along with the Enterprise, engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above.

153.    Defendants' Enterprise was built around an ongoing system of criminal and fraudulent acts as set forth above.

### Predicate Acts of Racketeering Activity

154.    Defendants committed not only primary crimes and torts supporting RICO civil relief, but also predicate acts including wire fraud, mail fraud, extortion, etc., as plead with specificity herein and in the timeline and background sections of this Petition, together with supporting Exhibits, Affidavits, audiotapes, and other evidence proving this summary judgment RICO case by already judicially admitted evidence.  All of Defendants' numerous acts herein have the same or similar purposes, results, participants, victims, and methods, have common distinguishing characteristics, and aren't isolated events.  These predicate acts extended over a substantial period of time, from late 2016 to the present, and by their nature, are likely to be repeated into the future unless this Court does justice.

155.    Specifically, these parties all intentionally conspired to steal Steadfast's loan money and title to the collateral at 829 Yale and committed dozens of fraudulent scams to attempt to accomplish that purpose, as well as to bury the evidence of their crimes under tens of thousands of pages of fraudulent and vexatious frivolous litigation.

156.    All of the Defendants either committed – or aided, abetted, counseled, commanded, induced, or procured the commission of two or more predicate acts that make up this clear

pattern, or willfully caused the commission of two or more alleged predicate acts that make up the pattern. All Defendants acted with intent or knowledge, as proven by the whistleblowers' judicially admitted evidence, and also obvious from the undisputed facts in evidence.

157.    Through the pattern, each Defendant acquired or maintained, directly or indirectly, an interest in or control of the Yale Criminal Enterprise. All of these acts were related by design to accomplish the goals of the Yale Criminal Enterprise – stealing loan money and title to the collateral property at 829 Yale. Defendants have committed numerous proven predicate acts from September of 2016 through the present.   All Defendants gained some interest in or control of the Yale Criminal Enterprise or were employed or associated with the Enterprise. All Defendants participated, either directly or indirectly, in the conduct of the affairs of the Enterprise. All Defendants agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity, by fabricating evidence and conveyances, and agreed to the overall objective of the conspiracy to steal Steadfast's property, as well as agreed to commit the predicate acts. In an ordinary case, the conspiracy's existence and the Defendants' intent is properly inferred from the participants' conduct; however, in this case, the whistleblower evidence proves such intent as a matter of law.

158.    Defendants induced and stole nearly a million dollars in cash out of Steadfast's loan, destroyed the value of the remainder of the money loaned, defaulted on the six million dollar principle balance and all fees, interest and other costs; denuded the value of an eight-million-dollar judgment, precluded the sale of property originally worth over ten million dollars, stole millions more from Alvarez, caused over two and a half million dollars in unnecessary

attorney's fees, several million dollars of depreciation to the collateral, over three million dollars in fees and accrued interest, and caused over thirteen million dollars in total actual damages, lost principal and interest, lost property value of the collateral.

159.    Defendants prevented the marketing or sale of the collateral by Steadfast, or other mitigation of damages.  Defendants reinvested money stolen from Steadfast and Alvarez to pay bribes to further the Yale Criminal Enterprise, including to Fisher, his companies, Jetall, Choudhri's companies, Kelley and the attorneys and their employees whom the Enterprise bribed to participate. They also used those funds to pay Fugedi's bribe, Kelley's bribe to Alvarez, bribed Parker to perjure himself and keep quiet, and to avoid service, and paid for fraudulent instruments, title abstracts, and other instances of fraud, together with likely paying for improper judicial influence, all under § 1962(a).  Defendants stole Steadfast's money and title to collateral, all as part of the Yale Criminal Enterprise, under § 1962(b).  All Defendants are liable persons under § 1962(c) proven to have conspired together under § 1962(d).

160.    But for Defendants conspiring to engage in all of the predicate acts against Steadfast, its loaned funds, and its title, Steadfast's loan would have been timely paid, or Steadfast would have simply foreclosed and sold the property free and clear in 2016 or 2017, for its fair market value then in excess of Steadfast's loan principle, interest, fees, and attorney's fees, and without being subject to the dilapidation of the property, millions in legal fees unnecessary but for the Yale Criminal Enterprise, and without dilapidation of the property from years of neglect caused by all of the predicate acts of Defendants in conspiracy to create the Yale Criminal Enterprise.

*Pattern*

161.    A pattern may be established by showing two predicate acts of racketeering activity within a ten-year period. *See* 18 U.S.C. § 1961(5).  Defendants all committed numerous acts within the pattern, comprising seventeen scams against Steadfast's money and collateral, over a five-year period, including acts that are (1) related and (2) amount to a historical patter, or pose a threat of continued criminal activity, constitute a pattern.  *Snow Ingredients*, 833 F.3d at 524 (quoting *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam). *E.g., H.J. Inc. v. Nw. Bell. Tele. Co*., 492 U.S. 229, 236 (1989).  All of the acts set forth herein were committed in furtherance of the attempt by the Yale Criminal Enterprise to fraudulently induce and then steal Steadfast's Loan money, engage in sham transactions to steal or cloud title to Steadfast' collateral, obstruct Steadfast's loan and judgments, and fabricate claims against or clouding Steadfast's title to preclude Steadfast from being able to sell its collateral or recover its lenders' remedies.  Even after exposure and judicial admission of the whistleblower tapes, they have not ceased their activities intended to damage and defraud Steadfast and its collateral.

162.    Defendants continue to prepare and record fraudulent lis pendens, and pleadings to this day, and have never given up attempting to defraud, steal, extort, and denude the value of Steadfast's property.  Their actions pose a threat of continued criminal misconduct, though given the long history of numerous predicate acts, no further threat is required for Plaintiff to recover.

163.    This is not a new pattern for the Yale Criminal Enterprise,  In addition to a sampling of their fraudulent litigation in <u>Exhibit 99</u>, a recent scathing arbitration award clearly

demonstrates the same pattern of fraud by the same players.   An arbitration award on file in a 2012 case, 2012-27197A, was recently made public.   <u>Exhibit 184</u>.   The arbitration panel found that Kelley, Fraga, Choudhri, Parker, Pierce, and the other related cast of characters committed fraud in a very similar pattern on another property, to quote the arbitration panel:

"*Choudhri engaged in numerous tactics designed to improperly delay and obstruct" the litigation. "Choudhri repeatedly lied under oath and changed his positions and testimony as necessary to suit his personal needs and without regard to the truth. Choudhri caused multiple documents to be fabricated after the fact, and Choudhri unlawfully withheld evidence to protect himself and to hide his wrongful conduct.   Choudhri refused to participate as ordered in necessary discovery*." *Id*.

"*Choudhri intentionally hid his involvement in [the sham lienholder] and the foreclosure process, and the Panel finds that his conduct was wrongful and improper. Choudhri tried to cover up his wrongful conduct after the fact, including by intentionally withholding and secreting evidence that he was ordered to produce…"* *Id*.

"*Choudhri hid his true ownership of [another sham lienholder entity] with his CFO, Brad Parker, as the front man*." *Id*.

"*Choudhri owned and controlled both entities to the agreements*." *Id*.

"*Later, third parties produced documents revealing that Choudhri was the true owner of [the sham company] and he had installed Zaheer, his alleged girlfriend, as the "front" to hide his ownership and involvement in [the sham company] conducting the foreclosure and taking the Property away from [the legitimate owner]*." *Id*.

"*Choudhri planned and orchestrated a plan to cause [his secretly owned company] to purchase [liens] from [a legitimate party], to put [his target for the fraud holding a subordinate lien] into a non-monetary default when it was not really in default, to falsely inflate the amount of the Note, and to conduct a wrongful foreclosure of the Property…with the purpose and intent to deprive [legitimate owners] of the Property and any lien on the Property, … for the sole benefit of Choudhri*." *Id*.

Sound familiar?  This is an identical pattern executed by the same primary players as those controlling the Yale Criminal Enterprise.  Kelley and Fraga represented Choudhri again, and their Enterprise clearly goes beyond just Yale.

164.    The Criminal Enterprise forced that case into Arbitration because Judge Moore, then handling the case, seemed prepared to do justice against them (the Enterprise also accuses Judge Moore, Miller and others of misconduct on the audiotapes, Exhibit B(a-c)).   The Criminal Enterprise apparently undertook successful efforts to put Brittany Morris, Choudhri's alleged girlfriend and former employee, on the bench of the 333rd Court handling the case, to replace Judge Moore.   Then the Enterprise fought the arbitration tooth and nail, seeking to have Morris rule on the case on their behalf.   Morris refused to recuse herself, and Mokaram had to have a special trial to recuse Morris from the case, just as Steadfast had to do with Judge Carter.   *Id*;   *see also* Exhibits 90-91, media links, *supra*.

165.    The panel found that the Enterprise filed fraudulent lis pendens, extensive motions for sanctions, and tried to bury that fraud in voluminous frivolous pleadings as well.

166.    The depths of deceit by the Yale Criminal Enterprise can hardly be believed, and that has allowed this Criminal Enterprise to get away with their fraud for many years, but it is time for justice to be done.   They concealed all of this evidence from all of the other Courts in this related litigation, the whistleblower coming forward (who was never identified, named, or designated as a witness) after the trials were over. This Court finally has the tools to do it.

### Persons and Enterprise

167.    "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 229 (5th Cir. 2003).   RICO enterprises may consist of: 1) a legal entity, such as a corporation,

or 2) an "association-in-fact," which can include "any union or group of individuals." 18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576 (1981); *de Pacheco, supra*, at 790. There is no requirement that any particular conspirator "have committed or agreed to commit the two predicate acts"; instead, the conspirator "need only have known of and agreed to the overall objective of the RICO offense." *United States v. Delgado,* 401 F.3d 290, 296 (5th Cir. 2005); *see* 18 U.S.C. § 1962(d). The evidence set fort herein irrefutably proves the Defendants all knew of the Enterprise objective to steal Steadfast's funds, defraud Steadfast's title to the collateral, obstruct Steadfast's loan, prevent Steadfast's recovery of the money they stole, interfere with Steadfast's title in the collateral, prevent Steadfast from being able to sell the collateral, and ultimately burying their crimes under the burden of vexatious litigation.[83]

168.   Each of the Defendants is a "person" charged with violating § 1962(c), separate and distinct from the "enterprise" through which the defendant is alleged to have conducted a "pattern of racketeering activity."[84] The Yale Criminal Enterprise was the scheme by Choudhri, Kelley, Parker, Jetall, 2017 Yale and the other Defendants to defraud the lenders, steal the loan money, steal the title to the collateral, and extort money from the lenders, each playing their roles, mostly in secret and outside the light of day. Section 1962(c)'s distinctness requirement is met in this circumstance. *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1274-77 (11th Cir. 2000).

---

[83] The Criminal Enterprise filed no less than twenty-five groundless motions for sanctions against every party in every case, and regularly sought "emergency hearings" and filed voluminous pleadings to confuse the truth from every Court.
[84] The person and enterprise need not be distinct in § 1962(b) cases. *See, e.g., Landry v. Airline Pilots Ass'n Int'l AFL-CIO,* 901 F.2d 404, 425 (5th Cir. 1990) (finding no distinctness required). 1962(a) also does not contain a distinctness requirement. *See Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 30 (1st Cir. 1986).

169.    Whenever an attorney is alleged to be a participant in an enterprise with her client, sufficient independence exists to satisfy § 1962(c)'s distinctness requirement. Thus, distinctness is satisfied when a corporate client is pled as a RICO defendant and the client and outside counsel are pled as the enterprise, or *vice versa*. Just as a corporate officer can be a person distinct from the corporate enterprise, a purported client is separate from its legal defense team.  *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir.1992); *Benny*, 786 F.2d at 1415–16.

170.    An enterprise is basically any informal group coordinating with a common goal. *Boyle v. United States*, 556 U.S. 938, 942-46 (2009).  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  All of these Defendants undertook specific acts to assist in the Yale Criminal Enterprise's tortious acts against Steadfast, its lenders' rights and loans, and title to Steadfast's property.

171.    All of the Defendants have been proven by their own admitted tapes and whistleblower evidence to have agreed amongst each other to commit predicate acts, which is a RICO conspiracy.  *Tel–Phonic*, 975 F.2d at 1140 (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990)). *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).   Defendants' conspiracy, predicate acts, and pattern of racketeering activity have precluded Steadfast from recovering clear title to its collateral, or from selling it to mitigate its damages.   *See* Sherrin Affidavit, Exhibit 170.  This is the result they agreed upon; they participated in the fraud as something they all wished to bring about and sought by its actions to make it succeed. *Armco Industrial Credit Corporation v. SLT Warehouse Co.*, 782 F.2d

475 (5th Cir.1986). All Defendants have worked together for years, and committed numerous fraudulent acts to accomplish this purpose, continuing to this day.

172.    All Defendants are vicariously liable for the acts of the other conspirators committed as their agents; such as Kelley for Fraga, Kelley and Choudhri for Parker, etc.; no barrier to vicarious liability in this case as such liability has been found to be available under subsections (a) and (b) when the principal has derived some benefit from the agent's wrongful acts. *Landry*, 901 F.2d at 425; *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1307 (7th Cir.1987), cert. denied, 492 U.S. 917 (1989).

173.    Each Defendant either participated in or directed the Enterprise in violation of RICO under 18 U.S.C. § 1962(b) and (c), by directly or indirectly maintaining an interest in or control of an enterprise engaged in interstate commerce through a pattern of racketeering activity or associating with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. Further, Defendants worked in concert as part of a conspiracy in violation of RICO, under 18 U.S.C. § 1962(d).

*Racketeering Activity*

174.    "Racketeering activity" means (A) any act or threat involving extortion, which is chargeable under State law and punishable by imprisonment for more than one year; the Defendants committed numerous acts in furtherance of the pattern in furtherance of the Yale Criminal Enterprise, as specifically set forth in the Timeline above and the evidence filed herewith reflecting such State law felonies, *supra*; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery),

section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1512 (relating to tampering with a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion). As evidenced and plead in detail in the Timeline set forth herein, each Defendant committed numerous acts constituting all of those listed federal felonies in furtherance of the pattern of fraud in furtherance of the Yale Criminal Enterprise.

175.    Defendants or their agents have caused or conspired to cause the transmission of forged or fraudulent documents through the mail and/or by wire via facsimile, email, U.S. mail, and by wire transfer. Such actions constituted:

a.      A scheme to defraud conducted through the mails and/or over wire transmissions;

b.      With the intent to defraud the Plaintiff, Alvarez, the Courts, and the local and state government offices where these forged or fraudulent documents were ultimately filed, and with the intent to defraud Steadfast out of its loaned money and collateral; and

c.      Defendants did in fact mail and/or transmit by wire materials in furtherance of this scheme.  Defendants or their agents have engaged or conspired to engage in use or investment of stolen money and title by investing the proceeds of these activities into the Enterprise in violation of RICO §1962(a), such that:

a.      Defendants knowing that the money involved in these financial transactions represented the proceeds of unlawful activity, conducted or attempted to conduct financial transactions involving the proceeds from the unlawful activities of the Defendants by paying many of the co-conspirator's bribes and investing the rest of the proceeds of these unlawful activities in their Enterprise.

b.      Defendants initially acquired an interest in money and real property through the creation of the forged or fraudulent documents.  After these fraudulent and forged documents were created, they were used by the Defendants to the further injury of Plaintiff, by fraudulently filing them in official records for their real property through the U.S. mail, causing actual damages and damages as allowed by statute;

c.      Having set up a system through which fraudulent documents would be executed or forged and mailed, wired or emailed for filing to create the appearance of an interest in real property, through repeated sham transactions based on fraudulent documents, Defendants intentionally misrepresented material facts to Courts, Steadfast, potential purchasers of Steadfast's collateral, and government officials.

d.      With the intent to promote the carrying out of these unlawful activities.

***Additional information on State Law Crimes supporting Civil RICO relief:***

*__Extortion__*

176.    The Texas Penal Code § 31.03 encompassed all of the acquisitive conduct that had previously been made unlawful in many separate offenses, establishing a single offense of theft superseding the separate statutory offenses of theft, theft by false pretext, conversion by a bailee, theft from the person, acquisition of property by threat, swindling, embezzlement, extortion, among others.  Tex. Penal Code § 31.02.

177.    Defendants have conspired to commit and engaged in a pattern of committing the following violations pursuant to § 31.03, all of which are first degree felonies as the Property they have stolen far exceeds $300,000.00, making each instance of this conduct a first-degree felony.  As such, Defendants' misconduct qualifies as a state felony under RICO for state law

criminal conduct: "(A) any act or threat involving extortion, which is chargeable under State law and punishable by imprisonment for more than one year."

178.    In Texas, "(a) An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years. (b) In addition to imprisonment, an individual adjudged guilty of a felony of the first degree may be punished by a fine not to exceed $10,000. Tex. Penal Code § 12.32.

179.    The evidence shows that this criminal Enterprise committed the following crimes: Hindering Secured Creditors § 33.33 – First Degree Felony, at least 5 counts, intent presumed. Failing to release fraudulent instruments – § 32.49, Class A misdemeanor, at least 3 counts, intent presumed.  Theft of Loaned funds – § 31.03, First Degree Felony, proven by bank records and recorded documents.  Defrauding D & A Alvarez and bribing Transact Title, Umitaya, Chaudhry, Huebner, Elberger, Herman, Carb Pura Vida, LLC, Norma Lopez, and Fugedi, into signing numerous fraudulent documents – including releases purporting to fraudulently release Steadfast's lien.  § 32.46 First Degree Felony.

### § 32.33. Hindering Secured Creditors

180.    The Yale Criminal Enterprise fraudulently conveyed deeds to their secured creditors' collateral worth millions on multiple occasions:  This first degree felony under Penal Code § 32.33  carries presumed intent as they never paid a penny of the debt or returned the property on demand, which demand Steadfast repeatedly made to each of them (*See e.g.* Exhibit 170, 100, each notice of foreclosure posted, and admitted by each fraudulent lawsuit seeking restraining orders against foreclosures):  (b) A person who has signed a … mortgage or deed

of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property. (obviously Exhibits 1 v. 3; 11b v. 86o, and of course conspiracy for all the other fraudulent instruments) (c) a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed: (1) to pay the part then due; and (2) if the secured party had made demand, to deliver possession of the secured property to the secured party. (all judicially admitted) (d) An offense under Subsection (b) is a: (7) felony of the first degree if the value of the property destroyed, removed, concealed, encumbered, or otherwise harmed or reduced in value is $300,000 or more. (e) A person who is a debtor under a security agreement, and who does not have a right to sell or dispose of the secured property or is required to account to the secured party for the proceeds of a permitted sale or disposition, commits an offense if the person sells or otherwise disposes of the secured property, or does not account to the secured party for the proceeds of a sale or other disposition as required, with intent to appropriate (as defined in Chapter 31) the proceeds or value of the secured property. (all judicially admitted).  A person is presumed to have intended to appropriate proceeds if the person does not deliver the proceeds to the secured party or account to the secured party for the proceeds before the 11th day after the day that the secured party makes a lawful demand for the proceeds or account.  An offense under this subsection is: (7) a felony of the first degree if the proceeds obtained from the sale or other disposition are money or goods having a value of $300,000 or more.

181.     Fisher's first Felony Transfer of title to Jetall violates this section, with Jetall, Parker, and 2017 Yale conspiring to violate this section with Fisher and bribing him to do so.  Kelley, Parker, Choudhri, 2017 Yale, and Fraga's fake tax lien assignment violates this section.  2017 Yale's conveyance of Steadfast's loaned funds to the other conspirators, Fisher, his companies, Jetall, etc., violates this section.  The Enterprise's inducement of D&A Alvarez to sign fraudulent lien releases violate this section.  2017 Yale's fraudulent conveyance of title to the collateral to the fake trust violates this section, with conspiracy by all the other Defendants, including by filing the fraudulent lis pendens and correction deeds in 2020, 2021, 2022, all of which constitute separate violations of this section, and all are criminally liable as they conspired to commit these crimes.

## § 32.49. Refusal to Execute Release of Fraudulent Lien or Claim

182.     The conspirators failed to execute releases of their fraudulent liens and claims:  Penal Code § 32.49, after demand.  *See* Exhibit 100, *supra*.  This Class A misdemeanor also carries presumed intent. (a) A person commits an offense if, with intent to defraud or harm another, the person (1) owns, holds, or is the beneficiary of a purported lien or claim asserted against real or personal property or an interest in real or personal property that is fraudulent, as described by Section 51.901(c),[85] Government Code; and (2) not later than the 21st day after the date of receipt of actual or written notice sent by either certified or registered mail, return receipt requested, to the person's last known address, or by telephonic document transfer to

---

[85] This section does not underline define "fraudulent," but presumes it if: (c) the document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and: (B)is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person.

the recipient's current telecopier number, requesting the execution of a release of the fraudulent lien or claim, refuses to execute the release on the request of: (A) the obligor or debtor; or (B) any person who owns any interest in the real or personal property described in the document or instrument that is the basis for the lien or claim. (b) A person who fails to execute a release of the purported lien or claim within the period prescribed by Subsection (a)(2) is **presumed** to have had the intent to harm or defraud another. (c) An offense under this section is a Class A misdemeanor, also qualifying as a RICO predicate crime as it carries up to a year in jail.  The enterprise Defendants have all been proven to have committed this crime as a matter of law as well.

### § 31.03 Defendants stole over seven hundred thousand dollars out of the Loan

183.    (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if: (1) it is without the owner's effective consent; (c) For purposes of Subsection (b): (1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty; (7) felony of the first degree if the value of the property stolen is $300,000 or more.  Jetall stole title without effective consent, acting in conspiracy with Choudhri, Parker, Fisher.  829 Yale stole loan money acting for Fisher.  2017 Yale acquired title by fraud and duress without effective consent, and stole the loan money and distributed it among all of the Yale Criminal Enterprise. Fraga and Tax Relief, Inc. fraudulently acquired a lien against the property.  Fugedi, acting for the other Yale Criminal Enterprise stole title to the property.  The list goes on.

### *§ 32.46 - Defendants fraudulently induced and deceived Steadfast and Alvarez into executing documents with the intent of defrauding Steadfast*

184. A person commits an offense if with the intent to defraud or harm any person, he, by deception[86]: (1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person; (7) crimes under this section are a felony of the first degree if the value of the property, service, or pecuniary interest is $300,000 or more. They intentionally deceived Alvarez into signing fraudulent lien releases, made false promises to induce a loan workout from Steadfast, made false promises and bribed witnesses to execute fraudulent releases, deeds, title abstracts and other instruments.

185. The tapes and whistleblower evidence prove their intent to deceive and defraud Steadfast on all counts, steal Steadfast's loan money, and steal title to Steadfast's collateral. The filed pleadings and false evidence, and the fraudulent recorded instruments clearly reflect signatures induced by deception by all Defendants on multiple counts.

### *Additional Offenses*

186. Defendants intentionally made materially false and misleading statements in connection with a purchase or sale of property on multiple occasions, a Class A misdemeanor

---

[86] § 31.01 Deceive means: creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true.
(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true.
(C) preventing another from acquiring information likely to affect his judgment in the transaction.
(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.
(2) "Deprive" means: (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.
(3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:
(A) induced by deception or coercion; (B) given by a person the actor knows is not legally authorized to act for the owner.

also qualifying as a RICO predicate act crime with punishment of one year. These Parties filed fraudulent and fraudulently induced instruments in the Harris County real property records, and U.S. Federal Court for the Southern District of Texas, Galveston Division. Government Code Sec. 51.901 requires notice to the County or District Attorney once we notify them.  Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10.   The false title abstract and affidavit in Federal Court; the fraudulent deeds; the fraudulently induced lien releases, and the fraudulent corrective instruments are all violations.

187.    These parties perjured themselves on numerous occasions in court, a third-degree felony under § 37.02.  These parties engaged in *ex parte* communications with at least one Harris County judge and obtained absurd rulings resulting in the constitutional disqualification and recusal of said judge.  The District Clerk's website was altered after the fact to accommodate prejudicial rulings against the Steadfast parties, and other matters merit investigation into felonious conduct under Penal Code §§ 39.02, 39.03; 18 U.S.C. § 201.

188.    Concealing the recorded title documents evidencing Steadfast's valid first lien and CTNL from the federal courts are clear violations of 18 U.S.C. § 1512.


***Federal Crimes supporting RICO relief:***

**Defendants violated 18 U.S.C. 1503 and 1512, *supra*.**

189.    18 U.S.C. § 1503; (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to— (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to— (A) withhold testimony, or

withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding;  shall be fined under this title or imprisoned not more than 20 years, or both. (c) Whoever corruptly— (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

190.    Defendants bribed each other to participate in the Yale Criminal Enterprise on numerous occasions, coerced Alvarez to file fraudulent documents and releases, corruptly persuaded Huebner, Fugedi, Hill, and the other counsel to file fraudulent title abstracts and other fraudulent pleadings, verifications, evidence in real property records and federal and state courts, and bribed Parker to do the same, as well as to perjure himself in furtherance of the Yale Criminal Enterprise, all to steal Steadfast's money and property.  They bribed Parker with a percentage of Yale to perjure himself and deceive Steadfast and the Courts, and then apparently with five hundred thousand dollars cash to keep his mouth shut.  They deceived and/or bribed Alvarez into defaulting, changing his testimony, filing fraudulent documents, and have generally conspired to dodge service and avoid testifying, all in furtherance of their Criminal Enterprise.

**Defendants violated 18 U.S.C. §§ 1341 and 1343, *supra*.**

191.    Defendants knew the scheme involved false representations, which related to material information, engaged in through interstate commerce and emails.  18 U.S.C. § 1343; *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009) (" (quoting *United States v. Nguyen*,

504 F.3d 561, 568 (5th Cir. 2007)).   Defendants also wired bribe money to Michigan, D&A

Alvarez in Dallas, through national banks and electronic transfers across state lines.

Defendants used interstate cell phone, text, email and other interstate communications to plan

their fraud and Enterprise, pay themselves money they stole from Steadfast, E-Filing in

Federal and State Courts, E-Filing with the Harris County district Clerk and Real Property

records, wiring money and sending checks by U.S. Mail, and sending fraudulent

communications to Steadfast and others by the same interstate commerce means.   Defendants

mailed misleading letters to multi-state Steadfast lenders hoping to induce them into

participating in their fraud.   Defendants schemed by email, text, and cell phone calls to

commit criminal predicate acts and perjure themselves.   Defendants also (1) intentionally, (2)

devised a scheme or artifice to defraud Steadfast, including the out of state Steadfast Parties

(3) to obtain Steadfast's real property and loan money, and (4) used or caused to be used the

United States mail or an interstate commercial carrier to deliver original fraudulent title

instruments to themselves and the Harris County Clerk for recordation in the Real Property

Records and Official Public Records. *Skilling v. United States*, 130 S. Ct. 2896, 2926-27

(2010).  18 U.S.C. § 1341.[87]

---

[87] Whoever, intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, exchange, give away, supply, or procure for unlawful use any spurious obligation, security, or other article, for the purpose of executing such scheme or artifice or attempting to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343

192.    "[I]ntent to defraud," is "imputed to civil RICO defendants who act with reckless indifference to the truth or falsity of their representations." *Landry*, 901 F.2d at 429 n. 87. Here, this is not necessary as the whistleblower tapes prove their fraudulent intent beyond any doubt.  "The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim…." *Walsh v. America's Tele–Network Corp.*, 195 F.Supp.2d 840, 846 (E.D.Tex.2002). *McPeters v. Edwards*, 806 F. Supp. 2d 978, 990–91 (S.D. Tex. 2011), aff'd, 464 F. App'x 351 (5th Cir. 2012).

**Interstate Commerce**

193.    The use of the wires "need not be an essential element" of the scheme; it can further the fraud as long as it is "incident to an essential part of the scheme, or a step in the plot." *United States v. Dowl*, 619 F.3d 494, 499 (5th Cir. 2010) (quoting *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989)). *United States v. Hoffman*, 901 F.3d 523, 547 (5th Cir. 2018), revised (Aug. 28, 2018).  Here, the mailed letters and title instruments, wired money, e-filed documents, checks, emails, including perjured affidavits emailed from multiple states, and phone calls across the country were necessary to pull off the goals of the Yale Criminal Enterprise. *See United States v. Rodriguez-Cruz*, 681 Fed.Appx. 312, 313 (5th Cir. 2017) (cell phones are "facilities of interstate commerce," and even wholly intrastate use of a cell phone can satisfy jurisdictional "commerce" element of federal crimes); *BCCI Holdings*

---

(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 648 (S.D.Tex.2007) (quoting *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001)).

(Luxembourg) Societe Anonyme v. Khalil, 56 F.Supp.2d 14, 53 (D.D.C. 1999), aff'd in part, rev'd in part on other grounds and remanded sub nom. *BCCI Holdings (Luxembourg), S.A. v. Khali*l, 214 F.3d 168 (D.C. Cir. 2000) ("use of a facility in commerce" includes interstate wire transfers and use of mail, telephone, or telegraphy).  *K&F Rest. Holdings, Ltd. v. Rouse,* No. CV 16-293-JWD-EWD, 2018 WL 3553422, at *19 (M.D. La. July 24, 2018), aff'd on other grounds, 798 F. App'x 808 (5th Cir. 2020).   Defendants irrefutably used cell phones to defraud Alvarez and Steadfast, conspire amongst themselves in furtherance of the fraudulent Enterprise, and commit all of the other crimes set forth herein.

194.    It is a violation that Defendants used, or caused to be used, the U.S. mails; any private or commercial interstate carrier; and/or interstate or intrastate wires (ii) in furtherance of, or for the purpose of, executing the scheme to defraud. A person causes the mails to be used when he or she acts "with knowledge that the use of the mails will follow in the ordinary course of business" or where the mailing was reasonably foreseeable. *Pereira v. United States*, 347 U.S. 1, 8-9 (1954). Plaintiff needs not show a defendant personally mailed or received mail to prove the defendant caused the mails to be used. *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007). *United States v. Ratliff-White*, 493 F.3d 812, 818 (7th Cir. 2007) ("To satisfy the causation element, the [plaintiff] need only show that the defendant knew that some use of the wires would follow. Our case law does not require that a specific mailing or wire transmission be foreseen.").

195.    Defendants regularly used interstate commerce to plan, scheme, implement their Yale Criminal Enterprise.   For instance, they knew that they would be E-filing fraudulent documents, mailing original fraudulent instruments for recordation, fraudulently inducing

loans using email and cell phones, using email to circulate fraudulent documents for signatures, etc.

196.    The defendants need not be aware of, or specifically intend, the use of the mails in order to satisfy this element of the statute. If someone "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira*, 347 U.S. at 8-9 (holding defendant who collected proceeds in El Paso from check drawn on Los Angeles bank caused check to be mailed from Texas to California); *see also United States v. Cohen*, 171 F.3d 796, 800 (3d Cir. 1999) (finding this element to be met when defendant acts with knowledge that use of mails will follow in ordinary course of business); *United States v. Seran*g, 156 F.3d 910, 914 (9th Cir. 1998) (holding defendant need not specifically intend to use mails). In short, specific intent not required for the "causing the mails or wires to be used" element.  *United States v. Cusino*, 694 F.2d 185, 188 (9th Cir. 1982) ("The specific intent requirement under 18 U.S.C. § 1343 pertains to the scheme to defraud ... not to the causing of wire transmissions.").

197.    This is an interstate criminal Enterprise among several corporations, trusts, LLC's and individuals, using mail and email communications to engage in a pattern of fraud in these and other cases, as well as a conspiracy to engage in vexatious and frivolous litigation and "extortion by courthouse."  Their fraudulent inducement of the deeds from Fisher, Releases from Alvarez, Deed from Steadfast, etc., are clear violations of 18 U.S.C. § 1951(a). Their witness tampering and fraudulent inducement of Alvarez, Fugedi, Parker, Fugedi, and others

to testify is a clear violation of 18 U.S.C. §§ 1503 and 1512.  These federal crimes all have ten- or twenty-year punishments.

### <u>No Attorney Immunity</u>

198.    Kelley, Fraga and the other attorneys were the orchestrators of fraud for their own benefit, and personally paid Hill and the others to secretly represent their personal interests, posing as lawyers for the fake company or trust.   No attorney immunity applies.  Attorney immunity "is not limitless." *Youngkin*, 546 S.W.3d at 682. Attorneys are not "insulated from all liability to nonclients for all wrongdoing in the name of a client." *Id*. Specifically, attorneys are not shielded from liability to nonclients for their actions when those actions "do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Cantey Hanger*, 467 S.W.3d at 482.  The court has identified "several nonexhaustive examples of conduct that may fall outside the reach of the attorney-immunity defense," including the attorney's participating in a fraudulent business scheme with a client, knowingly assisting a client with a fraudulent transfer to avoid paying a judgment, stealing of goods or services on the client's behalf, and assaulting opposing counsel during trial. *Youngkin v. Hines*, 546 S.W.3d, 675, 682–83 (Tex. 2018); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482–83 (Tex. 2015). Finally, the Supreme Court has specified that the attorney-immunity defense "does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it does not extend to other wrongful conduct outside the scope of representation." *Cantey Hanger*, 467 S.W.3d at 484; *see also Troice v. Greenberg Traurig, LLP,* 921 F.3d 501, 507 (5th Cir. 2019) ("We conclude that … in the usual case [criminal conduct] will be outside the scope of representation."). *Sullo v. Kubosh*, 616 S.W.3d

869, 896 (Tex. App.—Houston [1st Dist.] 2020), reh'g denied (Dec. 31, 2020).  Here, the attorneys were primary instigators of fraud, and the entire Enterprise, and secretly obtained ownership of the borrower, causing the loan defaults, and orchestrating specific fraudulent schemes to steal the property out of court, in addition of course to unethical conduct in court.

199.   Further, Defendants have filed frivolous lawsuits based on knowingly sham clients, using fraudulent instruments and knowingly perjured testimony and affidavits.  They intended to benefit from their investment in such suits in furtherance of continued attacks on Steadfast's collateral, and were not paid legal fees by the clients the represented – if they were paid at all, it was by the known real parties in interest, the Yale Criminal Enterprise, rather than their clients whom they knew were a sham.  Fraga, Kelley and others weren't paid legal fees at all, but instead took secret ownership of the borrower that was scamming Steadfast and the Courts.

### ***RICO Damages***

200.   Steadfast was injured by the wire fraud and other predicate acts, fraudulent transfers of property, theft, fraudulent pleadings and real property instruments, and the investment of the money and borrower ownership interests stolen from Steadfast to bribe additional Defendants to participate in additional crimes and fraud in furtherance of the Yale Criminal Enterprise.  Defendants all took control of ownership of Steadfast's borrower, or use of Steadfast's funds, membership interest in its borrower, or claims against its title, in order to benefit from their fraud and crimes.  Defendants' overt acts damaged Plaintiff in excess of thirteen million dollars in unpaid principle, interest, fees, property damage, and legal fees caused by their Criminal Enterprise to date.    Steadfast is also owed treble damages, costs of

filing the lawsuit, and reasonable attorney's fees. 18 U.S.C. § 1962.  All of Plaintiff's damages are a direct and proximate result of these acts and the Yale Criminal Enterprise, for which all Defendants are jointly and severally liable.   Further, Defendants are jointly and severally personally liable for the Judgment by the Steadfast Parties against 2017 Yale Development, LLC for its loan default, having all used 2017 Yale to perpetrate a fraud on the lenders.

201.    Steadfast is also entitled to divestiture of funds, dissolution, and reorganization of corporations or other business structures, even restrictions on future activities.  18 U.S.C. § 1964(a), (c) (2006), and specifically pleads for T.R.O., appointment of receivers, and prevention of future acts in the fraudulent litigation and against the collateral or Steadfast.

<u>**CONVERSION**</u>

202.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

203.    Plaintiff, would show that 1.) it owned, possessed, or had the right to immediate possession of property, being loaned funds, 2.) that the property was personal property, 3.) that Defendants wrongfully exercised dominion or control over the property, and 4.) Plaintiff suffered injury as a result of Defendants' actions.

**FRAUD, FRAUDULENT TRANSFER, STATUTORY FRAUD,<br><u>AND FRAUD IN THE INDUCEMENT</u>**

204.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

205.    Pleading additionally, or in the alternative, Defendants made false representations to Plaintiff that Plaintiff relied upon to their detriment. Plaintiff suffered harm as a result

of the false representations made to it and would not have loaned any money or participated in any transactions with the Defendants if not for those false representations.

## TORTIOUS INTERFERENCE WITH A CONTRACT
## AND PROSPECTIVE BUSINESS RELATIONS

206.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

207.    Pleading additionally, or in the alternative, to recover for tortious interference with an existing contract, Plaintiff had existing Loans, personal guarantees, Loan Servicing Agreements and Loan Documents, constituting valid contracts subject to interference; (2) Defendants committed willful and intentional acts of interference, including deliberately transferring collateral and conspiring to default and obstruct collection efforts; (3) these acts and others were the proximate cause of the Plaintiff's damages; and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995); *Juliette Fowler Homes*, 793 S.W.2d at 664; *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

208.    In the instant case, Defendants willfully and intentionally interfered with valid Loan Service Agreements, deeds of trust, promissory notes, and guaranty agreements, collateral transfers of note and lien, and other Loan Documents, as well as joint defense agreements and attorney – client relationships, making performance impossible or more burdensome, difficult or expensive, which was the proximate cause of Plaintiff's actual damages and loss.  They also interfered with opportunities to sell the property to viable third parties for market value.

## QUANTUM MERUIT

209.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

210.    Pleading additionally, or in the alternative, Plaintiff would show that 1.) Plaintiff provided valuable services, 2.) the services were provided for the Defendants, 3.) the Defendants accepted the services, and 4.) the Defendants had reasonable notice that the Plaintiff expected compensation for the services. *Johnston v. Kruse*, 261 S.W.3d 895, 901 (Tex.App. – Dallas 2008, no pet.).

## MALICIOUS CIVIL PROSECUTION

211.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

212.    Pleading additionally, or in the alternative, Plaintiff has been injured by a wrongful TRO and injunction and the continuation of prosecution of a wrongful suits.   *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685 (Tex. 1990).   The actions filed by the Enterprise were prosecuted without probable cause, or continued without good cause, and caused Plaintiff's damages.   *Id.   See also Texas Beef Cattle Co. v. Green*, 921 S.w.2d 203 (Tex. 1996).   Malicious prosecution may be maintained where there is direct or circumstantial proof that the prosecutors acted with malice, ill will, evil motive, or gross indifference or reckless disregard for the rights of others.   *Dahl v. Akin*, 645 S.W.2d 506 (Tex.App.— Amarillo 1982), aff'd, 661 S.W.2d 917 (Tex. 1983).   It has now become clear that Defendants all deliberately conspired together to create the default, to interfere with the title and obstruct foreclosure in exchange for a share of any future profits from the

collateral.   As such, the entire intent and motive for the suits and Injunction were in furtherance of that conspiracy to defraud their Creditors as they had done so many times before, and not for any good faith pleading or assertion of fact.

213.   In the instant case, Plaintiff would show that it was injured by  wrongful injunction preventing the foreclosure of the 829 Yale Property and the continuation of prosecution of wrongful suits, that the action was prosecuted without probable cause, or continued without good cause, that Defendants acted with malice, ill will, evil motive, or gross indifference or reckless disregard for the rights of others, and as a result, caused Plaintiff's damages.   This scheme is part of a deliberate pattern of conduct and habit among Defendants, having defrauded numerous creditors in similar fashion.

## MONEY HAD AND RECEIVED

214.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

215.   Pleading additionally, or in the alternative, Plaintiff would show that Defendants hold money which in equity and good conscience belongs to Plaintiff and seeks to recover that money in this suit.

## CONSPIRACY

216.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

217.   Pleading additionally, or in the alternative, Plaintiff would show that each Defendant was a member of a combination of two or more persons, the object of which was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the

members had a meeting of the minds on the object or course of action, one of the members committed an unlawful, overt act to further the object or course of action, and the Plaintiff suffered injury as a proximate result of the wrongful act.

## AIDING AND ABETTING

218.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

219.   Pleading additionally, or in the alternative, Plaintiff would show, the primary actors committed torts, the Defendants had knowledge that the primary actor's conduct constituted a tort, the Defendants had the intent to assist the primary actor in committing the tort, the Defendants gave the primary actor assistance or encouragement, and the Defendants' assistance or encouragement was a substantial factor in causing the tort.

## FRAUDULENT TRANSFER

220.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

221.   Pleading additionally, or in the alternative, Plaintiff would show, unbeknownst to Plaintiff, Defendants purportedly conveyed the collateral for Defendants' loan and Deed of Trust numerous times, in an effort to defraud, delay, and hinder Defendants from recovery of the Mortgaged Property.   Such transfer was to an insider, Defendants retained control over the property after the transfer, Defendants were indebted to Plaintiff at the time of the transfer, the transfer was of substantially all of Defendants' assets, and Defendant was or

became insolvent as a result of the transfer. Defendants were aware that Defendant borrowers were insolvent at the time the transfer was made.

## PRINCIPAL-AGENT LIABILITY

222.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

223.   Pleading additionally, or in the alternative, Plaintiff would show that Defendants were acting as agent for each other in making representations and signing agreements with Plaintiff.

## TEXAS CIVIL PRACTICE & REMEDIES CODE § 12.002

224.   Defendants filed in Harris County, Texas, fraudulent court documents, a fraudulent lien release, numerous fraudulent deeds and lis pendens, and/or a fraudulent claim against real property situated in Harris County, Texas, with the intent that the documents or other records fraudulently signed would be relied upon to evidence a valid claim against real property by Defendants and with the intent to cause Plaintiff to suffer physical injury, financial injury, mental anguish, and emotional distress. Plaintiff seeks $10,000.00 or actual damages if greater for each such violation and all costs, fees, exemplary and punitive damages as allowed by Texas Civil Practice & Remedies Code §12.001, et. seq. Pursuant to Texas Civil Practice & Remedies Code 12.002(b), "[a] person who violates [§ 12.002(a)] is liable to each injured person for (1) the greater of: (A) $10,000; or (B) the actual damages caused by the violation; (2) court costs; (3) reasonable attorney's fees; and (4) exemplary damages in an amount determined by the court.

## PIERCING THE CORPORATE AND LLC VEIL

225.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

226.   In the instant case, and pursuant to Section 101.002 of the Texas Business Organizations Code, the corporate form of all of the Yale Criminal Enterprise entities should be disregarded as the forms were used as a sham to perpetrate fraud, and the limited liability companies were organized and operated as a mere tool or business conduit of another ("alter ego").  In addition, all members of the Yale Criminal Enterprise are jointly and severally liable for the acts of 2017 Yale Development, LLC, including the Final Judgment in favor of the Steadfast Parties and all costs of suit and other present liabilities of Fugedi and 2017 Yale Development, LLC.  Every single one of the Defendant entities was never used for anything other than as vehicles to perpetrate fraud.

## VIOLATION OF THE TEXAS THEFT LIABILITY ACT, T.C.P.A. 134.001 ET SEQ.

227.   Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

228.   All members of the Yale Criminal Enterprise took cash, claims, and wrongful interests in title to Steadfast's collateral without Steadfast's knowledge or effective

consent, misappropriating Plaintiff's property. The Yale Criminal Enterprise acted with the intent to deprive Steadfast of exclusive possession, custody and control. As a direct and proximate result of the Yale Criminal Enterprise's misappropriation of Steadfast's property, Steadfast has suffered and continues to suffer damages in excess of thirteen million dollars, with the exact amount to be proven at trial. As a direct and proximate result of the Yale Criminal Enterprise's theft of Steadfast's property, Plaintiff is entitled to recover its court costs and reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 134.005(b), together with punitive, statutory damages, interest, costs, and attorney's fees, as also plead generally for all causes of action.

## VII.
## APPLICATION FOR APPOINTMENT OF RECEIVER

229. Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

230. The Steadfast Parties seek the appointment of a receiver for all of the Defendant entities, including but not limited to 2017 Yale Development, LLC, 2017 Yale Development GP, LLC, Pabeshan, LLC, KAVAC Holdings, LLC, Carb Pura Vida, LLC, the Carb Pura Vida Trust, Pabeshan Castle, LLC, Jetall Companies, Inc., BDFI, LLC, Cityscape, Transact Title, and Assurance Home Warranty, and the Law Offices of the Yale Conspirator Attorneys. Said Parties abused their legal forms and standing and used them as vehicles to defraud Steadfast, the Courts, and the Public. It appears that Defendant entities have never been used for anything other than fraud. *See e.g.* Exhibit 99, 184. These Conspirators have all

committed fraud on the Courts, filed fraudulent evidence, withheld evidence from discovery, and used their existence to perpetrate fraud. The Steadfast Parties will, in all reasonable probability, prevail in the underlying action. V.T.C.A. Civil Practice & Remedies Code Section 64.001 et seq. The non-exempt property is in danger of being lost, removed, damaged, or materially injured, as evidenced by Defendants' improper conveyance of the Mortgaged Property in this case and in many other instances of similar schemes against other lenders. A receiver is required to protect and preserve the Non-Exempt Property during the pendency of this suit, and to protect the interest of the Steadfast Parties in the Non-Exempt Property. The Steadfast Parties request that a receiver be appointed and given powers pursuant to Civil Practice & Remedies Code §§ 31.002, 64.031 et seq., 28 U.S.C. § 1292, Federal Rule of Civil Procedure 66.

## VIII.
## DECLARATORY JUDGMENT

231. All of the Yale Criminal Enterprise used 2017 Yale to perpetrate a fraud, and Choudhri, Parker, Kelley, and Fraga in particular used that entity to defraud Steadfast and the Courts. Plaintiff seeks declaratory judgment that Defendants Choudhri, Parker, Fraga and Kelley personally caused the loan default by 2017 Yale Development, LLC, through their personal acts of fraud and use of the entity for fraud, and that they are therefore immediately personally jointly and severally liable for Steadfast's existing Final Judgment against 2017 Yale Development, LLC. Plaintiff requests declaratory judgment that the supersedeas bond affidavits were fraudulent and perjurious. Plaintiff requests declaratory judgment that 2017

Yale lacked standing to appeal as a corporate fiction, and that the entity was used solely to perpetrate fraud upon the Judgment creditors in that suit.

232.    Plaintiff requests declaratory judgment adjudicating that Nicholas Fugedi was never acting as a trustee; that the Carb Pura Vida Trust never existed; that Carb Pura Vida, LLC was a fraudulent entity created and existing solely to perpetrate fraud and that it has no right, title or interest in 829 Yale street property or any trust assets; that Fugedi's acquisition of any right, title, or interest in the property at 829 Yale was ineffective and fraudulent;  that all of the instruments recorded by or on behalf of 2017 Yale Development, LLC, Nicholas Fugedi in any capacity, or the Carb Pura Vida Trust in any capacity, are void, as procured by fraud, including all lis pendens, deeds, correction deeds, affidavits, or other instruments filed by the Yale Criminal Enterprise;  that all pleadings of any member of the Yale Criminal Enterprise in any Court, which arise from 829 Yale, or 2017 Yale Development, LLC, or the Carb Pura Vida Trust or any trustee, settlor, or beneficiary, or Jetall Companies, Inc., or Transact Title, or relate in any way to the property known as 829 Yale Street were frivolous, founded upon perjured testimony and affidavits, and fraudulent instruments.

233.    Texas law provides three broad theories or circumstances under which corporate existence can be disregarded and shareholders, members, managers, or others abusing the entity structure are held personally liable for corporate or limited liability company debts and obligations[88]:

---

[88] *S.E.C. v. Resource Development Intern., LLC*, 487 F.3d 295 (5th Cir. 2007) (applying Texas law); *Fidelity & Deposit Co. of Maryland v. Commercial Cas. Consultants, Inc*., 976 F.2d 272 (5th Cir. 1992) (applying Texas law; decided under the Business Corporation Act); *In re Arnette*, 454 B.R. 663 (Bankr. N.D. Tex. 2011) (applying Texas law); *Durham v. Accardi*, 587 S.W.3d 179 (Tex.. App.--Houston [14th Dist.] 2019).

• the entity as the alter ego of its shareholders or members;

• the entity is used for an illegal purpose; or

• the entity is used as a sham to perpetuate a fraud.

234. Courts disregard the corporate or entity fiction in tort cases: (1) when the fiction is used as a means of perpetrating fraud, (2) where a corporation is organized and operated as a mere tool or business conduit of another, (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation, (4) where the corporate fiction is employed to achieve or perpetrate a monopoly, (5) where the corporate fiction is used to circumvent a statute, and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.[89] Inadequate capitalization is another basis for disregarding the corporate fiction.[90] Obviously, all of the Defendant entities fit the very textbook definition of entities that must be disregarded.

235. Disregard of the corporate fiction is an equitable doctrine to which Texas takes a flexible fact-specific approach focusing on equity.[91] The underlying purpose of corporate disregard generally is to prevent use of the corporate identity as a cloak for fraud or illegality or to work an injustice. *Id.* These principles all apply to 2017 Yale Development, LLC in this

---

[89] *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008); *Wilson v. Davis*, 305 S.W.3d 57 (Tex. App.--Houston [1st Dist.] 2009) (decided under the Business Corporation Act); *Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688 (Tex. App.--Beaumont 2005) (decided under the Business Corporation Act).

[90] *In re Ryan,* 443 B.R. 395 (Bankr. N.D. Tex. 2010) (applying Texas law).

[91] *Wilson v. Davis*, 305 S.W.3d 57 (Tex. App. Houston 1st Dist. 2009) (decided under the Business Corporation Act*). R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218 (Tex. App.--El Paso 2019); *Richard Nugent and CAO, Inc. v. Estate of Ellickson,* 543 S.W.3d 243 (Tex. App.--Houston [14th Dist.] 2018); *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708 (Tex. App.--Texarkana 2017), review denied, (Sept. 28, 2018).

instance.[92]

# IX.
# CONDITIONS PRECEDENT AND DAMAGES

236.    All conditions precedent to Plaintiff's claims for relief have been performed or have

occurred.  As a result of Defendants' aforementioned actions and misconduct, Plaintiff has

suffered damages in excess of the minimum jurisdictional limits of this Court. Defendants'

conduct has directly resulted in the damages to Plaintiff described in this Petition. Further,

Plaintiff has been forced to retain counsel and seeks recovery of reasonable attorney's fees

pursuant to Civil Practice Remedies Code § 37 and 38 et seq., RICO, the Texas statutory

regime set forth above, and otherwise as allowed at law or in equity and as otherwise plead

for herein.

---

[92] *See, e.g., McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590–91 (Tex. App. 2007). Texas courts and other jurisdictions have applied to LLCs the same state law principles for piercing the corporate veil that they have applied to corporations. *See e.g., Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners' Ass'n*, 77 S.W.3d 487, 499 (Tex.App.--Texarkana 2002, pet. denied) (applying corporate alter ego veil piercing precedent in analyzing plaintiff's attempts to pierce veil of LLC); *In re Secs. Inv. Prot. Corp. v. R.D. Kushnir & Co.*, 274 B.R. 768, 775–76 (Bankr.N.D.Ill.2002) (concluding that nothing in statute bars piercing LLC veil on other grounds applicable to corporations); *Hamilton v. AAI Ventures*, L.L.C., 768 So.2d 298, 302 (La.App.2000) (applying corporate veil piercing principles in upholding trial court's piercing of LLC veil to hold member liable); *Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 327 (Wyo.2002) (holding that, while Wyoming LLC Act was silent as to veil piercing, there was no policy or legal reason to treat LLCs different from corporations in this regard; when LLC has caused damage and has inadequate capitalization, co-mingled funds, diverted assets, or used LLC as a mere shell, individual members are immune from liability. Legislative silence cannot be stretched to condone such an illogical result.). Texas courts have disregarded the corporate fiction and pierced the corporate veil when the corporate form has been used as part of an unfair device to achieve an inequitable result. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986), superseded in part by statute, TEX. BUS. CORP. ACT ANN. ART. 2.21(Vernon Supp.2005). Specifically, courts have disregarded the corporate form when it is used as a sham for perpetrating a fraud. *Id*. *In re Giampietro (AE Rest. Assocs., LLC v. Giampietro*), 317 B.R. 841, 848 n.10 (Bankr. D. Nev. 2004); *Kaycee Land and Livestock v. Flahive*, 46 P.3d 323, 328 (Wyo. 2002); *D.R. Horton Inc.-N.J. v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, at *33-36 (N.J. Super. L. Aug. 10, 2005). *Pinebrook Prop., Ltd v. Brookhaven Lake Prop. Owners Ass'n,* 77 S.W.3d 487 (Tex. App.--Texarkana 2002, pet. denied). *McCarthy v. Wani Ventures, A.S.,* 251 S.W.3d 573 (Tex. App.--Houston [1st Dist.] 2007, pet. denied). 376 B.R. 500 (Bankr. N.D. Tex. 2007). *See also In re Moore (Cadle Co. v. Brunswick Homes, LLC*), 379 B.R. 284 (Bankr. N.D. Tex. 2007) (applying corporate reverse veil piercing principles to Texas LLC and stating that whether an entity is a corporation or an LLC is a "distinction without a difference" for purposes of veil piercing); *Arsenault v. Orthopedics Specialist of Texarkana*, No. 06-07-00022-CV, 2007 WL 3353730 (Tex. App.--Texarkana Nov. 14, 2007). Bankruptcy No. 05-95161-H4-7, Adversary No. 06-03415, 2008 WL 2754526 (Bankr. S.D. Tex. Jul. 10, 2008) (mem. op.).

## X.
## APPLICATION FOR T.R.O. AND INJUNCTION

237.    Plaintiff, by its attorney, moves this court to issue a temporary restraining order, pursuant to FED. R. CIV. P. 65(b), without requiring the giving of notice to the Defendant or its attorneys, restraining and enjoining Defendants, including their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them, from filing any further real property records, releases, or other documents affecting title, condition, or possession of the Property 829 Yale, or any of the personality foreclosed upon by the Steadfast Parties (*See e.g.* Exhibit 97), pending a hearing and determination of Plaintiff's motion for a preliminary injunction.  Plaintiff further requests an Order expunging the fraudulent Lis Pendens filed by Defendants on February 25, 2022, such that the pending sale of the Collateral, at long last, by Steadfast can proceed.  Plaintiff further requests an Order requiring Defendants and counsel from filing any further frivolous or dilatory pleadings in any court related to the Yale Criminal Enterprise.

238.    Plaintiff further requests temporary and permanent orders in the form of Exhibit 98, and requiring immediate production of all documents related in any way to the Yale Criminal Enterprise and/or the property at 829 Yale Street.   This includes all communications with Jermayne Mack, the City of Houston, CBRE, or anyone any member of the Yale Criminal Enterprise ever communicated with regarding the property at 829 Yale, or among the Yale Criminal Enterprise.

239.     This Property is unique and is suffering severe and urgent dilapidation due to the Yale Criminal Enterprise.  There is a substantial likelihood that Steadfast will prevail on the merits, given that Plaintiff has already proven its entire case by judicial admissions.

240.     Unless this Motion is granted, Plaintiff will suffer immediate and irreparable injury, loss, and damage if Defendants, who never paid a dime for this property or to repay the loans, are permitted to continue tortiously interfering with title to the collateral, until a hearing can be had on Plaintiff's motion for a preliminary injunction, as more fully set forth in herein in Plaintiff's verified complaint and the evidence attached.   To show a likelihood of prevailing on the merits, the party requesting injunctive relief must generally present a prima facie case but need not show a certainty of winning. *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011).

241.     TEX. CIV. PRAC. & REM. CODE ANN. § 65.011(5) provides that an injunction may be granted if irreparable injury to real or personal property is threatened, irrespective of any remedy at law. *Graff v. Berry*, No. 06-06-00065, 2006 Tex. App. (Tex. App.—Texarkana Oct. 3, 2006). An applicant for temporary injunction must plead and prove four elements: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Nichols v. Alcatel USA, Inc*., 532 F.3d 364, 372 (5th Cir. 2008). Element 1 - Likelihood of success on the merits. When ownership of real estate is at issue, existence of a cause of action for damages is no basis for denying equitable relief such as a temporary injunction.

*Perales v. Riviera,* No. 13-03-002-CV, 2003 Tex. App. (Tex. App.—Corpus Christi July 24, 2003). *See* substitute trustees' deed and quiet title final judgment (Exhibit 97, 89 - showing probable right to the property or to quiet title). (a) plaintiff is not required to prove it will prevail at the final trial but need only show evidence tending to prove a probable right to recovery and a probable injury if the injunction is not granted. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968); *Transport Co. of Texas v. Robertson Transports, Inc*., 261 S.W.2d 549, 552 (Tex. 1953).    Element 2 - Substantial threat of irreparable injury. "Irreparable injury" is injury for which money damages cannot adequately compensate. *Wilson v. Whitaker*, 353 S.W.2d 945 (Tex. Civ. App.—Houston 1962, no writ). Every piece of real estate is unique, and if foreclosure is allowed before a full determination of the underlying claims, a party would be irreparably harmed. *Perales v. Riviera*, No. 13-03-002-CV, 2003 Tex. App. (Tex. App.—Corpus Christi July 24, 2003). The Yale Criminal Enterprise has caused the property to dilapidate for years, and the property is at risk of becoming a worthless liability if it is forced to sit unsold and undeveloped any longer by the Criminal Enterprise.   Plaintiff has the property under contract, finally.  Defendants' actions have disrupted every prior attempt at sale, and are actively attempting to disrupt this sale, due to close on March 28, 2022.  Exhibit 170.

242.    Where plaintiff may lose or be unable to develop or sell his unique property there is a substantial threat of irreparable harm. Element 3 - Probable injury in the interim outweighs harm of granting TRO. The test for determining if an existing remedy is adequate (whether the injury would be repairable) is whether it is as complete and as efficient as is equitable relief. *Perales v. Riviera*, No. 13-03-002- CV, 2003 Tex. App. (Tex. App.--Corpus Christi

July 24, 2003).   The Yale Criminal Enterprise is infamous for failing to honor settlement agreements, judgments, arbitration awards, and other Court actions, and the prospect of future monetary remedies will not adequately protect Plaintiff.

243.   The threatened injury to Steadfast outweighs any possible damage to the Yale Criminal Enterprise or any Defendant.  No one in the Yale Criminal Enterprise ever spent a cent on the property or the loan, and never used any money other than the money they stole from Plaintiff.  Steadfast has lost over thirteen million dollars they rightfully expected to be secured by the property at 829 Yale, but for the fraud by the Criminal Enterprise.  Defendants can suffer no possible damages from granting the T.R.O.  None of them has ever had any interest in the property other than that procured by fraud, clearly and irrefutably proven by judicial admission at this point.

244.   Element 4 - Granting injunction will not disserve the public interest. For the above stated reasons, granting a TRO against further fraudulent interference with the collateral, pending claims by Plaintiff as owner of this property, is appropriate and will not disserve the public interest.  The public interest is served by an injunction as fraud and theft should not be rewarded, the filing of fake documents in the real property records should not be allowed to obstruct justice, and the Courts of the United States and the State of Texas should not be deliberately used as tools by criminals to perpetrate their fraudulent schemes.  This property is sitting as a blight on the City of Houston due to Defendants.   No lender or developer has been willing to loan sufficient funds, or purchase the property for its true market value, or otherwise touch this property due to Defendants.  The current sale is below market value, pricing in the risk of Defendants' fraudulent litigation, but must be consummated due to the

extreme delay and dilapidation caused by years of neglect caused by Defendants.  Exhibit 170.

245.   The injunctive relief requested is further specifically authorized by Texas Civil Practice & Remedies Code Chapters 123, 134A, and 143.  To warrant a TRO and temporary injunction, Plaintiff needs only show a probable right to permanent relief and a probable injury while the action is pending unless the injunction is issued. *See Rugen v. Interactive Business Systems*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ) (*citing Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)). The facts outlined in the preceding paragraphs, as well as in the Affidavits of Marc Sherrin, attached hereto and incorporated herein as Exhibit "170" will show that the Plaintiff will suffer immediate and irreparable harm if the TRO is not issued.

246.   Plaintiff has already won all of the underlying contractual note default and title claims and has proven all causes of action asserted herein by judicially admitted evidence. There is likelihood of success as a matter of law.

247.   Defendants are sham vexatious litigants without assets.  Defendants have already attempted to fraudulently transfer or interfere with title to the collateral, on numerous occasions, and attempted to fraudulently create a tax lien in front of Plaintiff, both in violation of other Court orders, for the sole purpose of denuding Plaintiff's recovery of the money lent to Defendants and stolen by them.  Defendants have threatened to destroy the value of the collateral under oath, *supra*.

248.   Plaintiff requests that this Court immediately enter a TRO and Temporary and Permanent Injunction enjoining Defendants, all entities subject to their control or right of

control, and those with actual notice of the Order from:

1. Engaging in any activity calculated to impact any lien or title to the Collateral, or take any action with respect to the Collateral, being the Real Property at 829 Yale as described above, together with all documents, permits, or other rights listed as Collateral in the Loan Documents.

2. Entering into or participating in any way with any conveyance, loan, encumbrance, lease, or other legal transaction associated with the Collateral or the Loan Documents.

3. Taking any physical action with respect to the Collateral or entering the Property.

4. Physically entering or altering, removing, destroying, or otherwise modifying or affecting the Collateral.

5. Locking, or otherwise impacting Plaintiff's full and immediate access to the Collateral.

6. Physically interacting, confronting, touching, or approaching Plaintiff or any representative, agent, broker, attorney, security guard, employee, lender, or any affiliate.

7. Representing to any entity that they have any affiliation with, ownership, right of control, or control over the Collateral.

8. Communicating with anyone in any way related to Plaintiff or the property at 829 Yale.

9. The Lis Pendens filed on February 25, 2022, at RP-2022-102975 is hereby EXPUNGED and/or that Nicholas Fugedi shall immediately file a release of said fraudulent lis pendens in form acceptable to Plaintiff.

10. Defendants must turn over for inspection and review all personal and business computers, laptops, external hard drives, flash drives, external devices, cloud based applications, services or resources, and phones for forensic review by a computer forensic expert of Plaintiff's choosing; specifically, Lloyd Kelley must further immediately turn over all paper and electronic files and contents of all Storage Units, home, and office

to the Receiver Appointed herein, such contents to remain privileged and confidential only to the extent that Mr. Kelley proves that he has an actual, non-sham client with legitimate privileges in a separate show cause hearing; and

Further, that all Defendants herein shall:

11.   Immediately notify any entity of whom they have personal knowledge of any relationship to any Party or the Collateral of the entry of this Order.

12.   Immediately, within 48 hours of the date of this Order, produce to the Plaintiff by and through its counsel of record all information in any format, including but not limited to documents, communications, texts, emails, voicemails, or other communications, drafts, final documents, and the entire final file associated with the property, any party to any of the litigation, any judge or clerk, and any communications or information of any kind among the parties hereto or any Defendant; including but not limited to the conveyance to Carb Pure Vida Trust, together with all documents in their possession evidencing all persons with any interest or obligation to such Trust and any of its affiliates. Further, such production shall include all information related in any way to 829 Yale Street, or any transaction, loan, or interest related to such Property, including all bank records reflecting any payment related in any way to the litigation associated with such Collateral, to the Collateral itself, or to any transaction related in any way to the Collateral.

13.   Plaintiff herein and its authorized agents shall be entitled to full access to the Collateral and to cut any locks or other physical devices obstructing their access.

14.   That Defendants be required to post a bond of not less than Thirteen Million Dollars prior to engaging in any further pleadings or litigation affecting the Collateral, in any forum, as their obligation to indemnify and defend Plaintiff has gone unfulfilled by fraudulent and sham entities, forced Plaintiff to already wrongfully incur over Two Million Dollars in legal fees dealing with their frivolous and vexatious litigation tactics, and caused millions of dollars of diminution in value to the Collateral by the delay their fraudulent and vexatious conduct has caused.

15.   Any additional relief this Court deems equitable and just.

All such production shall be made electronically to Notice@RBlegalgroup.com, as

well as delivered to the office at 215 S. 4th Street, Wallis Texas 77485 during normal

business hours and in communication with Plaintiff's counsel, or as otherwise arranged with Counsel for Plaintiff and agreed upon in writing in advance.

249.    Plaintiff will imminently suffer irreparable injury should the requested relief not be granted, as set forth herein. Plaintiff is ready, willing and able to post a bond to secure its requested injunctive relief; however, Plaintiff would argue that no such bond would be proper as there is no prejudice to Defendants in any manner arising from the requested relief. The bond amount is within the discretion of the Court and may properly be set at zero. *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996). In the alternative, Plaintiff would request that the bond be de minimus as there is no harm to Defendants by requiring them to comply with basic legal and equitable obligations without such bond. The Plaintiff has already been adjudicated to have and possess and hold all notes and possess all rights in and to the Collateral and Property at 829 Yale arising under the Loan Documents, pending foreclosure sale.   Following an evidentiary hearing with notice to Defendants, the Court should enter a temporary injunction and permanent injunction extending the restrictions provided in the temporary restraining order permanently.

## XI.
## ADDITIONAL DAMAGES

250.    Plaintiff further specifically pleads that it is entitled to punitive damages, in addition to actual, consequential, statutory damages, attorney's fees, costs, expenses, and pre-and post-judgment interest.  The limitation on amount of recovery of punitive damages as set out by § 41.008 of the Texas Civil Practice & Remedies Code does not apply to the cause of action pled by Plaintiff in that forgery and fraud is specifically exempted from any

limitation on recovery of punitive damages. Since the subject documents are fraudulent, contain forged signatures and/or forged notary public signatures, there is no cap on punitive damages.  Plaintiff seeks pre-judgment and post-judgment interest as allowed by law.

## XII.
## PRAYER

251.   WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court enter judgment in their favor and against Defendants and that Defendants have judgment of and against them for the following relief:

1.   That the Court Issue a Temporary Restraining Order as set forth herein, and after notice and a hearing, a temporary and permanent injunction as plead for herein;

2.   All actual, compensatory, and consequential damages of Plaintiff proven and supported by the Pleadings;

3.   All punitive, statutory and exemplary damages and remedies against Defendants proven and supported by the Pleadings;

4.   Awarding an order of disgorgement against Defendants;

5.   Prejudgment and post judgment interest as provided by law;

6.   Attorney's fees;

7.   Costs of suit;

8.   Appointment of a Receiver as set forth herein;

9.   Declaratory Judgment as set forth herein.

10.  Such other and further relief at law or in equity to which Plaintiff may be justly entitled.

Respectfully submitted,

**RB LEGAL GROUP, PLLC**

/s/ Christopher Ramey

_____

Christopher Ramey
FBN:  2506
SBN:  00791480
215 S. 4th Street
Wallis, TX 77485
713/974-1333 (Telephone)
713/974-5333 (Facsimile)
*Ramey@RBLegalGroup.com*
*Notice@RBLegalGroup.com*

**COUNSEL FOR PLAINTIFF**

**DESIGNATED E-SERVICE EMAIL ADDRESS**
**The following is the undersigned attorney's designated e-service email address for all eserved documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21(a): NOTICE@RBLEGALGROUP.COM. This is the undersigned's only e-service email address, and service through any other email address will be considered invalid.**