IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Steadfast 829 Holdings, Inc.,** | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:22-cv-00905 |
| | § | |
| | § | JURY TRIAL REQUESTED |
| **2017 Yale Development, LLC,** | § | |
| **et al.** | § | |
| Defendants. | § | |

---

**DEFENDANT PABESHAN CASTLE, LLC'S REVISED RULE 12 MOTIONS TO DISMISS OR IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT AND TO COMPEL REPLEADING AND FOR A RICO CASE STATEMENT**

---

**TO THE HONORABLE UNITED STATES JUDGE:**

**COMES NOW,** Defendant PaBeShan Castle, LLC (the "<u>Defendant</u>" or "<u>Movant</u>") and files this Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction, Motion to Dismiss Under Rule 12(b)(6), Motion to Dismiss Under Rule 9(b) and Motion to Strike Under 12(f) and Motion for Summary Judgment (collectively "<u>Motions to Dismiss</u>") and in the Alternative, Motion to Compel Repleading and for a RICO Case Statement ("<u>Rule 9(b)</u>

1

Motion") and in the alternative Motion for More Definite Statement Under 12(b)(e); and respectfully shows the Court the following.

## I. DOC. 48 "AMENDED" COMPLAINT IS DEFICIENT AS A MATTER OF LAW

1.     Defendant re-files the 12(b) Motions to Dismiss because Plaintiff did not "amend" anything.  Plaintiff filed a 146-page Original Complaint (Doc. 1).  Plaintiff then filed a document titled "**PLAINTIFF'S AMENDED VERIFIED COMPLAINT…**"  However, Plaintiff's Amended Complaint is not an "amended" complaint at all.  Plaintiff employed "incorporating by reference" as a means to make current and live its Original Complaint as well as its "Plaintiff's Original Verified Emergency Motion to Appoint a Receiver and Application for Temporary Restraining Order" (Doc. 6).  By incorporating by reference its Original Complaint, Plaintiff now has on filed a Complaint that in excess of 500 pages.

2.     The most glaring issue is that the "Plaintiff" in the Original Complaint is not the "Plaintiff" in the Amended Complaint.  By incorporating by reference, there is no proper "Plaintiff" identified.  As such, the Court should dismiss the Complaint because the "Plaintiff" does not exist.

2

3.      Recently, the Fifth Circuit Court of Appeals commented on Plaintiff's tactic of pleading "salacious allegations." The Fifth Circuit's opinion points out that there are salacious allegations of fraud and other "skulduggery." But despite the whirlwind of allegations and accusations, the claim on appeal is "straightforward." Plaintiff's attempt to bury the essential facts necessary for a legal analysis in baseless "salacious allegations" of "skulduggery" may distract some, but it was unsuccessful in distracting the Fifth Circuit. The lack of the essential facts to support actual claims and trying to hide that fact in over 500 pages of baseless attacks warrants immediate dismissal of this suit.

4.      In addition, Plaintiff's Complaint simply copied *in toto* its Original Complaint (Doc. 1), and then added more personal attacks without addressing any of the pleading's defects identified in Defendant's Motion to Dismiss. Plaintiff completely disregarded the pleading requirements of FRCP 8 and 9 as demonstrated by its repeat of the same boiler-plate recital of causes of action without any detail or facts to support any of them.

5.      "Plaintiff" had its opportunity to amend and completely ignored its legal obligation to plead facts supporting each cause of action against each Defendant. Filing a mass of contorted pleadings does not supply the Court or the Defendants sufficient information to determine that any of the elements of the

3

causes of action pled apply to any Defendant. As such, Defendant moves to dismiss Plaintiff's Complaint and its Amended Complaint (Doc. 48).

6.    By incorporating all of its prior pleadings and then adding another 100+ pages of personal attacks and Plaintiff's counsel's personal opinions, Plaintiff made its "Amended Complaint" simply a further diatribe of fictional allegations without legal support in an attempt confuse and mislead the Court.

7.    Nowhere in the combined 397-pages of its Complaint does Plaintiff establish that this Court has jurisdiction. It is undisputed that on the day the "Plaintiff" filed the Original Complaint, it did not possess any claims, period.

8.    The only mentions of PaBeShan Castle, LLC in the 146 pages of Plaintiff's Complaint is as follows:

**Page 12:**
"**Pabeshan Castle, LLC** is a Texas Limited Liability Company, and may be served by its registered agent, Sonfield & Sonfield, 2500 Wilcrest Drive, Ste. 300, Houston, TX 77042; or at 2776 Bissonnet Street, Ste. 240 c/o Box 12, Houston, TX 77005, 770 S. Post Lak, Lane, Ste. 435, Houston, TX 77056, or 2500 Wilcrest Drive, Ste. 300, Houston, TX 77042."

**Page 25 Fn. 18:**
"Kelley used "Pabeshan LLC," to front for him. However, it was Kelley all along: KELLEY: "Pabeshan? You're crazy. Pabeshan is not involved in that at all. It's just not involved." CHOUDHRI: "before me and you went to Pakistan, I transf…" KELLEY: "you transferred 2017 to me" CHOUDHRI: "yes" B(C) 16:20. Exhibit B."

**Page 49:**
"Pabeshan Certificate proving Kelley's ownership, Exhibit 106."

4

**Page 50 Fn. 51:**
"Exhibit A: "*Whereas Parker desires to assign 100% ownership interest to PaBeShan Castle, LLC in 2017 Yale Development, LLC…. Which own a property known as 829 Yale Street*…" [signed by Parker and Choudhri underline individually and for 2017 Yale, and Kelley individually and for Pabeshan]. Pabeshan was just another front; "*Pabeshan? You're crazy. Pabeshan is not involved in that at all.*" CHOUDHRI: "*before me and you went to Pakistan, I transf…*" KELLEY: "*you transferred 2017 Yale to me*" CHOUDHRI: "*yes*" B(C) 16:20. Exhibit B(c) Pg. 28, Ln 1-4."

**Page 132:**
"230. The Steadfast Parties seek the appointment of a receiver for all of the Defendant entities, including but not limited to 2017 Yale Development, LLC, 2017 Yale Development GP, LLC, Pabeshan, LLC, KAVAC Holdings, LLC, Carb Pura Vida, LLC, the Carb Pura Vida Trust, Pabeshan Castle, LLC, Jetall Companies, Inc., BDFI, LLC, Cityscape, Transact Title, and Assurance Home Warranty, and the Law Offices of the Yale Conspirator Attorneys."

9.     Movant is not mentioned again.  There are no facts supporting any claim against Movant.

10.     Plaintiff sued Movant for RICO and alleged that it is part of a "Criminal Enterprise", and that it has engaged in numerous crimes and torts. Plaintiff has sued Movant for fraud, conversion, tortious interference with a contract and business relations, *quantum meruit*, malicious civil prosecution, money had and money received, fraudulent transfer, and theft; and did so without stating a single fact as to how Movant is involved in any of this.

11.     Surely, Plaintiff and its lawyers know what money they claim Movant stole from them and when it was stolen.  Surely, Plaintiff knows now what false statements of fact Movant made to them, which they relied upon, which caused them harm, and when such statements were made Movant.  Surely, Plaintiff knows what services Plaintiff provided to Movant, expecting compensation from Movant, and when they provided such services to Movant.  Surely, Plaintiff knows what money, and when it was given, to Movant with an expectation that it belongs to Plaintiff.

12.     Next, this Court lacks subject matter-jurisdiction to hear Plaintiff's complaint.  Plaintiff does not appear to exist.  After a search of New Mexico secretary of state records, and a review of the March 30, 2022 hearing presided over by Justice Costa, and given the refusal of Plaintiff's counsel to produce the corporate and assignment records that the Court ordered him to produce, the conclusion must be that Plaintiff, "Steadfast 829 Holdings, Inc.", did not exist as a New Mexico corporation as of March 20, 2022 when suit was filed. In addition, according to the facts in the Original Petition, "Plaintiff Steadfast 829 Holdings, Inc." could not have been assigned claims or causes of action by the amorphous "Steadfast Parties" in May 2021 since by Plaintiff's own pleadings, "Plaintiff

Steadfast 829 Holdings, Inc." did not come into existence (if it ever did) until March 18, 2022.

13.   In the absence of a valid assignment of any claims when this suit was filed to an existing Plaintiff named Steadfast 829 Holdings, Inc., Plaintiff lacked standing file suit against any of the Defendants including Movant.   As such, Movant request this Court dismiss this case for lack of subject-matter jurisdiction.

14.   Next, this Court should dismiss the entire lawsuit for forum shopping. In March 2, 2022, the Fifth Circuit denied the "Steadfast Parties"[1] the same relief requested herein in case number 21-40365.[2]   Then the "Plaintiff Steadfast 829 Holdings, Inc.," (if it exists) filed this lawsuit as an "assignee" of all the "Steadfast Parties'" rights, and requested the same relief that had just been rejected by the Fifth Circuit.   Simultaneously, the "Steadfast Parties" themselves sought this same emergency relief from the Texas state appellate courts.   The First Court of Appeals *sua sponte* denied all of the "Steadfast Parties" requested relief within a few days of it being filed.

15.   The "Steadfast Parties" and their counsel have a history of blatant forum shopping.   On July 26, 2019, Mr. Ramey filed his third identical complaint in the 125th District Court in 2019-51432 and obtained *ex-parte* temporary

---

[1]   This refers to the "Steadfast Parties" as identified in Footnote 1 in Document 1 filed by "Plaintiff" in this case as the Original Petition.
[2]   Document 516222598 in Fifth Circuit case 21-40365.

restraining order.   After a hearing, the state court denied them a temporary injunction.   The same day the court denied them injunctive relief, on August 26, 2019, Mr. Ramey filed an identical lawsuit as a new suit and again obtained *ex-parte* temporary restraining order in cause number 2019-59191.   Again, the state court denied them a temporary injunction.   Those cases were dismissed with prejudice and the state court specifically cited in the order of dismissal the blatant forum shopping by Mr. Ramey.

## II. MOTION TO DISMISS UNDER RULE 12(B)1 FOR LACK OF SUBJECT MATTER JURISDICTION

16.     Subject-matter jurisdiction defines the court's authority to hear a case.[3] Upon information and belief, Plaintiff did not exist on the day this suit was filed.   In addition, given the facts pled by Plaintiff, Plaintiff did not have any claims to assert against any Defendant because there was no assignment to Plaintiff as of the time of the filing of this suit.

17.     In the absence of a valid assignment, then Plaintiff lacked standing to bring any claims against any Defendant.

18.     In addition, if Plaintiff is not a New Mexico corporation, then it lacks diversity as members of the Steadfast Parties are Texas resident and Plaintiff's list

---

[3] *U.S. v. Morton*, 467 U.S. 822 (1984).

of Defendants lists all but one as a Texas resident. As such, there is no diversity for the Court to hear non-federal claims. Specifically, Carl Sherrin's declaration attached to Plaintiff's Original Complaint, Document 1, establishes he is a resident of Lucas, Texas. As such, there is no diversity among the "Steadfast Parties" and the listed Defendants.

19.    Plaintiff lacks standing to bring any claims in this suit. Once challenged, Plaintiff must establish that it has standing.[4]

20.    Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case.[5]    A court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits.[6]    Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction.[7]    The Court should resolve the subject matter jurisdiction question before it considers anything else.[8]

---

[4]  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).
[5]  *Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*, Civil Action No. 4:17-CV-00449, 2018 WL 4352836, at *2 (E.D. Tex. Sept. 12, 2018) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[6]  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).
[7]  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).
[8]  Moran v. Kingdom of Saudi Arabia, 27 F.3d 169 (5th Cir. 1994).

9

21.     Defendant moves to dismiss this suit under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  Such a motion must be considered by the district court before other challenges "since the court must find jurisdiction before determining the validity of a claim."[9] When a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue.[10]

22.     Once a defendant files a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of establishing the court has subject-matter jurisdiction over the dispute. [11]  The court's authority to consider evidence presented beyond the pleadings allows it to devise a procedure which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing.[12]   If the court chooses to allow additional

---

[9]  *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir. 1988); *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

[10]  *Land v. Dollar,* 330 U.S. 731, 735 and n. 4, 67 S.Ct. 1009, 1011 and n. 4, 91 L.Ed. 1209 (1947); *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

[11]  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942).

[12]  *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir. 1988).

discovery, it should be limited to only that which is necessary to determine the preliminary jurisdictional issue.[13]

23.    Plaintiff alleges it is a newly-created New Mexico Corporation that was created for the sole purpose of creating diversity so that the underlying Steadfast Plaintiffs could file yet again another lawsuit.  A search of the New Mexico Secretary of State indicates that Plaintiff is not in existence.[14]

24.    At Plaintiff's request for an emergency hearing, this Court held a hearing on March 30, 2022, with the Honorable Gregg Costa presiding, and the issue of the existence of Plaintiff as a New Mexico corporation was discussed.[15] At that hearing, this Court ordered Plaintiff's counsel, Mr. Ramey, to provide the corporation to send any documents relative to formation of the company and its ownership et cetera which would include any assignment of claims documents.[16] Mr. Ramey agreed to provide said documents on behalf of his client.  However, since that time Mr. Ramey has refused to provide any provide such documents.[17] Therefore, the issue of whether the Plaintiff was incorporated on the date this

---

[13]  *Id.*
[14]  https://portal.sos.state.nm.us/BFS/online/corporationbusinesssearch (last accessed May 3, 2022)
[15]  See Doc No. 13.
[16]  See transcript of March 30, 2022 hearing.
[17]  See emails exchanged with Mr. Ramey over this issue attached as Exhibit _____.

lawsuit was filed is grounds for sanctions since the pleadings assert it was in existences and had been assigned claims on or before the pleading was filed.

25.     Since that time, numerous Defendants have sent Plaintiff the Rule 11 safe-harbor letters and Rule 11 motions that expressly states this issue of the non-existence of Plaintiff.  Mr. Ramey has refused to respond with evidence (a) that Plaintiff exists and (b) that all of the "Steadfast Parties" that are Appellees in the Fifth Circuit case, have assigned their claims to Plaintiff.

26.      Mr. Ramey has played games with the identity or name of Plaintiff. In Document 1, Plaintiff's Original Petition…, Mr. Ramey identifies the Plaintiff as '**Steadfast 829 Holdings, Inc**."[18]  In the first paragraph, Mr. Ramey states, "COME NOW Plaintiff, **Steadfast 829 Holdings, Inc.**  (referred to herein as "Steadfast" or the "Steadfast Parties")."

27.     In Footnote 1 of Document 1, Mr. Ramey claims that the "**Steadfast Parties**" refers to a list of individuals and entities that all assigned the property, and their claims, rights, obligations and causes of action related to Yale to Plaintiff.

28.     In the attached declaration of Carl Sherrin, he claims he is president of Plaintiff, **Steadfast 829 Holdings, Inc.**.[19]  In the declaration of a director Adam Hruby, he also swears that "**Steadfast 829 Holdings, Inc.**" was incorporated on

---

[18]  The reference to "Doc." Or "Document" is a reference to the pleadings filed in this case; cause number 4:22:cv-00905.

[19]  Doc. 1, page 26.

March 18, 2022.   That was the Friday before Mr. Ramey filed this lawsuit on Sunday, March 20, 2022.

29.    On March 23, 2022, in Document 4, this Court dismissed "**Plaintiff Steadfast 829 Holdings, Inc.**'s**"** requests for an *ex parte* temporary restraining order to enjoin Defendants.

30.    That same day after the Court denied the request for *ex parte* relief, in Document 6, Mr. Ramey changed the style of the case and changed the reference to Plaintiff as "**Steadfast 829 Yale Holdings, Inc."**   Mr. Ramey used the same template except that in the first sentence he states, "COME NOW Plaintiff, **Steadfast 829 Yale Holdings, Inc.,** (referred to herein as "Steadfast" or the "Steadfast Parties") and has the same Footnote 1.

31.    On page 13 of Document 1, Plaintiff defines "**Steadfast Parties**" as "private individuals" which loaned money going back to 2016. By definition it excludes a New Mexico company created on March 20, 2022.

32.    Even more odd, Mr. Ramey states factually that, "[t[he Steadfast Parties assigned the Property, and all of their claims and causes of action to a single purpose entity, Plaintiff, Steadfast 829 Holdings, Inc., commencing in May

of 2021, before the whistleblowers came forward.  Exhibit 170."[20]  However, there
was no "Exhibit 170" attached.

33.    It is impossible for the "Steadfast Parties" to have assigned anything
to "Plaintiff, Steadfast 829 Holdings, Inc.," a New Mexico corporation in May
2021 if Mr. Sherrin and Mr. Hurby's sworn testimony is accurate that "Steadfast
829 Holdings, Inc.," was not even incorporated until March 20, 2022.  Either Mr.
Sherrin and Mr. Hurby have testified to facts falsely or Mr. Ramey's complaint is
factually false as to the key jurisdictional facts.  In either case, this Court should
dismiss this case and sanction Mr. Ramey.

34.    More recently, on April 18, 2022, Mr. Ramey filed Document 21,
which states, "COME NOW, the **Steadfast Parties**…"   The style of the case still
identifies the Plaintiff as "**Steadfast 829 Holdings, Inc**."  As such, there should
only be one Plaintiff, a New Mexico company.  By calling Plaintiff by a plural
designation which is defined as a number of "private individuals" it seems to
indicate an admission that there is no New Mexico corporation that existed at the
time this suit was filed.

---

[20]  See Document 1, page 14, paragraph 16.

35.    In the pleadings, documents 1, 6 and 21, Mr.  Ramey refers to the Plaintiff   the "Steadfast Parties" while in footnote 1 he refers to a long list of individuals and companies as the "Steadfast Parties."

36.    And although in Footnote 1, Mr. Ramey claims the "Steadfast Parties" assigned their claims, Mr. Ramey has refused to provide any such evidence of any assignment despite the Court's March 30, 2022 order.

37.    According to the New Mexico Secretary of State, there is a company registered in New Mexico identified as **"Steadfast Companies, Inc**."  It is listed as a Minnesota company that is registered as a foreign corporation in New Mexico.[21] In addition, according to the New Mexico secretary of state, there is a "**Steadfast Holdings, LLC**" listed as a New Mexico company.  According to the New Mexico secretary of state, neither "**Steadfast 829 Holdings, Inc.**" nor "**Steadfast 829 Yale Holdings, Inc.**" exist as a registered entity in New Mexico. [22]

38.    Furthermore, the issue of what right a newly formed company has to the property at issue by their claimed "assignment" has not been established by Plaintiff with any assignment documents.  Plaintiff has defied the order of this Court to produce said documents. As such, the entire lawsuit is being prosecuted

---

[21]  See New Mexico Sec. of State list of companies. New Mexico identity number of this company is 5336287.  https://portal.sos.state.nm.us/BFS/online/corporationbusinesssearch (last accessed May 3, 2022).
[22]  *Id.*  New Mexico identity number of this company is 5275610.

without authority against all of the named Defendants. The hurry to file this lawsuit has apparently left this lawsuit being filed by a non-existent entity without any valid assignment to a real entity in existence at the time of filing this suit.

39.    Movant request the Court dismiss this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff, Steadfast 829 Holdings, Inc. failed to comply with this Court's order and provide documents evidencing it existed on the date of filing as a New Mexico corporation and it failed to show that the claims asserted in this suit were actually assigned to Steadfast 829 Holdings, Inc. as of the day this suit was filed.

40.    On March 2, 2022, the Fifth Circuit denied all of the Steadfast Parties request for emergency relief including their request to expunge the *lis pendens*.

41.    On March 20, 2022, Plaintiff filed the instant suit seeking the same relief that the Fifth Circuit had denied the Steadfast Parties on March 1, 2022.

42.    On March 30, 2022, this Court held an oral hearing on Plaintiff's request for emergency relief which included much of the same relief that the Fifth Circuit had just denied the Steadfast Parties on March 1, 2022. At that hearing, knowing the Fifth Circuit had just denied this same request for "emergency relief," Judge Gregg Costa asked, "Hasn't some other court looked at this already?" The Court denied Plaintiff's request for emergency relief in a written order.

16

43.     Undeterred, on April 4, 2022, Mr. Ramey on behalf of the Steadfast Parties,[23] but *not* including Plaintiff Steadfast 829 Holdings, Inc., filed in the state courts[24] a motion titled:

> APPELLANTS' MULTI-JURISDICTIONAL MOTION FOR EMERGENCY ACTION – RECEIVERSHIP FOR ENTITIES USED TO PERPETRATE FRAUD

The "Steadfast Parties" requested the same relief from the Fifth Circuit in February 2022. The Fifth Circuit denied all of the "Steadfast Parties'" requests for such emergency relief on March 2, 2022. The "Steadfast Parties" then filed this lawsuit under an "assignee" and requested the same relief that had been rejected by the Fifth Circuit in February 2022. Simultaneously the "Steadfast Parties" sought this same emergency relief from the Texas state appellate court while their alleged "assignee" sought the same emergency relief from this Court. However, within a matter of days of filing their request in the state court, the state court *sua sponte* dismissed all such requests for emergency relief. The supposed "Plaintiff" herein, and the "Steadfast Parties"/"assignors" are simultaneously requesting emergency relief in multiple courts as follows:

> 1. Enter an Order immediately expunging Fugedi's fraudulent Lis Pendens, Exhibit 161.

---

[23]  But not including the Plaintiff herein.
[24]  They filed it in at least two pending appeals in the First Court of Appeals in cases 01-19-00555-CV, 01-20-000027-CV.

2. Dismiss all of the Yale Criminal Enterprise's Appeals as frivolous and based upon fraudulent foundational evidence.

3. Grant the Steadfast Parties just damages, jointly and severally, against every Yale Criminal Enterprise Party before the Court.

4. Appoint a Receiver to immediately take control over every Yale Criminal Enterprise legal entity before the Court, specifically including but not limited to 2017 Yale Development, LLC, 2017 Yale Development GP, LLC, the Carb Pura Vida Trust, and Transact Title, LLC.

5. Grant Injunctive Relief as set forth in Steadfast's Pleadings.

6. Grant the Steadfast Parties not less than two million dollars in reasonably incurred costs, expenses, and attorney's fees as plead for and allowed at law, jointly and severally, against the Yale Criminal Enterprise parties before the Court and appropriate attorneys for the misconduct proven;

7. In conjunction with all of the other defrauded Courts, appoint an emergency special master or Court to handle the Yale Criminal Enterprise and relief requested herein…

44.      Almost as if mocking this Court, the very first sentence of the "Steadfast Parties'" bizarre motion to the Texas appellate courts is their quote from the March 30, 2022 hearing before Judge Costa:

"Fifth Circuit Judge Gregg Costa said it better than this writer can: Hasn't some other court looked at this already?"

18

45.    From the transcript of that hearing, Judge Costa was questioning why these same parties were bringing a new lawsuit immediately after the Fifth Circuit denied them that same relief; in essence, what would justify such forum shopping? The Steadfast Parties and their counsel Chris Ramey failed to mention to the Texas state courts that the Fifth Circuit and this Court had already denied them such emergency relief.

46.    The "Steadfast Parties" and their lawyer, Mr. Ramey, have been sanctioned for engaging in blatant forum shopping in state court in 2019.[25]  They filed at least two identical lawsuits to obtain *ex-parte* injunctive relief in the state courts in 2019 for the "Steadfast Parties."  Such games have apparently become standard operation for Mr. Ramey and his clients.

47.    On April 7, 2022, the First Court of Appeals summarily denied the "Steadfast Parties'" request for such emergency relief.  Now, Plaintiff has filed another pleading begging for emergency relief injunctive relief and appointment of receiverships over companies and individuals for the sole purpose of lifting the *lis pendens* and preventing anyone from opposing these "Steadfast Parties" in ongoing litigation including the state court and Fifth Circuit appeals.  In light of the fact that the "Steadfast Parties" filed almost all of the lawsuits in state court and fully

---

[25]  Dismissal order in lawsuit filed by the Steadfast Parties in 125th Texas State District Court cause number 2019-59191 September 27, 2019 order dismissing lawsuit for forum shopping

litigated all of these issues numerous times, it is revealing why they want some court to handicap their litigation opponents with such "emergency relief."  Why, the Fifth Circuit might rule any day and deprive them of their ability to deceive potential buyers into thinking that the federal court has already ruled in their favor!

48.     As such, Plaintiff and the "Steadfast Parties" and its counsel are engaged in blatant forum shopping.  On March 20, 2022, of the present case under cause number 4:22-CV-00905, Plaintiff and its counsel assert that the "Steadfast Parties," which are all identified in the footnote "all having assigned the property, and their claims, rights, obligations and causes of action related to Yale to Plaintiff for the protection, sale and management of the collateral and claims (hereinafter "Steadfast Parties")."[26]  But then on April 4, 2022, these same "Steadfast Parties" are filing in state courts for the same relief that Plaintiff is seeking in this case. This is forum shopping at an extreme.  Either there is such an assignment making the "Steadfast Parties" request for the same relief in state court frivolous or there has not been an assignment and this Court lacks subject-matter jurisdiction to adjudicate any of Plaintiff's claims.

49.     When a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes, along with the discretion to devise a

---

[26]   Footnote 1 of Document 1.

method for making a determination with regard to the jurisdictional issue.[27] The court's authority to consider evidence presented beyond the pleadings allows it to devise a procedure which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing.[28] If the court chooses to allow additional discovery, it should be limited to only that which is necessary to determine the preliminary jurisdictional issue. *Id.*

50.    Movant request the Court consider the pleadings, the lack of compliance by "Plaintiff" or its counsel to the Court's March 30, 2022 order to produce documents evidencing incorporation of Steadfast 829 Holdings, Inc. in New Mexico as of March 20, 2022 and assignment documents that evidence the ownership of claims and causes of action formerly owned by those in Footnote 1 of Document 1 identified as the "Steadfast Parties" and dismiss this lawsuit for lack of subject-matter jurisdiction.

51.    If there is no valid assignment of the "Steadfast Parties'" RICO claims, then this Court lacks federal jurisdiction.  If there is no New Mexico corporation, then there is no diversity because it is admitted in Footnote 1 of Document 1 that the "Steadfast Parties" are from numerous states.   Plaintiff

---

[27]  *Land v. Dollar,* 330 U.S. 731, 735 and n. 4, 67 S.Ct. 1009, 1011 and n. 4, 91 L.Ed. 1209 (1947); see also *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).
[28]  *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir. 1988).

provides evidence that some of "Steadfast Parties" are citizens of Texas destroying diversity.[29]  Finally, in the absence of a valid assignment of state law claims as of March 20, 2022 to "Plaintiff, Steadfast 829 Holdings, Inc.", then Plaintiff lacks standing to bring any claims against any of the named Defendants.  As such, this Court lacks subject matter jurisdiction.

### III. MOTION TO DISMISS UNDER RULE 8 AND RULE 9(B)

52.    In order to avoid dismissal for failure to state a claim, "a plaintiff must plead specific facts, not mere conclusory allegations...."[30]  "Conclusory allegations and unwarranted deductions of fact are not admitted as true" by a motion to dismiss.[31]  A complaint may fail under Federal Rules of Civil Procedure Rule 8(a) in the following two ways: (1) where the complaint fails to "provide notice of the circumstances which give rise to the claim"; or (2) where the complaint fails "to set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." [32]

---

[29]  Plaintiff attached the affidavit of Carl Sherrin to Document 1. Mr. Sherrin swears his address is 1025 Scarlett Drive, Lucas, Texas. See Document 1 page 26.  On page 7-8, of Document 1, Plaintiff identifies 36 of the 37 parties that are Texas companies or residents of Texas.
[30]  *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989).
[31]  *Associated Builders, Inc. v. Alabama Power Company,* 505 F.2d 97, 100 (5th Cir.1974).

[32]  *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.,* 173 F.3d 946, 950 (5th Cir.1999).

53.    In this case, Plaintiff's Complaint is based almost solely on conclusory allegations.  The Complaint lacks any facts as to causation to any harm suffered by Plaintiff as a result of anything Movant did or did not do.

## IV.  HEIGHTENED STANDARD FOR FRAUD CLAIMS

54.    The Fifth Circuit has been clear that in this circuit, "[i]t is well settled that fraud must be pleaded with particularity." [33] Fed.R.Civ.P. 9(b) requires that when Plaintiff plead fraud, its pleading must include details of the time, place, contents, and nature of activities that form the basis of the fraudulent conduct, and the plaintiff must identify what was obtained through the fraud.[34]

55.    As the Fifth Circuit has noted, the purpose of the heightened pleading standard of Rule 9(b) is to provide defendants with fair notice of the plaintiff's claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent a plaintiff from filing baseless claims in an attempt to discover unknown wrongs.[35]

56.    Plaintiff and its attorneys have filed this lawsuit and included such a false narrative to damage the reputation and goodwill of people it knows have nothing to do with its dispute over the property at issue.  They did this just to

---

[33] *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 877 n. 24 (5th Cir.1984)
[34] *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992).
[35] *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1067 (5th Cir. 1994).

punish as many individuals who were somehow crossing their path. Then they filed this same false narrative in numerous courts for its salacious nature. As to Movant, it is an absolutely false narrative and it warrants sanctions and an award of attorney's fees.

57.    To demonstrate just how baseless this fourth or fifth lawsuit is, this Court should order Plaintiff to complete a RICO Case Statement and order Plaintiff to identify each fact that establishes each cause of action attributable to Movant. Movant asserts it is impossible for Plaintiff to establish a single fact as to quantum meruit, conversion, theft of property, fraudulent transfer, tortious interference with business or any of the other state law claims that Plaintiff has sued Movant for in its lawsuit. For each claim that Plaintiff cannot plead sufficient facts to establish liability and damages caused by Movant, then Plaintiff and its counsel should be sanctioned.

58.    In *Rubens,* there were allegations that a prior court decree had been obtained with "gross misrepresentation and deceit." The Fifth Circuit stated that the "categorical assertion of fraud," amounting only to a conclusion, was wholly insufficient under Fed.R.Civ.P. 9(b).[36]

---

[36] *Rubens v. Ellis,* 202 F.2d 415 (5th Cir.1953).

59.    The purposes of Rule 9(b) are threefold: (1) to ensure that the plaintiff has investigated and reasonably believes a fraud has occurred; (2) to provide adequate notice to defendants so that they can respond to the plaintiff's claims; and (3) to protect the reputation of defendants.[37] An additional purpose of Fed.R.Civ.P. 9(b) is to preclude litigants from filing baseless complaints and then "attempting to discover unknown wrongs."[38] All of these reasons are applicable to the case filed against Movant.

60.    Plaintiff's Complaint's assertions of fraud are wholly insufficient. In order to satisfy the requirements of Fed.R.Civ.P. 9(b), Plaintiff must allege the "time, place and contents of the false representations [or omissions], as well as the identity of the person making the misrepresentations [or omissions] and what was obtained or given up thereby."[39]

61.    To meet the requirements for satisfactory particularity under Rule 9(b) the plaintiffs must specify: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the

---

[37]    *Kronfeld v. First Jersey National Bank,* 638 F.Supp. 1454, 1463 (D.N.J.1986).
[38]    *D & G Enterprises v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 574 F.Supp. 263, 266 (N.D.Ill.1983); *Bruss v. Allnet Communications Services, Inc.,* 606 F.Supp. 401, 405 (N.D.Ill.1985).
[39]    *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *aff'd in relevant part en banc,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983);

case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."[40]

62.    Plaintiff is required by Rule 9(b) to specifically allege facts to show the fraudulent intent, acts and omissions of each defendant, as well as an explanation of the duty owed by each defendant to each plaintiff.[41] Rule 9(b) requires, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud.[42]  The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[43]

63.    Plaintiff must provide: (1) the senders; (2) the recipients; (3) the form of communication; (4) the content of the communication; and (5) an explanation as to how each communication was fraudulent.  A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where

---

[40]  *Elster v. Alexander,* 75 F.R.D. 458, 461 (N.D.Ga.1977); *Mechigian v. Art Capital Corp.,* 612 F.Supp. 1421, 1429 (S.D.N.Y.1985); *McKee v. Pope Ballard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 930 (N.D.Ill.1985).
[41]  *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979).
[42]  *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)
[43]  *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)

the statements were made, and explain why the statements were fraudulent."[44] These allegations establish the "who, what, when, where, and how" of each communication, which both "ensure[s] that the Defendants have notice of the precise act[s and] conduct that is being questioned as fraudulent," [45] and "make the predicate acts alleged by Plaintiff[s] plausible.[46]

64.    Plaintiff has not alleged any facts in its Complaint to show that Movant made any false statements to Plaintiff or that Movant intended to defraud Plaintiff or owed him a duty. In fact, the Complaint lists allegations against the "defendants" and the "defendants and others." In this respect, the Fifth Circuit has held that "general allegations, which do not state with particularity what representations each defendant made, do not meet this [particularity] requirement."

65.    Plaintiff has failed to allege in both his Complaint the "who, what, when, and how" particularity required by Rule 9(b). Thus, Plaintiff request the Court dismiss Plaintiff's pendent state law fraud claims.

## VI. Necessity to RePlead RICO and Motion to Compel RICO Case Statement ("Rule 9 (b) Motion")

---

[44] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009)

[45] *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 365 (S.D. Tex. 2009).

[46] *Benhamou*, 190 F. Supp. 3d at 660; *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 693 (S.D. Tex. 2009))

66.    A RICO claim is a fraud claim and must comply with the heightened pleading requirements of Rule 9(b).    Plaintiff's pleadings are insufficient as a matter of law to survive a motion to dismiss.    If the Court does not dismiss Plaintiff's Complaint for its facial deficiencies, Movant request the Court order Plaintiff to file a RICO Case Statement.

67.    In some districts, the RICO Case Statement is required by the local rules such as in the Northern District of Texas.  In the Southern District, it is at the discretion of the Court.[47]    Such RICO Case Statements are upheld by the Fifth Circuit in part as complying with a lawyer's duty under Rule 11.[48]

68.    Plaintiff's RICO pleading is totally devoid of the necessary fact pleading requirements.    In addition to the lack of factual pleading required generally of a fraud claim, "[t]he US Supreme Court requires plaintiffs to establish both **but for cause and proximate cause** in order to show injury 'by reason of' a RICO violation."[49]

---

[47] *Porter v. Shearson Lehman Bros. Inc.,* 802 F. Supp. 41, 52 (S.D. Tex. 1992)

[48] In the Fifth Circuit, Plaintiff was required to submit with any RICO complaint a "RICO Case Statement" that sets forth in specific detail the supporting facts and legal bases of their claims. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992); *Porter v. Shearson Lehman Bros. Inc.*, 802 F. Supp. 41, 52 (S.D. Tex. 1992); *Household Bank FSB v. Metro Assoc.,* No. 92-CV-0355, 1992 WL 350239 (E.D. La. July 1, 1992); *Jae-Soo Yang Kim v. Pereira Enters., Inc.,* 694 F. Supp. 200, 202 (E.D. La. 1988), judgment aff'd, 873 F.2d 295 (5th Cir. 1989) (unpublished table decision); Marriott Bros. v. Gage, 717 F. Supp. 458, 460 (N.D. Tex. 1989), judgment aff'd, 911 F.2d 1105 (5th Cir. 1990).

[49] *Anza v. Ideal    Steel Supply Corp.*, 547 U.S. 451, 461, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006).

69.    To have standing under the statute, a plaintiff must (1) suffer injury to business or property (2) caused by a substantive RICO violation.[50] "Proximate cause …requires 'some direct relation between the injury asserted and the injurious conduct alleged.'  "When a court evaluates a RICO claim for proximate cause, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  To satisfy the causation element of RICO, Plaintiff has the burden of establishing that any alleged "crime" was the but for cause and proximate cause of his injury.[51]

70.    RICO injury occurs when a person's "business or property" is injured.[52] An injury "must be 'conclusive' and cannot be 'speculative.'" [53] "Injury to mere expectancy interests or to an 'intangible property interest' " is also insufficient to qualify as an injury for RICO purposes.[54]   A plaintiff must demonstrate RICO injury through a "concrete financial loss."[55]

71.    Suffering injury to one's business or property is only half of the RICO-standing equation. That injury must also occur "by reason of a violation

[50]   *Earl v. Boeing Co.*, 339 F.R.D. 391, 427 (E.D. Tex. 2021); *Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992); 18 U.S.C. § 1964(c).
[51]   *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).
[52]   *Earl*, 339 F.R.D. at 427; 18 U.S.C. § 1964(c).
[53]   *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir. 2015); *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995))).
[54]   *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998);
[55]   *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003); *United States v. Hager*, 879 F.3d 550, 554 (5th Cir. 2018)).

of section 1962."[56] This statutory language signifies that a defendant's substantive

RICO violation must be "a 'but for' ... [and] proximate cause" of the alleged

injury.[57] "Whether the predicate acts proximately caused the alleged injuries is the

'crux of the analysis' for civil RICO standing."[58] Proximate cause requires some

direct relation between the injury asserted and the injurious conduct alleged. [59]

"When a court evaluates a RICO claim for proximate causation, the central

question it must ask is whether the alleged violation led directly to the plaintiff's

injuries." [60] "If some other conduct directly caused the harm, the plaintiff cannot

sustain a RICO claim."[61]  To establish a pattern of racketeering activity, "a plaintiff

must show both a relationship between the predicate offenses—here mail fraud and

wire fraud—and the threat of continuing activity." [62]

72.    "[T]o prove a pattern of racketeering activity, a plaintiff ... must show

that the racketeering predicates are related, and that they amount to or pose a threat

of continued criminal activity."[63]

---

[56]  18 U.S.C. § 1964(c)).
[57]  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *McCampbell v. KPMG Peat Marwick*, No. 3:96-CV-3136, 1997 WL 311521, at *2 (N.D. Tex. May 30, 1997)
[58]   *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).
[59]  *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958 (5th Cir. 2019); *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc).
[60]  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).
[61]  *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020).
[62]   *Harris County*, 2020 WL 5803483, at *9 (quoting *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).
[63]  *Id.* (quoting *H.J., Inc.*, 492 U.S. at 239).

30

73.     Because RICO is predicated on criminal conduct,[64] Plaintiff must plead and establish that each defendant intended to engage in the conduct with actual knowledge of the illegal activities. For example, mail and wire fraud require an intent to defraud.  Plaintiff failed to plead facts to establish this element. [65]

74.     Plaintiff has alleged mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) as predicate acts.  However, Plaintiff has not met the particularity requirements of Fed. R. Civ. P. 9(b) by properly alleging the time, place, content of the fraudulent communications, and the identity of the parties to the communications.  Plaintiff has not alleged or pled facts establishing that any defendant committed the alleged predicate acts willfully or with actual knowledge of the illegal activities.

75.     Plaintiff has not pled facts as to how its injury was proximately caused by the alleged racketeering activity.  By not complying with the requirements of

---

[64]  *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328, (7th Cir. 1994) (affirming dismissal of complaint for failure to plead sufficient facts to give rise to an inference that the defendants engaged in a mail and wire fraud scheme with fraudulent intent); *Friedlob v. Trustees of Alpine Mut. Fund Trust*, 905 F. Supp. 843, 858-59 (D. Colo. 1995) (plaintiffs must allege facts sufficient to show that defendants committed predicate acts willfully or with actual knowledge of the illegal activities).

[65]  *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127 (S.D.N.Y. 1999) (dismissing RICO claims because the complaint failed to allege facts giving rise to a strong inference of fraudulent intent).

Rule 9, Plaintiff failed to plead facts to establish that Plaintiff relied upon any misrepresentations made by any defendant within the last four years.[66]

76.    Plaintiff has failed to plead facts that the predicate acts are related and continuous.  Plaintiff has failed to plead facts establishing the alleged that the predicate acts are related by having the same or similar purposes, results, participants, victims, methods of commission or are otherwise interrelated by distinguishing characteristics.

77.    Plaintiff has failed to plead facts that the predicate acts are continuous by alleging a closed-ended scheme, consisting of a series of related acts extending over a substantial period of time, or an open-ended scheme. To the extent the Plaintiff is alleging an open-ended scheme, Plaintiff has failed to plead facts that establish a threat of continuity through the duration of the alleged misconduct or the threat of continuing criminal conduct.  All of Plaintiff's complaints regard a single piece of property and a single transaction related to that same property. Plaintiff cannot plead said facts in regards to this single piece of property litigation.

78.    Plaintiff failed to plead facts that it's allegation of racketeering activity affects an enterprise involved in interstate commerce.  Plaintiff did not

---

[66]    *Cannon Realty, LLC v. Ziss,* No. 02-CV-6683, 2005 WL 289752, at *5–9 (S.D.N.Y. Feb. 8, 2005) (dismissing RICO claims where plaintiff failed to allege that each defendant made misrepresentations upon which he relied).

plead facts showing its alleged Yale Criminal Enterprise is directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce.  Again, Plaintiff's entire complaint is about a single piece of real property located at 829 Yale.  Nothing about that is the production, distribution, or acquisition of goods and services in interstate commerce. The Plaintiff has improperly alleged an enterprise consisting of a corporation and its officers or agents. Plaintiff failed to plead facts to establish any defendant even qualifies as a culpable person.

79.    Plaintiff has not plead any facts properly alleging factual and proximate cause.  (1) Plaintiff failed to plead facts that establish that but for the conduct constituting the violation it would not have been injured and (2) Plaintiff failed to pled sufficient facts to meet the proximate cause requirement, considering the foreseeability of the injury, the existence of any intervening causes, and the directness of the causal connection.

80.    Plaintiff's alleged injury is too indirect or derivative to confer standing. Plaintiff has alleged mail and wire fraud but failed to plead the misrepresentations that Plaintiff alleged caused its detrimental reliance on the alleged misrepresentations by someone.  Plaintiff did not plead it was deceived by the fraud scheme or plead facts to show causation.

81.     Plaintiff has failed to plead any of these required facts. Plaintiff fails to establish any causation as to any harm caused by any act alleged as to Movant.

## V. MOTION FOR MORE DEFINITE STATEMENT UNDER 12(B)(E)

82.     Plaintiff, if it exists, and Mr. Ramey have tried to, "artfully," plead everything but what is required to establish any legitimate claim.  By trying to use impermissible "group pleading" or generalities by using a term such as "Yale Criminal Enterprise," or "Enterprise" or "Criminal Enterprise", and by violating Federal Rule 9(b) which requires fraud allegations to be pled with particularity by identifying the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby."   Mr. Ramey intentionally hides behind such "artful" dodging and repetition that it makes his pleading almost impossible to understand.

83.     This court has rejected the group pleading doctrine.[67] The Federal Rules of Civil Procedure 8 and 9 requires a plaintiff to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud.

---

[67] *Southland,* 365 F.3d at 365.

84.    Plaintiff repeatedly uses general terms like "Defendants" and "Yale Criminal Enterprise." The Fifth Circuit has held that such generalized allegations that are not tied to a particular defendant are improper.[68]

85.    Plaintiff cannot "distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud" as required by Rule 9(b) because they never had the facts to back up their allegations.

86.    Plaintiff has also pled numerous claims without any supporting facts as to how they could ever apply to Movant. For instance, Plaintiff simply recited the elements of a conversion, fraud, fraudulent transfer, statutory fraud and fraud in the inducement claim without pleading a single fact to support such claims. Plaintiff did the same by pleading a tortious interference with a contract and prospective business relations claim and a quantum meruit claim an a malicious civil prosecution claim.

87.    It is impossible for Plaintiff to plead the facts of a quantum meruit claim against Movant. It requires facts to establish (1) Plaintiff provided valuable services, (2) the services were provided for the Defendants, (3) the Defendants accepted the services, and (4) the Defendants had reasonable notice that the Plaintiff expected compensation for the services. Likewise, it is impossible for

---

[68] *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 287 (5th Cir.2006).

Plaintiff to establish a malicious civil prosecution claim against Movant which requires fact that Plaintiff has been injured by a wrongful TRO and injunction and the continuation of prosecution of a wrongful suits by Movant. Movant never sued Plaintiff and never sought any TRO or injunction against Plaintiff. Movant never prosecuted without probable cause an action or continued without good cause any action and never caused Plaintiff's damages as a result of any such action.

88.    Plaintiff cannot plead any facts "Defendants hold money which in equity and good conscience belongs to Plaintiff and seeks to recover that money in this suit."

89.    Plaintiff cannot plead any facts that Movant "conveyed the collateral for Defendants' loan and Deed of Trust numerous times."

90.    Plaintiff cannot plead any facts to establish that Movant "filed in Harris County, Texas, fraudulent court documents, a fraudulent lien release, numerous fraudulent deeds and *lis pendens*, and/or a fraudulent claim against real property situated in Harris County, Texas, with the intent that the documents or other records fraudulently signed would be relied upon to evidence a valid claim against real property by Defendants and with the intent to cause Plaintiff to suffer physical injury, financial injury, mental anguish, and emotional distress." Movant has never filed any documents in Harris County.

91.     Plaintiff cannot plead any facts to support a claim for violation of the Texas Theft Act, T.C.P.A. 134.001.  The Complaint alleges that "All members of the Yale Criminal Enterprise took cash, claims, and wrongful interests in title to Steadfast's collateral without Steadfast's knowledge or effective consent, misappropriating Plaintiff's property."

92.     Each claim or cause of action alleged in the Complaint is deficient as described above.   Having pled these same claims in numerous prior lawsuits, one would expect Mr. Ramey to have at least some facts to establish each element of each cause of action.

93.     These pleadings are deficient as a matter of federal pleading rules. Plaintiff failed to comply with Rules 8(a), 8(d)(1), 9(b), and 10(b).  As such, the lawsuit should be dismissed.

94.     Plaintiff failed to state a plausible claim for a RICO conspiracy against Movant because Plaintiff does not set forth with sufficient particularity any predicate acts allegedly committed.

95.     Plaintiff's allegations regarding the "use of mail or wires" are too vague to satisfy the federal pleading standards. Plaintiff's Complaint does not set forth any specific facts as to when and how Defendants used the mail or wires to

further their alleged conspiracy.[69]

96.    Plaintiff further failed to make any specific allegations that Defendants agreed to commit an illegal act.[70]

97.    Having been made aware of these pleading defects as of April 8, 2022, Plaintiff had sufficient time to replead and correct these intentionally defective pleadings.  Instead, Mr. Ramey wrote a letter on April 28, 2022 rejecting any necessity of re-pleading.  In light of Plaintiff's refusal to re-plead, Plaintiff has waived the right to request an opportunity to re-plead and as such the Court should dismiss the Complaint with prejudice as not stating any cognizable claims.

98.    None of even the conclusory facts and opinions pled in the Complaints relates in any way to Movant.  Such conclusory pleading is only a way to hide behind the lack of any facts to support any of these claims.  If the Court does not dismiss the Complaint, then Plaintiff should be required to replead with specify the facts establishing Movant's liability for each claims asserted.

---

[69]    *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992) (holding that, to properly plead RICO mail fraud under Fed. R. Civ. P. 9(b), a plaintiff must allege time, place, contents and the identity of the maker of the false representation); *Oblio Telecom, Inc. v. Patel,* 2009 WL 1650481, at *5 (N.D. Tex. June 10, 2009) (dismissing plaintiff's RICO claim where the plaintiff failed to plead specific facts that the defendants used the mails or wires to execute their scheme, the dates of the communications, or the content of the communications)

[70]    Simmons, 2017 WL 3051484, *6 (citing *Tebo v. Tebo,* 550 F.3d 492, 496 (5th Cir. 2008) (holding that a conspiracy claim under § 1983 must allege specific facts to show agreement)).

## VI. STATUTE OF LIMITATIONS BARS ALL CLAIMS

99.    The litigation over this one piece of property at 829 Yale St. has been going on for more than four years.  As such, Plaintiff's predecessors knew of their injuries more than four years ago and thus the statute of limitations precludes this lawsuit in its entirety.

100.    Plaintiff pled the following state claims which all have a two-year statute of limitations.

**a) CONVERSION**
No specific facts pled about Movant.

**b) QUANTUM MERUIT**
No specific facts pled about Movant.

**c) MALICIOUS CIVIL PROSECUTION**
No specific facts pled about Movant.

**d) MONEY HAD AND RECEIVED**
No specific facts pled about Movant .

**e) VIOLATION OF THE TEXAS THEFT LIABILITY ACT, T.C.P.A. 134.001 ET SEQ.**
No specific facts pled about Movant – attorney's fees required to be paid by Plaintiff.

**f) TEXAS CIVIL PRACTICE & REMEDIES CODE § 12.002**
No specific facts pled about Movant.

**g) TORTIOUS INTERFERENCE WITH A CONTRACT AND PROSPECTIVE BUSINESS RELATIONS**
No specific facts pled about Movant.

39

101.   Plaintiff did not identify any facts that would support a claim for any of these causes of action against Movant in that did not occur more than two years before this suit was filed.   As such, all of such claims are barred by statute of limitations.

## VII. THE FOUR-YEAR STATUTE OF LIMITATIONS BARS THE REST OF PLAINTIFF'S CLAIMS

102.   Plaintiff pled the following claims which have a four-year statute of limitations:

      **a) RICO**
         No specific facts pled about Movant.

      **b) FRAUDULENT TRANSFER**
         No specific facts pled about Movant.

      **c) FRAUD, FRAUDULENT TRANSFER, STATUTORY FRAUD, AND FRAUD IN THE INDUCEMENT**
         No specific facts pled about Movant.

103.   Plaintiff knows the claims are time barred because Plaintiff even put in footnote 68 of its Original Complaint the following:

      FN 68. Even if the four-year limitations periods for all causes of action were not obviously tolled by deliberate fraud, spoliation of evidence, and discovery abuse, a plaintiff may sue for any injury he discovers or should have discovered within four years

of the commencement of his suit, regardless when the RICO violation causing such injury occurred.

Plaintiff's predecessors according to the time-line sworn to by Plaintiff's President and attached to the Plaintiff's Original Complaint knew of their injury in 2016 and 2017. As such, all of Plaintiff's RICO claims are barred by the four-year statute of limitations. In addition, Plaintiff's predecessors have filed numerous lawsuits seeking recovery of these same injuries and as such, Plaintiff's predecessors knew of their injury more than four years before March 20, 2022.

104. As Plaintiff states in its Complaint, it's predecessors discovered their injury in 2016 or at least by 2017 according to the facts and timeline pled in its Complaint. As such, Plaintiff discovered its injury more than four years before filing this lawsuit.

105. For instance, Plaintiff states these allegations:

9/19/16     Brad Parker and his wife Margaret Naeve Parker, and her business, M.Naeve Antiques, LLC, now forfeited by the Secretary of State, secretly joined the Yale Criminal Enterprise, taking a flat $40,000 fee for 'consulting' at 2017 Yale. This was never disclosed to Steadfast, nor was this agreement or the email circulating it produced in response to discovery, or in depositions. Exhibit 4a22b, 4a22b DOC 475.

01/09/17    Steadfast Parties discover Jetall's secret deed during a title check arising from   Fisher's efforts to swindle another loan out of Steadfast.  The lenders work together to deal with the

41

defaults. Fisher abandoned work, fails to pay the loans, and fails to pay his contractors, resulting in M&M liens against the collateral at 829 Yale, another default. Exhibit 170.

08/01/17    The unmodified Alvarez Second Lien matures without payment by the Enterprise borrowers, Exhibit 2, and 2017 Yale commences committing numerous other defaults on both loans. Choudhri and Kelley secretly begin looking at Yale as Choudhri's payment for Kelley's past due legal fees for defrauding Choudhri's wife in her divorce case. Parker remains both of their fraudulent "front-man" for the Enterprise. Exhibit A, B(A-C), *infra*.

2017 Yale starts secretly stealing Steadfast's loaned funds and wrongfully pays Fisher/Jetall entities almost $400k, instead of using the loan money to pay their legitimate contractors as required by the Loan Documents, in secret anticipation of defaulting on the note payment and dumping the company on Kelley. They start "floating" contractors' payments to keep them working, to swindle more loan draws, without actually paying the contractors for the work. The unpaid M&M Liens for unpaid invoices from June 2017 forward and walk off the job (both are defaults excusing further performance by the Lenders). Steadfast later learns that Cityscape Rentals, Assurance Home Warranty are also Fisher companies, and KAVAC was also secretly getting fraudulently transferred funds out of 2017 Yale in violation of the Loan Documents. Exhibit 14, 15, 53, 55, 92, 160.

In addition to the $261,567.90 of the Closing Funds stolen by the Enterprise, and the money they stole out of 2016 draws instead of paying their construction contractors, Steadfast was fraudulently induced to advance another $511,824.21 in construction loan funds to 2017 Yale on the fraudulently induced loan renewal during this period.

2017 Yale wrongfully sent $206,596.46 of that money to Cityscape Rentals, an undisclosed front for Terry Fisher, run by

42

> Allen Fisher, in violation of the loan (Exhibit 11a-e), but in
> furtherance of their MOU to defraud Steadfast (Exhibit 4). Exhibit 55.
> 2017 Yale similarly sent $140,761.56 to Fisher's other company,
> KAVAC, LLC. 2017 Yale sent $49,240.58 to Jetall.

106.   Plaintiff admits that as of September 2016 Plaintiff knew it had an injury.  That is almost 6 years ago.  Again, Plaintiff has pled facts that its injury is as of August 2017.  That is more than four years from March 20, 2022.  As such, Plaintiff's claims are barred by statute of limitations. Plaintiff pled in paragraph 156 that the "predicate acts" of the enterprise extend from 2016.  In document 21, Plaintiff pled that "the Yale Criminal Enterprise formed in September of 2016."[71] Plaintiff supplied affidavit of its President, Carl Sherrin that lays out a time-line that establishes Plaintiff knew, or should have known, that it suffered an injury in 2016 and 2017.  The fact that Plaintiff's predecessors filed suit in the 190th District Court on April 3, 2018 for injuries its predecessors sustained going back to 2016 is absolute proof that Plaintiff knew, or should have known, of its injury in 2017 and even 2016.  As such, Plaintiff's suit is barred by the doctrine of statute of limitations.

107. Mr. Ramey made allegations in January 2019 that 2017 Yale Development, LLC, Ali Choudhri and Brad Parker, some of the named Defendants in this case, "had run off with the money."  This accusation necessitated a

---

[71] Doc. 21, page 5.

deposition on January 23, 2019 of Mr. Sherrin, who was asked under oath about Mr. Ramey's accusation that the "borrower had run off with the money." So as of January 23, 2019, these same Steadfast Parties were aware of their injury that they claimed happened in 2016 and 2017. As such, the statute of limitations has run on any such claims under RICO or any other claim asserted by Plaintiff.

## XI. ISSUE AND CLAIM PRECLUSION/ RES JUDICATA

108. Finally, although Movant was not a part to any lawsuit until the present lawsuit, Movant is aware of the numerous lawsuits involving Plaintiff's predecessors and many of the individuals Plaintiff is now trying to sue again. To the extent that Plaintiff's predecessors have brough these claims in another case that has been adjudicated, then Plaintiff's claims are barred by claim and issue preclusion. The most glaring example is that Plaintiff pled many of its fraud and fraudulent transfer claims in the Federal District Court case, Galveston Division cause number 3:19-cv-00249. All of those claims were dismissed by the trial court with prejudice in the final judgment dated April 16, 2020. Neither Plaintiff nor their predecessors ever filed a Rule 60(b) motion for relief from any of the judgments so far rendered.

109. Plaintiff claims as to the federal case filed under in this the Southern District of Texas case number 03-19-CV-00249, that the Galveston Court has

"adjudicated that Steadfast's lien was superior. ***See* Federal Judgment <u>quieting</u> <u>title</u> in Steadfast, Exhibit 88, 89."**

110.    If that is true, Plaintiff does not explain then why it needs this suit or why it would ever need a Rule 60(b) motion.  Plaintiff's pleadings are a mass of contradictory claims and assertions of fact.

111.    A transcript of the January 31, 2022 Fifth Circuit oral argument contains a discussion by the Justices and Mr. Ramey about pursuing a Rule 60(b) motion in the Galveston case if they believed there were grounds to vacate the judgment below.  However, the fact that the Plaintiff's predecessor did not appeal the Galveston judgment, the fact that they drafted and submitted and requested the Galveston final judgment over the objection of the Plaintiff in that case, and the fact that they defended that judgment in the Fifth Circuit makes it difficult to comprehend why Plaintiff put in this reference to a Rule 60(b) motion in its recent pleading.  What federal judgment or order or proceeding does Plaintiff believe needs relief from especially when Mr. Ramey is asserting to courts and the public that the Galveston federal district court quieted title in the Steadfast Parties?

112.    Plaintiff's predecessor has filed numerous claims in at least four other lawsuits that mirror the claims they assert herein. Mr. Ramey filed on behalf of the "Steadfast Parties" the following cases:

a) **Suit One:** On April 3, 2019 Mr. Ramey filed an original lawsuit on behalf of the "Steadfast Parties" in the 125th District Court in cause number **2019-23950** with similar claims of fraud, breach of contract, quantum meruit etc. against some of the same parties in this case related to the same property at 829 Yale.

    **Result:** Lawsuit dismissed with prejudice on June 25, 2019.

    **Appeal**: Mr. Ramey on behalf of the Steadfast Parties appealed dismissal to the First Court of Appeals under cause number **01-19-00555-CV**.

    **Disposition:** Appeal Pending.

b) **Suit Two**: On April 4, 2019, Mr. Ramey filed identical counter-claims for the Steadfast Parties against some of the same Defendants in the 190th District Court in cause number **2016-64847** for fraud, breach of contract, quantum meruit etc. against some of the same parties in this case related to the same property at 829 Yale.

    **Result**: Final Judgment on October 22, 2019 in favor of Steadfast Parties against D&A Alvarez Group, LLC and 2017 Yale Development, LLC for breach of contract only. All other claims including fraudulent transfer, fraud, conversion were dismissed with prejudice.

    **Disposition:** Appeal by 2017 Yale Development, LLC to First Court under cause number 01-20-000027-CV pending. No other party appealed that judgment.

c) **Suit Three**: On July 26, 2019, Mr. Ramey filed yet another identical lawsuit with claims against the same parties in the 125th District Court in 2019-51432 alleging fraud, breach of contract, quantum meruit etc. against some of the same parties in this case related to the same property at 829 Yale.

    **Result:** Final Judgment against Steadfast Parties dismissing with prejudice all claims

**Appeal**: No party appealed the Final Judgment.

d) **Suit Four**: On August 26, 2019, Mr. Ramey again filed the identical lawsuit against the same parties in the 125th District Court in **2019-59191** alleging fraud, breach of contract, quantum meruit etc.  against some of the same parties in this case related to the same property at 829 Yale.

**Result:** Final Judgment against Steadfast Parties dismissing with prejudice all claims on November 13, 2019.

**Appeal**:  No party appealed the Final Judgment.

e) **Suit Five**:  The Steadfast Parties filed counter-claims in the Galveston case brought by Nicholas Fugedi, as trustee of the CARB Pura Vida Trust.  That case was filed as trespass to try title case against the "Steadfast Parties" and others in cause number 3:19-CV-00249 in the United States District Court, Southern District, Galveston Division (hereinafter "Galveston Case").  Mr. Ramey on behalf of the Steadfast Parties files alleging the same counter-claims and identifying many of the same parties as named as Defendants herein.[72]

**Result:** Magistrate entered Final Judgment on April 16, 2020 which held that Nicholas Fugedi, as trustee of the CARB Pura Vida Trust does not exist and therefore his title to the Property is void and his correction deeds are void. The Final Judgment did not quiet title in the Steadfast Parties and remaining claims by the Steadfast Parties were dismissed with prejudice.

**Appeal:**  Nicholas Fugedi, as trustee of the CARB Pura Vida Trust, appealed to the Fifth Circuit under cause number 21-40365.  The Steadfast Parties did not appeal. Oral argument was held on January 31, 2022.

## VIII. ALTERNATIVE MOTION TO STRIKE UNDER 12(B)(F)

---

[72] See Document 4 in cause number 3:19-CV-00249.

113.    Rule 12(f) permits a Court, either on its on motion or on motion of a party to strike from a pleading any "redundant, immaterial, impertinent or scandalous matter."    A review of the 146 page "Plaintiff's Original Verified Complaint…" demonstrates a it is redundant, full of recitation of immaterial, impertinent and scandalous matters pled simply for no other purpose than to embarrass the targeted defendants. Movant request an order compelling Plaintiff to replead and remove the redundant material and to remove the immaterial, impertinent and scandalous matters.  If Plaintiff cannot prove direct causation of the matters pled to specific harm to Plaintiff, then Plaintiff should be ordered to remove said factual assertions.

114.    The most glaring question, which was asked by the Court at the hearing on March 30, 2022 was in essence, why did Plaintiff file this new lawsuit? It obviously smacks of impermissible forum shopping.  That question becomes even more critical when Plaintiff claims as to the federal case filed under in this the Southern District of Texas under case number 03-19-CV-00249 that this Court has "adjudicated that Steadfast's lien was superior. ***See* Federal Judgment <u>quieting title</u> in Steadfast, Exhibit 88, 89."**  That statement is a false. If that statement were true, then there shouldn't have been any hesitancy in returning to the Southern District Case under the 03-19-CV-00249 case number.  But the fact is

undeniable, a simple review of the final judgment proves, that the federal district court did not "quiet title in Steadfast," Plaintiff or any of the predecessors to Plaintiff. Just as many of Mr. Ramey's statements made in the lawsuit are false, this key fact is false.

115. Plaintiff's counsel, Mr. Chris Ramey and Scott Britenwisher, requested this Court hold an ex-parte hearing and grant them injunctive relief. From the transcript of the hearing in this case held on March 30, 2022, the Court noted that,

> "…it's really, your're saying: 'We're not happy with the state courts, so we're trying to get some federal relief.' So you throw in this RICO claim to get federal jurisdiction… But it seems to me that this is so tied up with all this state court litigation that it's troubling to me, for a federal court, to start telling the state court all these things that happened, were wrong and fraudulent and frivolous litigation, you keep saying."

116. The Court then asked Mr. Ramey, "Why isn't that the place for the state courts to decide all this?"

117. Mr. Ramey never had a logical response. Plaintiff's counsel, Mr. Ramey, admitted he pled a dubious claim when he stated, "I know RICO has a bad reputation with Courts…" Mr. Ramey admitted he had pled this same claim for relief in state court. The Court asked Mr. Ramey why didn't he ask for receivership in all these other cases? Mr. Ramey replied, "We did ask for receivership in the title- I'm sorry, in the original note case." Mr. Ramey failed to

49

inform the Court all such relief has been repeatedly denied by all other courts. Plaintiff's counsel, Chris Ramey, has a history of forum shopping and his real clients, what he calls "the Steadfast Parties" were actually sanctioned in state court for his abusive forum shopping.

118.   This suit is nothing more than another attempt to circumvent the Fifth Circuit's recent denial of the same request for relief.  After the Fifth Circuit denied the relief the "Steadfast Parties" sought, Mr. Ramey hastily filed this lawsuit and sought ex-parte injunctive relief just like he did in 2019 in state court.  Mr. Ramey created a straw company and filed this lawsuit to have this Court to void *a lis pendens* so that his real clients could sell the property in advance of a Fifth Circuit ruling.  As demonstrated in the case pending in the Fifth Circuit, Mr. Ramey employed his wife as a "broker" and made false statements to potential buyers to try and conduct a hurried three-day distress sale of the property.  When the Fifth Circuit denied their request to expunge the *lis pendens*, Mr. Ramey filed this lawsuit and named a Plaintiff that upon information and belief does not exist.  In addition, there is nothing produced to indicate that any of the "Steadfast Parties" every assigned their interest to the Plaintiff.

## <u>LACK OF PLEADINGS AND AFFIRMATIVE DEFENSES MANDATE DISMISSAL OF THIS SUIT</u>

50

Movant asserts that Plaintiff cannot plead any set of facts to overcome its lack of pleading as to Movant and as to the affirmative defenses describe and discussed *supra,* which specifically include statute of limitations, res judicata, claim preclusion, issue preclusion, and waiver.   As such, Plaintiff need not be given any chance to re-plead and on the pleadings before this Court this case should be dismissed with prejudice as to Movant.

## CONCLUSION

The pleadings identified *supra,* filed by Plaintiff for an improper purpose and contain frivolous arguments and/or arguments that have been conclusory pled if pled at all.   There are no facts pled to support a conversion claim, a quantum meruit claim, a theft claim, fraudulent transfer claim, or a fraud claim against Movant.   There is absolutely no basis to sue Movant to remove the *lis pendens*. Movant did not file it and cannot remove it.   Any other allegation that Movant is part of a "Criminal Enterprise" or took actions in addition to her witness activities are without support and are conclusory. A conclusory allegation of conspiracy is insufficient to overcome the absolute privilege.[73]

After passage of the 21-day safe-harbor period, Movant will shortly be filing a Rule 11 Motion for Sanctions to address this frivolous lawsuit against Movant. In

---

[73]  *Lynch v. Cannatella,* 810 F.2d 1363, 1369–70 (5th Cir.1987) (plaintiffs must plead operative facts; bald allegations of a conspiracy are insufficient).

addition, because Plaintiff sued under the Texas Theft Liability Act, Movant is entitled to attorney's fees for dismissal.

## PRAYER

WHEREFORE, Plaintiff prays that the Court dismiss the suit against Movant herein with prejudice and consider Movant's request for attorney's fees pursuant to the Texas Theft Liability Act and pursuant to the Rule 11 Motion to be filed shortly and for such other and further relief as is just.

DATED: September 7, 2022.

Respectfully submitted,

**JACK J. NICHOLS, P.C.**

By: */s/ Jack J. Nichols*
Jack J. Nichols
State Bar No. 24123945
Email: jack@nicholsrabuck.com 4900
Fournace Place, Suite 509
Bellaire, Texas 77401
Phone: 713.952.2500
Facsimile: 713.513.5089
*Attorney for Movant*

52

**CERTIFICATE OF SERVICE**

I certify that on this 6th day of September, 2022 my office served a true and correct copy of the foregoing instrument in accordance with the Federal Rules of Civil Procedure via the CM/ECF Filing System, which automatically served it through the electronic filing to all counsel of record.

By:/s/        *Jack J. Nichols*
Jack J. Nichols, Attorney for Movant

53

Appendix

## RICO CASE STATEMENT STANDING ORDER

In all cases before this Court in which claims are asserted under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961-1968, a RICO Case Statement, conforming to the requirements of this Order, must accompany the filing of the RICO complaint and will be treated as an extension of the complaint. Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 n.3 (1st Cir. 1991). The Plaintiff shall file a RICO Case Statement within 20 days of the entry of this Order. This Statement shall include the facts that the Plaintiff is relying upon to initiate this RICO complaint as a result of the reasonable inquiry required by Rule 11 of the Federal Rules of Civil Procedure. The RICO Case Statement shall be in a form which uses both the numbers and letters set forth below and shall, in detail and with specificity, provide the following information:

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d). If you allege violations of more than one Section 1962 subsection, treat each as separate RICO claim.

2. List each defendant and state the alleged misconduct and basis of liability of each defendant.

3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

4. List the alleged victims and state how each victim allegedly was injured.

5. Describe in detail the pattern of racketeering activity or collection of an unlawful debt alleged for each RICO claim. A description of the pattern of racketeering activity shall include the following information:

(a) List the alleged predicate acts and the specific statutes allegedly violated;

(b) Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act;

(c) If the RICO claim is based upon the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under U.S.C. Title 11, the "circumstances constituting fraud or mistake shall be stated

with particularity." Fed. R. Civ. P. 9(b). Identify the time, place, and contents of the alleged misrepresentation or omissions, and the identity of persons to whom and by whom the alleged misrepresentations or omissions were made;

(d) Describe whether the alleged predicate acts relate to the enterprise as part of a common plan. If so, describe in detail.

6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information;

(a) State the names of the individuals, partnerships, corporations, associations or other entities allegedly constituting the enterprise;

(b) Describe the structure, purpose, roles, function and course of conduct of the enterprise;

(c) State whether any defendants are employees, officers or directors of the alleged enterprise;

(d) State whether any defendants are associated with the alleged enterprise, and if so, how;

(e) State whether you allege that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;

(f) If you alleged any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7. State whether you allege and describe in detail how the pattern of racketeering activities and the enterprise are separate or have merged into one entity.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering activities.

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

11. If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:

(a) State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and,

(b) Describe the use or investment of such income.

12. If the complaint alleges a violation of 18 U.S.C. Section 1962(b), provide the following information:

(a) Describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise; and,

 (b) State whether the same entity is both the liable "person" and the "enterprise" under Section 1962 (b).

13. If the complaint alleges a violation of 18 U.S.C. Section 1962(c), provide the following information:

(a) State who is employed by or associated with the enterprise;

(b) State whether the same entity is both the liable "person" and the "enterprise" under Section 1962 (c).

14. If the complaint alleges a violation of 18 U.S.C. Section 1962(d), describe in detail the alleged conspiracy.

15. Describe the alleged injury to business or property.

16. Describe the relationship between the alleged injury and violation of the RICO statute.

17. List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.

18. List all other federal causes of action, if any, and provide the relevant statute numbers.

19. List all pendent states claim, if any.