**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Steadfast 829 Holdings, Inc.** | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | 4:22:cv-00905 |
| | § | |
| | § | **JURY** |
| **2017 Yale Development, LLC,** | § | |
| **et al.** | § | |
| Defendants | § | |

**LLOYD KELLEY'S
COUNTER-CLAIM AND THIRD-PARTY CLAIMS**

**TO THE HONORABLE UNITED STATES JUDGE:**

**COMES NOW,** Lloyd Kelley (hereinafter "Kelley" or the "Cross-Plaintiff" or "Third-Party-Plaintiff") files this Counter-claim against "Plaintiff"[1] ("Counter-Defendant") and third-party-claims against Adam Hruby, Wes Stoner, and James T. Smith ("Third-Party-Defendants") and respectfully show the Court the following.

**SUMMARY**

1.      This is an action to enforce the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).

2.      Counter-Defendant and certain Third-Party-Defendants violated the law by: (1) Intentionally intercepting, attempting to intercept, or having someone intercept a wire, oral, or

---

[1] There are at least three "Plaintiffs" identified in this lawsuit.  Kelley intends to sue all three to the extent they have any involvement with the "tapes."

electronic communication; (2) Intentionally disclosing or attempting to disclose to another person the contents of an illegally obtained wire, oral, or electronic communication; and/or (3) Intentionally using or attempting to use the contents of an illegally obtained wire, oral, or electronic communication.

3.      Counter-Defendant and Third-Party-Defendants have been using the tapes forcing Kelley into an impossible position of having to preserve one client's confidence and violating the Bar Rules to bring context to what is nothing more than a fee dispute.  As such, injunctive relief is required.

4.      Certain Third-Party-Defendants also defamed Kelley by making untrue accusations that Kelley engaged in criminal conduct.

### THIRD-PARTY DEFENDANTS

2(A). "Plaintiff", including every company that claims to be the Plaintiff, asserts it is a citizen of New Mexico.

2(B). Lloyd Kelley is a citizen of Texas.

2(C). Third-Party-Defendants' names, residences and address for service of process is set forth below:

1. Adam Hruby is a citizen of New Mexico and may be served at:
   NSA Capo C6F
   U.S. Navy
   Naples, Italy
   or
   967B Mountain Laurel Circle Se
   Albuquerque, New Mexico 87116

2. Wes Stoner is a citizen of Calif. And may be served at:
   17272 Osterville Lane

Huntington Beach, CA 92649
(714) 553-5431
(714) 588-2983
wesstoner@aol.com,
wes.stoner@latinmail.com

3.  James T. Smith is a citizen of Calif. and may be served at:
324 Loma Terrace
Laguna Beach, Calif. 92651
949-294-3964 mobile
949-494-4420
949-494-9850 FAX
**jamestsmith444@gmail.com**

## JURSIDICTION

4.      The Court has jurisdiction as claims in this suit are based upon a federal question; the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521.

5.      This Court has jurisdiction under 28 U.S.C. Section 1332 as the claims are between citizens of different states. Kelley is a citizen of Texas and the "Plaintiff "and Third-Party-Defendants are citizens of states other than Texas.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## STATEMENT OF CLAIM

6.      Kelley represents clients including Jetall Companies, 2017 Yale Development, LLC and Ali Choudhri ("Clients").  A former employee of Choudhri's, Chris Wyatt, stole corporate files including electronic communications and secretly recorded oral phone communications between Kelley and Ali Choudhri.  Defendants through their lawyers Christopher Ramey and Scott Breitenwischer received the illegal recordings of Kelley's conversations with Client and then proceeded to publish them continuously in an attempt to "launder" them.

7.      Prior to Counter-and Third-Party-Defendants' lawyers obtaining a copy of said tapes,

Kelley's Clients had sued Chris Wyatt and a restraining order regarding the confidential company information had been entered.  Upon information and belief Ramey and Britenwischer were aware of said restraining order and were aware that Chris Wyatt was a former employee of Clients and that Chris Wyatt was not a participant on any of the conversations.  Further, said lawyers knew that Clients had denied any consent to record said conversations. Said lawyers knew Kelley was the lawyer for Clients and had engaged in years of litigation with Kelley as the lawyer representing the Choudhri Clients.

8.    It was a violation of federal and state law for Chris Wyatt to record and then disseminate the phone conversations between Kelley and his Clients.  Under state law, the penalty is a felony.

9.    Counter-and- Third-Party-Defendants through their lawyers have repeatedly disclosed or attempted to disclose to other  persons the contents of an illegally obtained wire, oral, or electronic communication.  Such acts violate the federal and state law. The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521 prohibits the intentionally disclosing or attempting to disclose to another person the contents of an illegally obtained wire, oral, or electronic communication.

10.    Such acts are criminal in Texas and Texas provides for civil relief under Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).

11.    Unless Counter-and- Third-Party-Defendants and their agents are restrained, they will continue to violate the law.

12.    Counter-and- Third-Party-Defendants willfully and intentionally interfered with valid contracts between Kelley and David Alvarez and D&A Alvarez Group, LLC (hereinafter

"Alvarez") through their agents Chris Ramey and Scott Breitenwischer.  While Kelley represented

Alvarez, Counter-and- Third-Party-Defendants' agents tortiously interfered with the attorney fee

agreement Kelley had with Alvarez.

13.    Counter-and- Third-Party-Defendants defamed Kelley by direct false accusations

and by innuendo.

## TORTIOUS INTERFERENCE WITH A CONTRACT AND PROSPECTIVE BUSINESS RELATIONS

14.    Kelley re-alleges and by reference incorporate all allegations in the preceding

paragraphs.

15.    Pleading additionally, or in the alternative, to recover for tortious interference with

an existing contract, Kelley had existing contract with Alvarez constituting a valid contract subject

to interference; (2) Counter-and- Third-Party-Defendants committed willful and intentional acts of

interference, including deliberately inducing Alvarez to breach that contract; (3) these acts and

others were the proximate cause of Kelley's damages; and (4) that actual damage or loss occurred.

16.    In the instant case, Counter-and- Third-Party-Defendants willfully and intentionally

interfered with valid contracts between Kelley and David Alvarez and D&A Alvarez Group, LLC

(hereinafter "Alvarez") through their agents Chris Ramey and Scott Breitenwischer.  While Kelley

represented Alvarez, Counter-and- Third-Party-Defendants agents tortiously interfered with the

attorney fee agreement Kelley had with Alvarez.  Counter-and- Third-Party-Defendants caused

Alvarez to breach that agreement and to secretly be directed by Ramey while he employed Kelley.

As a result, Alvarez did not appeal and instead began to take bizzare actions such as begging to be

sued individually for torts or confessing to crimes as alleged by Ramey.  Counter-and- Third-Party-

5

Defendants forced Alvarez to sign a false confession in which Alvarez admits to criminal acts as alleged by Counter-and- Third-Party-Defendants.    Upon information and belief, Counter-and-Third-Party-Defendants through their agents bribed Alvarez's other lawyer, Tim Trickey, who was allowed to take proceeds of money that Counter-and-Cross- Third-Party-Defendants and their agents were denying ever existed.    In return Trickey and Ramey entered into a conspiracy to work behind Kelley's back while Kelley was encouraged to continue working as Alvarez's lawyer. Kelley was falsely induced to continue working with the end goal of Counter-and- Third-Party-Defendants and Alvarez to set Kelley up as a target in which Counter-and- Third-Party-Defendants agreed not to collect on a judgment and forced Alvarez to pursue Kelley on bogus claims.

17.    Counter-and-Cross-Defendants acts through their agents made performance impossible or more burdensome, difficult or expensive, which was the proximate cause of Kelley's actual damages and loss. They also interfered with Kelley's representation of his client who then filed a false confession in federal court.

## DEFAMATION

18.    Kelley re-alleges and by reference incorporate all allegations in the preceding paragraphs.

19.    Third-Party-Defendants published false statements about Kelley (ii) that was defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.

20.    Third-Party-Defendants themselves and through their agents published false statements about Kelley (ii) that was defamatory (iii) while acting with either actual malice, or

negligence, regarding the truth of the statement.

21.     Third-Party-Defendants claimed that Kelley "personally causing 2017 Yale's defaults on Steadfast's loans and everything that has happened since. All claims and defenses of these sham entities in all of these cases were predicated upon this fraud. This conduct is a fraud on all of these Courts,..that Mrs. Fraga, and likely other attorneys, may have wrongfully accepted percentage interests in 2017 Yale or the trust, to induce their work for Kelley in a "fraudulent enterprise."

22.     Third-Party-Defendants accused Kelley of being involved in a "fraudulent enterprise."

23.     Third-Party-Defendants accused Kelley of criminal conduct and of engaging in conduct constituting a felony.

24.     Third-Party-Defendants agent, Chris Ramey, spoke to Wayne Dolcefino and made similar accusations on behalf of Third-Party Defendants  which included aiding Dolcefino's slander-for-hire blogs.

25.     Third-Party-Defendants defamed Kelley by innuendo.   Third-Party-Defendants accused Third-Party-Plaintiff of being a "pretend" lawyer and making false statements to courts.

26.     Third-Party-Defendants accused Kelley of committing fraud by causing them to enter into the April 4, 2017 transaction knowing Plaintiff was not involved in that transaction at all.

27.     Third-Party-Defendants and their agents knew Kelley had nothing to do with the April 4, 2017 transaction and never spoke to Third-Party-Defendants agents Marc Sherrin, Matt Aycock or any of Third-Party-Defendants other agents before that transaction upon which any of

them could base a fraud claim.

28.    Third-Party-Defendants accused Kelley of a fraudulent transfer of assets that Third-Party-Defendants assert were owned by you them in July2019 when Third-Party-Defendants were aware that they sold their Note and Deed of Trust in January 2018 to Alvarez and after that date did not own the Property at 829 Yale or the Note or Deed of Trust.

29.    Third-Party-Defendants have made sworn statements that they have personal knowledge of the matters they were factually asserting such as their claim of fraud or fraudulent transfer and yet none of them ever spoke to Plaintiff except in a taped deposition. They falsely swore they were deposed and abused by Cross-Plaintiff.

30.    Third-Party-Defendants' statements and false innuendo are false and defamatory.

31.    Third-Party-Defendants understood what they were doing when on January 30, 2018, they sold their "collateral" to D&A Alvarez Group, LLC.  The "collateral" they are referring to in their false statements regarding Cross-Plaintiff is the April 4th 2017 Note and Deed of Trust to 2017 Yale.  The January 31, 2018 transaction documents were long and detailed.  Having read the documents thoroughly, Third-Party-Defendants claim they understood them and had counsel when they elected to sell their "collateral" to D&A Alvarez Group company.  They elected not get a personal guarantee from Mr. Alvarez.  Third-Party-Defendants elected to finance Mr. Alvarez's purchase of the "collateral" by loaning D&A Alvarez Group, LLC the purchase price.  Mr. Alvarez through his company thus owned the "collateral."   Third-Party-Defendants did not own the "collateral" after January 31, 2018.  Third-Party-Defendants' only "collateral" after January 31, 2018 was in UCC Chapter 9 security interest in the underlying instruments themselves.  Third-Party-Defendants did not have a Deed of Trust ruing to the property.  The original Note and Deed

of Trust were sold to D&A Alvarez Group, LLC as of January 31, 2018.  Thus, as of January 31,

2018, Third-Party-Defendants did not have any collateral in the "property" located at 829 Yale.

Their security, as it states on their transaction documents, says their security is in commercial

paper.  It is undisputed that Third-Party-Defendants never foreclosed on their security interest in

the underlying commercial paper.

32.     Then, Third-Party-Defendants, such as Stoner and Smith who are wizards of Calif.

real estate, knew that by executing an Allonge and attached it to the D&A Alvarez Group Note

which had the legal effect of endorsing that note back to its maker, D&A Alvarez Group.  Surely

Third-Party-Defendants knew what an "Allonge" is and its effect as they were represented by

numerous lawyers.  Third-Party-Defendants obtained a judgment that the January 31, 2018 "Loan

Documents" as they call them are valid and enforceable.  As such, there is nothing to set them

aside.  Third-Party-Defendants obtained a breach of the January 31, 2019 agreement against D&A

Alvarez Group, LLC and getting a "money judgment" for $9 million against D&A Alvarez Group,

LLC.

33.     Third-Party-Defendants were made aware by record filings that in July 2018, as

owner of the April 4,2017 Note and Deed of Trust, D&A Alvarez Group entered into a Rule 11

Settlement Agreement with the parties suing him and released all such obligations.

34.     Third-Party-Plaintiff's client at that time was Terry Fisher who was a party to that

Rule 11 Agreement.  That Rule 11 Agreement was filed with the 190th District Court and put Third-

Party-Defendants and others on notice it had been released.  In January 2019, Third-Party-

Defendants deposed Mr. Alvarez about releasing the April 4th note and lien.  Third-Party-

Defendants were aware at that time that Mr. Alavarez had released the Note and Deed of Trust.

Third-Party-Defendants filed a summary judgment, MSJ #5, making a claim that very Rule 11 provided him a release as well.

35.     In July 2019, a year after Mr. Alvarez executed the Rule 11, Mr. Alvarez executed and had filed a recordable release of lien as to the property in accordance with the Rule 11 settlement agreement.

36.      As such, Third-Party-Defendants as sophisticated real estate investors knew that after January 30, 2018, there was no "collateral" for Third-Party-Defendants' to claim as to any real property associated with 829 Yale.  After July 2018, there were no liens on the property associated with any deed of trust.  After July 2019, the Alvarez release was public record. None of this was fraudulent.

37.     All of Third-Party-Defendants' claims of fraud and fraudulent transfer were dismissed with prejudice by the October 2019 judgment.

38.     Third-Party-Defendants make false claims that Cross-Plaintiff lied to a court under oath however none of the Third-Party-Defendants ever observed or heard Third-Party- Plaintiff say anything to any court.  Third-Party-Defendants were never in the court room and has no personal knowledge of any of the proceedings except his deposition.  Instead, the transcript record reveals that Third-Party-Defendants' agent, Mr. Ramey, falsely told the Court that Third-Party-Plaintiff had violated the temporary injunction.  When the Court examined the order, it determined no violation had occurred and never proceeded with any hearing.  In a subsequent hearing, the 190th Court has admonished Third-Party-Defendants' agent Mr. Ramey about making such misstatements about the proceedings.  Third-Party-Defendants continue to falsely state what is objective on the record thereby defaming Third-Party-Plaintiff.

## CONSPIRACY

39.     Third-Party-Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

40.     Pleading additionally, or in the alternative, Third-Party-Plaintiff would show that each Third-Party-Defendant and Counter-Defendant was a member of a combination of two or more persons, the object of which was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the members had a meeting of the minds on the object or course of action, one of the members committed an unlawful, overt act to further the object or course of action, and the Plaintiff suffered injury as a proximate result of the wrongful act.

41.     Third-Party-Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

## AIDING AND ABETTING

42.     Pleading additionally, or in the alternative, Third-Party-Plaintiff would show, the primary actors committed torts, the Cross-and- Third-Party -Defendants had knowledge that the primary actor's conduct constituted a tort, the Cross-and- Third-Party-Defendants had the intent to assist the primary actor in committing the tort, the Cross-and- Third-Party-Defendants  gave the primary actor assistance or encouragement, and the Cross-and- Third-Party-Defendants assistance or encouragement was a substantial factor in causing the tort.

## PRINCIPAL-AGENT LIABILITY

43.     Third-Party-Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

44.     Pleading additionally, or in the alternative, Third-Party-Plaintiff would show that Cross-and- Third-Party-Defendants were acting as agent for each other in making representations and signing agreements with Third-Party -Plaintiff.

## CONDITIONS PRECEDENT AND DAMAGES

45.     All conditions precedent to Third-Party-Plaintiff's claims for relief have been performed or have occurred.  As a result of Cross-and- Third-Party -Defendants' aforementioned actions and misconduct, Third-Party-Plaintiff has suffered damages in excess of $75,000. Cross-and-Third-Party-Defendants' conduct has directly resulted in the damages to Third-Party-Plaintiff described in this Petition.

46.     Third-Party-Plaintiff seeks recovery of reasonable attorney's fees pursuant to enforce the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02) the Texas statutory regime set forth above, and otherwise as allowed at law or in equity and as otherwise plead for herein.

## APPLICATION FOR INJUNCTIVE RELIEF

47.     Third-Party-Plaintiff moves this court to issue an injunction and permanently restrain and enjoin Cross-and- Third-Party-Defendants,  including  their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them, from violating the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, and the Texas Civ. Prac. & Rem. Code § 123.002 et seq. (civil enforcement of Texas Penal Code § 16.02).  Cross-and- Third-Party-Defendants and their agents should be immediately enjoined from disclosing or attempting to disclose to another person the contents of any wire, oral, or electronic communication; and/or (3) using or attempting to use the contents of any wire, oral, or electronic communication between

Third-Party-Plaintiff and his Clients.

48.    The statutes provide for injunctive relief.

## PRAYER

WHEREFORE, Counter-and- Third-Party-Plaintiff prays that the Court enjoin Third-Party-and-Counter-Defendants from violating the law and from disclosing or attempting to disclose to another person the contents of any wire, oral, or electronic communication; and/or using or attempting to use the contents of any wire, oral, or electronic communication between Third-Party-Plaintiff and his Clients and that Third-Party-Plaintiff be awarded damages, punitive damages and attorney's fees as provided by law and for such other relief that Third-Party-Plaintiff may show himself entitled.

Cross-Plaintiff prays that the Court enter judgment in their favor and against Cross-and-Counter-Defendants and that Cross-and- Third-Party-Defendants have judgment of and against them for the following relief:

1. That the Court Issue a permanent injunction as plead for herein;
2. All actual, compensatory, and consequential damages of Counter- Third-Party-Plaintiff proven and supported by the Pleadings;
3. All punitive, statutory and exemplary damages and remedies against Cross-and- Third-Party-Defendants proven and supported by the Pleadings;
4. Prejudgment and post judgment interest as provided by law;
5. Attorney's fees;
6. Costs of suit; and
7. such other and further relief at law or in equity to which Kelley shows himself entitled.

Respectfully submitted,

/s/ *Lloyd E. Kelley*
LLOYD E. KELLEY
State Bar No. 11203180
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973
Pro-se

## CERTIFICATE OF SERVICE

I certify that on this 10th day of October 2022 my office served a true and correct copy of

the foregoing instrument in accordance with the Federal Rules of Civil Procedure via the CM/ECF

Filing System, which automatically served it through the electronic filing to all counsel of record.

By:*/s/ Lloyd E. Kelley*